TREG TAYLOR
ATTORNEY GENERAL

Christopher F. Orman (Alaska Bar No. 1011099)
Assistant Attorney General
Alaska Department of Law
PO Box 110300
Juneau, AK 99811-0300
Telephone: (907) 465-3600
Facsimile: (907) 465-3019
Email: *christopher.orman@alaska.gov*

Attorney for the State of Alaska

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| METLAKATLA INDIAN COMMUNITY, a Federally Recognized Indian Tribe, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. DUNLEAVY, Governor of the State of Alaska, DOUG VINCENT-LANG, Commissioner of the Alaska Department of Fish and Game, and JAMES E. COCKRELL, Commissioner of the Alaska Department of Public Safety, <br><br> Defendants. | Case No.: 5:20-cv-00008-SLG <br><br><br> **ANSWER TO SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## STATE OF ALASKA'S ANSWER TO COMPLAINT

Michael J. Dunleavy, Doug Vincent-Lang, and James E. Cockrell, Defendants,

answer the complaint as follows:

1.      In Paragraph 1 the Plaintiff provides its overview of its claims as well as argument, to which no response is required. To the extent a response is required, the State denies Plaintiff's allegations and any legal conclusions.

2.      Admitted that Metlakatla Indian Community (MIC) is a federally recognized tribe. *See* 88 Fed. Reg. 2115 (January 12, 2023). Admitted that MIC occupies land located in the Alexander Archipelago in Southeast Alaska, with the lands MIC occupies known as the Annette Islands Reserve. Admitted that the Annette Islands Reserve is currently the only active federal Indian reservation in the State of Alaska. Admitted that "An act to repeal timber-culture laws, and for other purposes" signed into law on March 3, 1891 (1891 Act) created the Annette Islands Reserve. 26 Stat. 1101 (March 3, 1891). Admitted that Section 15 of the 1891 Act speaks for itself and states in full:

> That until otherwise provided by law the body of lands known as Annette Islands, situated in Alexander Archipelago in Southeastern Alaska, on the north side of Dixon's entrance, be, and the same is hereby, set apart as a reservation for the use of the Metlakahtla [sic] Indians, and those people known as Metlakahtlans [sic] who have recently emigrated from British Columbia to Alaska, and such other Alaskan natives as may join them, to be held and used by them in common, under such rules and regulations, and subject to such restrictions, as may [sic] prescribed from time to time by the Secretary of the Interior.

Admitted that during the Alaska Native Claims Settlement Act's (ANCSA) negotiations, MIC negotiated to retain the Annette Islands Reserve and by retaining the Annette Islands Reserve, MIC members did not receive any additional monetary settlement or additional land settlement. 43 U.S.C. § 1602(b) (definition of "native") and 43 U.S.C. §

*Metlakatla Indian Comm. v. Dunleavy, et al.*                    5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint                   Page 2 of 21
Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 2 of 21

1618(a). Denied that MIC "declined to participate" in ANCSA. All other allegations in this paragraph are denied.

3.       Denied for lack of knowledge.

4.       Admitted.

5.       Denied that Doug Vincent-Lang "oversees . . . development of policies" to the extent that allegation suggests Commissioner Vincent-Lang prepares State of Alaska fisheries management plans. All remaining allegations are admitted.

6.       Denied that Commissioner Cockrell is a female. All remaining allegations are admitted.

7.       Admitted.

8.       Admitted that under 28 U.S.C. § 2201 a federal court may grant declaratory relief. All other allegations are denied.

9.       Admitted that under 28 U.S.C. § 2201 a federal court may grant injunctive relief. All other allegations are denied.

10.      Admitted.

11.      Admitted that in 1887, Father William Duncan relocated approximately 800 members of a Canadian Christian community he founded in British Columbia named Metlakatla to the Annette Islands in the Territory of Alaska. Admitted that Tsimshian Indians had joined the Metlakatla community in British Columbia prior to emigrating to the Territory of Alaska. Admitted that Father Duncan was an Anglican missionary. Admitted that historian Brian Hosmer in his book "American Indians in the Marketplace," states, "Despite his reluctance to antagonize the British, President Grover

*Metlakatla Indian Comm. v. Dunleavy, et al.*             5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint         Page 3 of 21
Case 5:20-cv-00008-SLG    Document 41    Filed 06/26/23    Page 3 of 21

Cleveland lent his support and in the summer of 1887 granted Duncan and his followers 'squatters rights' to Annette Island, formerly the site of a Tlingit fishing village." p. 199 – 200 (Univ. of Kansas 1999). All other allegations are denied for lack of knowledge.

12.     Denied for lack of knowledge.

13.     Denied for lack of knowledge.

14.     Admitted that Senate Doc. No. 55-275 (1898) is a historical document that speaks for itself and no response is needed. All other allegations are denied for lack of knowledge.

15.     Paragraph 15 contains argument, and thus no response is required. However, any allegations are denied.

16.     Admitted that based on an 1895 census and a statement made by MIC's attorney in 1968, the MIC community was historically comprised of Tsimshian (some of whom emigrated from a British Columbia Christian community known as "Metlakatla"), Tlingit Indians, Haida Indians, and other Alaska Natives. Brian Hosmer, "American Indians in the Marketplace," p. 205 (Univ. of Kansas 1999); and Statement of S. Bobo Dean, Attorney for Metlakatla Indians, Hearings Before the Committee on Interior Affairs 90th Congress, S.2906, S.1964, S.2690, and S. 2020, p. 415 (U.S. Gov. Press 1968) (". . . approximately 22 percent [of the Community] are Alaska native descendants."), available at: https://www.govinfo.gov/app/details/CHRG-90shrg92002p1/context (accessed on June 1, 2023). Regarding the present status of MIC membership, denied for lack of knowledge. Admitted that in *Tlingit and Haida Indians of Alaska v. U.S.*, 147 Ct.Cl. 315 (U.S. Ct. of Claims 1959), the Court of Claims determined

*Metlakatla Indian Comm. v. Dunleavy, et al.*                    5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint                    Page 4 of 21
Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 4 of 21

the Tlingit Indians and Haida Indians held aboriginal rights to Southeast Alaska's fisheries and that Congress' creation of the Annette Islands Reserve in 1891 and the Presidential Proclamation granting MIC members an exclusive fishery in 1916 were takings from the Tlingit Indians and Haida Indians. All other allegations are denied for lack of knowledge.

17.     Denied for lack of knowledge.

18.     Denied for lack of knowledge.

19.     Admitted that 5 AAC 33.200(a) – (b) define and describe fishing districts 1 and 2's boundaries for purposes of Southeast Alaska's commercial fisheries. Admitted that Exhibit 1 is a true and accurate copy of Map 5 of the Alaska Department of Fish and Game's Salmon and Shellfish Statistical Area Maps which visually depicts, in general, fishing districts 1 and 2. *See* Map 5 (ADF&G 9th Ed. 2022); available at: https://www.adfg.alaska.gov/static/fishing/PDFs/commercial/maps/chart05_salm_shell_all.pdf (accessed on May 30, 2023). All other allegations are denied for lack of knowledge.

20.     Denied for lack of knowledge.

21.     Denied for lack of knowledge.

22.     Denied for lack of knowledge.

23.     The first sentence of Paragraph 23 is denied for lack of knowledge. Admitted that on November 7, 1917, a Metlakatla resident named Thomas Hanbury sent a letter to Henry Wellcome – one of William Duncan's supporters – and that letter speaks for itself and thus no response is required.

*Metlakatla Indian Comm. v. Dunleavy, et al.*                    5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint              Page 5 of 21
Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 5 of 21

24.     Admitted that Section 15 of "An act to repeal timber-culture laws, and for other purposes" that was signed into law on March 3, 1891 (1891 Act) created the Annette Islands Reserve; that statutory language speaks for itself and is provided in full in paragraph 2 of this Answer. Admitted that in the 1890 Congressional Record at 21 Cong. Rec. 10092, Senator Manderson of Nebraska's comments speak for themselves and stated the following in support of section 15 of the 1891 "Act to repeal timber-culture laws, and for other purposes":

> They are not natives of this country as the native Indians of Alaska are under our treaty or purchase from Russia, and they must become in the end, before they can acquire this property, naturalized citizens of the United States. The proposition of the amendment is simply to allow this band of Indians to remain there under such rules and regulations as the Secretary of the Interior may impose, and give them some recognized footing at that place.

All other allegations are denied for lack of knowledge.

25.     Denied.

26.     26 Stat. 1101 – section 15 of "An Act to repeal timber-culture laws, and for other purposes"– cited in full in paragraph 2 of the State's answer, speaks for itself. Admitted that in *Alaska Pacific Fisheries Co. v. U.S.*, 248 U.S. 78, 89 (1918), the U.S. Supreme Court in determining the Annette Island Reserve's boundaries stated, in full, the following that speaks for itself:

> The purpose of creating the reservation was to encourage, assist and protect the Indians in their effort to train themselves to habits of industry, become self-sustaining and advance to the ways of civilized life. True, the Metlakahtlans [sic] were foreign born, but the action of Congress has made that immaterial here.
>
> The circumstances which we have recited shed much light on what Congress intended by 'the body of lands known as Annette Islands.' The Indians could

*Metlakatla Indian Comm. v. Dunleavy, et al.*                    5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint                    Page 6 of 21
Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 6 of 21

not sustain themselves from the use of the upland alone. The use of the adjacent fishing grounds was equally essential. Without this the colony could not prosper in that location. The Indians naturally looked on the fishing grounds as part of the islands and proceeded on that theory in soliciting the reservation. They had done much for themselves and were striving to do more. Evidently Congress intended to conform its action to their situation and needs. It did not reserve merely the site of their village, or the island on which they were dwelling, but the whole of what is known as Annette Islands, and referred to it as a single body of lands. This, as we think, shows that the geographical name was used, as is sometimes done, in a sense embracing the intervening and surrounding waters as well as the upland-in other words, as descriptive of the area comprising the islands.

All other allegations are denied.

27.     Admitted that in 1917, President Wilson issued a proclamation titled, "Annette Island Fishery Reserve, Alaska," and that proclamation speaks for itself. 39 Stat. 1777 (April 28, 1916). Admitted that the Annette Islands Reserve's boundaries include the islands and the water 3,000 feet from the Reserve's uplands. Admitted that the 3,000 feet of water from the Reserve's uplands constitutes an exclusive fishery that only MIC members can fish in and MIC members that fish in that exclusive fishery are subject to state regulations adopted under 25 C.F.R. § 241.3. It is unclear the source of Exhibit 2 and whether Exhibit 2 accurately depicts the Annette Island Reserve's boundaries, and thus is denied for lack of knowledge. All other allegations are denied.

28.     Sentence 1 of Paragraph 28 is denied. Admitted that in 1921, the Territory of Alaska sued the Annette Island Packing Company – a company owned and operated by P.E. Harris of Seattle, Washington – asserting the Annette Island Packing Company owed the Territory taxes for the operation of its cannery within the Annette Island Reserve. *Territory v. Annette Island Packing Co*., 6 Alaska 585 (D. Alaska 1922).

*Metlakatla Indian Comm. v. Dunleavy, et al.*          5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint          Page 7 of 21
Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 7 of 21

Admitted that the *Annette Island Packing Co.* case involved the Territory of Alaska attempting to impose three license taxes on the Annette Island Packing Company as outlined in sentence 2 of Paragraph 28 of Plaintiff's Complaint. Admitted that the Secretary of the Interior intervened and filed a Complaint in Intervention against the Territory of Alaska in *Territory v. Annette Island Packing Co. Id.* Any allegations in this paragraph inconsistent with the "Statement of Facts" stipulated to by the parties and adopted by the district court in its *Annette Island Packing Co.* decision are denied.

29.     Admitted that on April 4, 1921, the Territory of Alaska answered the Secretary of Interior's Complaint in *Territory v. Annette Island Packing Co,* that answer speaks for its, and in a subsection titled "Answer and defense to the allegations" states in part:

> That the inhabitants of Annette Island, ever since their settlement on said Island, have been and yet are in the habit of fishing outside of said reserve, and a large percentage of the fish canned from year to year by the defendant company was caught in waters outside of said reserve; that during the year 1919 at least 130,000 salmon canned by the defendant company at its cannery on Annette Island were caught by residents of Metlakatla in waters outside the reserve; and more than 13,000 salmon canned by the defendant company at its cannery in 1919 were caught by white fishermen outside the said reserve; and if a four line cannery is established at Metlakatla by the defendant company, as contemplated in the lease afore-mentioned, it is probable that in the future more than half of the salmon canned will be taken from waters outside the reserve; and that at the time of the execution of the lease heretofore referred to it was contemplated by the parties thereto that an increasingly large proportion of the salmon canned on Annette Island would come from waters outside of afore-mentioned reserve; and that the right of the inhabitants of said Annette Island reserve to catch fish outside of the reserve, and to engage in any other business outside of the reserve, has always been and is now recognized by the intervenor and by the Government of the United States, and such right is and at all times has been claimed by the said Metlakatla people. Territory of Alaska Answer to

*Metlakatla Indian Comm. v. Dunleavy, et al.*                    5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint                  Page 8 of 21
Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 8 of 21

Complaint in Intervention, *Territory of Alaska v. Annette Island Packing Company*, NO. 3023-A, pp. 4-5 (D. Alaska April 4, 1921).

All other allegations are denied.

30.     Pages 585 – 599 of the district court's decision in *Territory v. Annette Island Packing Company* contain the parties' stipulated "Statement of Facts" in full and those facts speak for themselves. 6 Alaska 585 (D. Alaska 1922). Any allegations in Paragraph 30 of the Complaint not contained in the "Statement of Facts" as stipulated to by the parties and adopted by the district court in its *Annette Island Packing Co.* decision are denied. Admitted that in *Territory of Alaska v. Annette Island Packing Company*, 6 Alaska 585, 631 (D. Alaska 1922), the district court's holding speaks for itself and no response is required; however, the decision specifically states:

> But there is a further reason. The right of fisheries on the reservation and adjacent waters is reserved for the benefit of the Indians resident thereon, and, by taxing traps on the reservation, the territory assumes the right to license the privilege of carrying on the business of fishing with traps on a reserved area over which it has no jurisdiction. This it cannot do. *Emphasis added*.

All other allegations are denied.

31.     Admitted that the *Annette Island Packing Co.* litigation case file shows that MIC members were not legally barred from fishing outside of the Annette Islands Reserve, but that case file also does not suggest that when MIC members fished outside of the Annette Islands Reserve they were not subject to the same fisheries regulations as all other fishermen. All other allegations are denied.

32.     The U.S. Supreme Court's language in *Hynes v. Grimes Packing Co.*, 337 U.S. 86, 103 (1949) speaks for itself and thus no response is required. The U.S. Supreme

*Metlakatla Indian Comm. v. Dunleavy, et al.*                    5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint                    Page 9 of 21
Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 9 of 21

Court's decision in *Alaska Pacific Fisheries Co. v. U.S.*, 248 U.S. 78 (1918) speaks for itself and thus no response is required. All other allegations are denied.

33.     The Ninth Circuit's decision in *Metlakatla v. Dunleavy, et al.*, No. 21-35185, D.C. No. 5:20-cv-00008-JWS, Order and Amended Opinion (9th Cir. 2023) speaks for itself and no response is required.

34.     The U.S. Supreme Court's decision in *McGirt v. Oklahoma*, 140 S.Ct. 2452, 2462 (2020), pertaining to the reduction of the land size of a reservation, speaks for itself and no response is required.

35.     Denied for lack of knowledge.

36.     Denied for lack of knowledge.

37.     Denied for lack of knowledge.

38.     Admitted that pursuant to Congress's 1891 Act creating the Annette Islands Reserve cited in full in paragraph 2 of this Answer, the U.S. Supreme Court's decision in *Alaska Pacific Fisheries Co. v. U.S.*, 248 U.S. 78 (1918), and the 1916 Presidential Proclamation, the Reserve's boundaries included 3,000 feet of water from the Reserve's islands uplands; that those waters have been referred to as MIC members' "exclusive fishery." Admitted that after the creation of the Annette Islands Reserve in 1891 and prior to Alaska statehood in 1959, MIC members fished outside the Reserve's boundaries, and when MIC members fished outside the Reserve's boundaries – which included the exclusive fishery as explained in the prior sentence – they were subject to the same fishing regulations as all other fishermen. All other allegations are denied.

*Metlakatla Indian Comm. v. Dunleavy, et al.*                    5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint                    Page 10 of 21
Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 10 of 21

a. Admitted that on July 10, 1891, Father Duncan sent a letter to an unidentified party. The letter speaks for itself and states:

> The bearer, Charlie, complains bitterly of the way he has been cheated of his interest in the salmon stream at Naha Bay, and also of the barricade which has been placed across the stream by white men, which he states, will prevent any salmon passing up to the spawning ground. Charlie is anxious to obtain the loan of a net that he may at least obtain a share of the salmon. The Canning company at Naha Bay refuse him a net and deny, he says, that he has any special rights in the stream. All I can tell him to console him is that so far as I know he has a perfect right to fish at Naha Bay & if he can obtain a net I have no doubt the Company there will purchase the salmon he takes. As to his complaint about the way the steam is being fished by others I can only direct him to seek redress from the proper authorities whose duty is to enforce the law which regulates the taking of salmon in Alaskan waters.

All other allegations are denied for lack of knowledge.

b. Admitted that on November 4, 1892 William Duncan sent a letter to Thomas Strong, an attorney in Portland, Oregon, and that letter speaks for itself. All other allegations are denied for lack of knowledge.

c. Admitted that in 1897, George Tingle's Department of the Interior Report "Salmon Fisheries in Alaska - 1896" (1896 Report) was published and that report speaks for itself. Available at: https://books.google.com/books?id=QfVHAQAAIAAJ&printsec=frontcover&source=gbs_ge_summary_r&cad=0#v=onepage&q&f=false (accessed on May 30, 2023). Admitted that Kah Shakes Cove is approximately 24 miles west of the Annette Islands Reserve. *See* Mapcarta.com; available at: https://mapcarta.com/23453990 (accessed on May 31, 2023). Admitted that the 1896 Report states the Metlakatla Industrial Company's cannery – which was almost wholly owned by Father Duncan – received and

*Metlakatla Indian Comm. v. Dunleavy, et al.*  5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint  Page 11 of 21
Case 5:20-cv-00008-SLG Document 41 Filed 06/26/23 Page 11 of 21

processed salmon caught in Naha Bay, Karta Bay, and Kah Shakes Cove.

Regarding sentence 2, admitted that page 8 of the 1896 Report speaks for itself and states in part:

> Mr. Duncan's claim that his Indians have met with lawlessness from the white fisherman and been deprived of fishing rights I do not find to be true. The native Alaskan Indian has equal fishing rights with the white fishermen. I fail to understand where Mr. Duncan's important British Columbia Indians, who, through the generosity of the United States, were given Annette Island, with its rich mineral deposit, as a reservation, have any superior rights over native Alaska Indians and white fishermen, as is claimed. That they have equal rights I have conceded.

Regarding sentence 2, admitted that pages 21 through 22 of the 1896 Report speak for themselves and recount that Father Duncan had complained that fishermen fishing on behalf of the Metlakatla Industrial Company cannery were being "threatened" while fishing at Kah Shakes Cove and that those fishing in the area were:

> . . . informed . . . that they had a right to seek the convenient market for their fish, but that their right to fish in the cove was not exclusive, and that the Indians from Port Chester or any other point in Alaska had equal fishing rights within the limits prescribed by the law as to distances between nets, etc.

All other allegations are denied for lack of knowledge.

        d.     Admitted that in 1899, Jefferson Moser's report "The salmon and salmon fisheries of Alaska" (1899 Report) was published and speaks for itself. Available at: https://books.google.com/books?hl=en&lr=&id=a1_RJpwEFwkC&oi=fnd&pg=PA19&ots=9pB-gforvd&sig=vsreakMWAc5KX9wg4aCZnoUIhKU#v=onepage&q&f=false (accessed on May 30, 2023). Admitted that pages 66 and 67 of the 1899 Report speak for themselves and state that salmon caught in streams at Quadra Bay, Cape Fox, Karta Bay,

*Metlakatla Indian Comm. v. Dunleavy, et al.*        5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint        Page 12 of 21

Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 12 of 21

and Moira Sound were sold to and processed by the Metlakatla Industrial Company's cannery. All other allegations are denied.

e. Admitted that Jefferson Moser's report published in 1902, "The Salmon and Salmon Fisheries of Alaska, Report of the Alaskan Salmon Investigations of the United States Fish Commission Steamer Albatross in 1900 and 1901" (1902 Report) speaks for itself, and states that the Metlakatla Industrial Company's cannery purchased and processed salmon caught in "the Home Stream, Tamgas, Duke Island, Quadra, Karta Bay, Kithraum, Peter Johnson, Nowiskay, Old Johnson, Kegan, and Kagahine." p. 298 (Washington Gov. Printing 1902); available at: https://www.google.com/books/edition/The_Salmon_and_Salmon_Fisheries_of_Alask/b vA_AAAAYAAJ?hl=en&gbpv=0 (accessed on May 30, 2023). Admitted that the 1902 Report states that "24 native fishermen" fished for the Metlakatla Industrial Company cannery, and that there were "38 ['native fishermen'] from whom fish were purchased" by the Metlakatla Industrial Company cannery. *Id.* at p. 297. All other allegations are denied.

f. Denied for lack of knowledge.

g. Admitted that a July 1, 1898 letter from Father Duncan to U.S. Commissioner Jackson speaks for itself and states in part,

> [T]his afternoon a company of fishermen, six being native, with Mr. Clark as head fisherman, have returned from Naha Bay (Loring), whither they were sent to work on 27th June. The reason for their return is that they were threatened with violence by the employes of the Alaska Packing Association [a rival to the Metlakatla Industrial Company cannery] and their fishing gear injured.

*Metlakatla Indian Comm. v. Dunleavy, et al.*　　　　　　　5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint　　　　Page 13 of 21
Case 5:20-cv-00008-SLG　Document 41　Filed 06/26/23　Page 13 of 21

Admitted that a July 1, 1898 letter from Father Duncan to U.S. Attorney Burton E.

Bennett speaks for itself and states in part,

> A company of our native fishermen under the guidance of Mr. Clark, our head fisherman, left here last Monday to fish in Naha Bay (Loring). This afternoon they have all returned home having been threatened by the employes of the Alaska Packing Association with violence and their nets interfered with. In order to avoid a conflict I have decided to send Mr. Clark to lay a complaint before the U.S. Commissioner at Fort Wrangell and then to proceed to Sitka to acquaint you with the matter.

All other allegations are denied.

        h.    Denied for lack of knowledge.

        i.    Denied for lack of knowledge.

        j.    Denied for lack of knowledge.

        k.    Denied for lack of knowledge.

        *l.*    Denied for lack of knowledge.

39.    Denied.

40.    Admitted that after Congress created the Annette Islands Reserve in 1891, MIC members fished outside of the Annette Islands Reserve's boundaries – those boundaries include an exclusive fishery comprised of 3,000 feet of water from the Annette Island Reserve's uplands – and when MIC members did fish outside of the Reserve's boundaries those MIC members were subject to the same fishing regulations – whether imposed by the United States, the Territory of Alaska, or the State of Alaska – as all other fishermen. All other allegations are denied.

41.    Defendants' response in paragraph 16 of this Answer is restated and reincorporated here by reference. All other allegations are denied for lack of knowledge.

*Metlakatla Indian Comm. v. Dunleavy, et al.*         5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint         Page 14 of 21
Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 14 of 21

42.     Denied.

43.     Sentence 2 is admitted. All other sentences are denied for lack of knowledge.

44.     Admitted that the waters adjacent to the Annette Island Reserve's exclusive fishery – the exclusive fishery being comprised of 3,000 feet of water from the Reserve's uplands - are state waters and thus state-managed fisheries. *See* 5 AAC 33.200(a) – (b). All other allegations are denied for lack of knowledge.

45.     Denied for lack of knowledge.

46.     Admitted that halibut is an important fish species in Alaska. The remainder of paragraph 46 is denied for lack of knowledge.

47.     Admitted that nothing in state statutes or regulations prevents MIC members from accessing the state waters outside of the Annette Islands Reserve and from fishing outside of the Annette Islands Reserve; however, much like from 1891 to Alaska's statehood where MIC members were subject to the same fishing regulations as all other fishermen, MIC members that do fish outside of the Annette Islands Reserve in state waters – with the Reserve's boundaries including an exclusive fishery comprised of 3,000 feet of water from the Reserve's uplands – are subject to state fishing statutes and regulations that apply to all fishermen, which includes the limited entry program. All remaining allegations are denied.

48.     Denied.

49.     Admitted that in 1972, voters approved a measure that amended Article VIII, section 15 of the Alaska Constitution to add a second sentence that states:

*Metlakatla Indian Comm. v. Dunleavy, et al.*                 5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint                 Page 15 of 21
Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 15 of 21

This section does not restrict the power of the State to limit entry into any fishery for purposes of resource conservation, to prevent economic distress among fishermen and those dependent upon them for a livelihood and to promote the efficient development of aquaculture in the State.

Admitted that the second sentence of Article VIII, section 15 of the Alaska Constitution authorized the later adoption of the limited entry program under AS 16.43.

50.    Admitted.

51.    Denied.

52.    Admitted that under the limited entry program, the State of Alaska awarded approximately 140 no cost limited entry permits to MIC members authorizing them to commercially fish in Southeast Alaska waters. Metlakatla: Holdings of Limited Entry Permits, Sablefish Quota Shares, and Halibut Quota Shares through 1997 and Data on Fishery Gross Earnings, CFEC Report-98-SPMEtlakat-N (AK CFEC 1998); available at: https://www.cfec.state.ak.us/RESEARCH/coast98/METLAKAT.PDF (accessed on November 9, 2020); *see also* Dinneford, Elaine, "Changes in Holdings of Permanent Limited Entry Permits in Metlakatla, Alaska; 1975-1991," CFEC Report-92-12 (AK CFEC 1992); and CFEC Public Search Application; (a search with the Reserve's zip code of 99926 and the year of 1975 show 138 permits were issued to MIC members.); available at: https://www.cfec.state.ak.us/plook/#permits (accessed on June 2, 2023). Admitted that as of 2023, it appears MIC members now hold 52 limited entry permits; thus a reduction of almost 90 permits since the 1970s. CFEC Public Search Application; (a search with the Reserve's zip code of 99926 and the year of 2023 show 52 permits still held by MIC members.); available at: https://www.cfec.state.ak.us/plook/#permits

*Metlakatla Indian Comm. v. Dunleavy, et al.*                    5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint              Page 16 of 21
Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 16 of 21

(accessed on June 2, 2023). Admitted that despite factual assertions in MIC's complaint about MIC members' significant off-reservation fishing, some MIC members did not fish enough in state waters, and thus outside of the Annette Islands Reserve's exclusive fishery, to qualify for a limited entry permit. *See May v. State, Commercial Fisheries Entry Com'n*, 168 P.3d 873 (Alaska 2007). Admitted that MIC members that want to participate in the state's limited entry program and do not currently hold the necessary limited entry permit or interim-use permit to commercially fish in a particular state fishery must purchase a limited entry permit on the open market just like all other commercial fishermen. All other allegations are denied.

53.     Denied for lack of knowledge.

54.     Admitted that nothing in state statutes or regulations prevents MIC members from accessing and participating in fishing outside of the Annette Islands Reserve; however, much like from 1891 to Alaska's statehood where MIC members were subject to the same fishing regulations as all other fishermen, MIC members that do fish outside of the Annette Islands Reserve and fish in state waters – with the Reserve's boundaries including an exclusive fishery comprised of 3,000 feet of water from the Reserve's uplands – are subject to state fishing statutes and regulations that apply to all fishermen fishing in state waters. All other allegations are denied.

55.     Denied.

56.     The foregoing paragraphs of this Answer are incorporated by reference as though fully set forth herein.

*Metlakatla Indian Comm. v. Dunleavy, et al.*                    5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint                    Page 17 of 21
Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 17 of 21

57. The Ninth Circuit's decision in *Metlakatla v. Dunleavy, et al.*, No. 21-35185, D.C. No. 5:20-cv-00008-JWS, Order and Amended Opinion (9th Cir. 2023) speaks for itself and no response is required. All other allegations are denied.

58. Denied.

59. Admitted that anyone – including MIC members – that fishes in waters managed by the State of Alaska without the appropriate permit or license or in violation of a state statute or regulation are subject to prosecution and/or civil liability. *See Scudero v. State*, 496 P.3d 381 (Alaska 2021); *May v. State, Commercial Fisheries Entry Comm'n*, 175 P.3d 1211 (Alaska 2007); *Widmyer v. State*, 267 P.3d 1169 (Alaska 2011); *Kuzmin v. State*, 223 P.3d 86 (Alaska 2009); and *Nelson v. State*, 186 P.3d 582 (Alaska 2008). All other allegations are denied.

60. Admitted that MIC members currently have non-exclusive access to state waters and can fish in state waters in common with all other fishermen, and when MIC members fish in state waters, they are subject to sound conservation principles uniformly applied to all fishermen through the State of Alaska's fisheries statutes, regulations, and limited entry program. *See Scudero v. State*, 496 P.3d 381 (Alaska 2021); *May v. State, Commercial Fisheries Entry Comm'n*, 175 P.3d 1211 (Alaska 2007). All other allegations are denied.

61. Denied.

*Metlakatla Indian Comm. v. Dunleavy, et al.*                    5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint                    Page 18 of 21
Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 18 of 21

## DEFENDANTS' GENERAL DENIAL

Any averment in the complaint not specifically admitted in this Answer is denied.

## AFFIRMATIVE DEFENSES

1.     The complaint fails to state a claim against the Defendants on which relief can be granted.

2.     Plaintiff's members' do not hold an implied off-reservation fishing right in fishing districts 1 and 2 because the aboriginal claims needed to assert such a right were extinguished by Congress in 1971 with the passage of the Alaska Native Claims Settlement Act (ANCSA). 43 U.S.C. § 1603; *U.S. v. Michigan*, 471 F.Supp. 192, 253 – 258 (W.D. Mich. 1979).

3.     Plaintiff's members do not hold an off-reservation fishing right in all of fishing districts 1 and 2 because as the Court of Claims determined in *Tlingit and Haida Indians of Alaska v. U.S.*, 147 Ct.Cl. 315 (U.S. Ct. of Claims 1959), its members do not hold an aboriginal fishing right in all of fishing districts 1 and 2 that can yield an implied off-reservation fishing right. *See U.S. v. Michigan*, 471 F.Supp. 192, 253 – 258 (W.D. Mich. 1979).

4.     Plaintiff's claims are completely barred under 43 U.S.C. § 1603(c), as the Alaska Native Claims Settlement Act (ANCSA) prevents any litigation in Alaska related to aboriginal claims.

5.     Plaintiff's members, even if they have an implied off-reservation fishing right, are subject to the State of Alaska's commercial fishing statutes and regulations, which includes the limited entry program, because those management statutes and

*Metlakatla Indian Comm. v. Dunleavy, et al.*     5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint     Page 19 of 21
Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 19 of 21

regulations were adopted to conserve the State of Alaska's fisheries. *See Scudero v. State*, 496 P.3d 381 (Alaska 2021).

6.     Plaintiff's claims against the State of Alaska's Limited Entry Program, including its statutes and regulations, are barred under the defense of laches.

## **PRAYER FOR RELIEF**

The Defendants pray this Court to: (1) dismiss the plaintiff's claims against them; (2) that the plaintiff obtain no relief against them; and (3) the plaintiff take nothing from them. The Defendants further pray for an award of attorney's fees against the Plaintiff to the extent provided under the law.

DATED: June 26, 2023.

TREG TAYLOR
ATTORNEY GENERAL

By:     *s/Christopher F. Orman*
Christopher F. Orman
Alaska Bar No. 1011099
Assistant Attorney General
Office of the Attorney General
Natural Resources Section
Alaska Department of Law
PO Box 110300
Juneau, AK 99811-0300
*christopher.orman@alaska.gov*
Phone: (907) 465-3600
Facsimile: (907) 465-3019

Attorney for the State of Alaska

*Metlakatla Indian Comm. v. Dunleavy, et al.*     5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint     Page 20 of 21
Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 20 of 21

**<u>Certificate of Service</u>**

I certify that on **June 26, 2023**, the foregoing **Answer to Second Amended Complaint for Declaratory and Injunctive Relief**, was served electronically on all parties listed on the CM/ECF system.


<u>/s/ *Leilani J. Tufaga*</u>
Leilani J. Tufaga
Law Office Assistant III

*Metlakatla Indian Comm. v. Dunleavy, et al.*          5:20-cv-00008-SLG
Answer to Plaintiff's Second Amended Complaint          Page 21 of 21
Case 5:20-cv-00008-SLG   Document 41   Filed 06/26/23   Page 21 of 21