**Christopher Lundberg,** OSB No. 941084
(pro hac vice)
Email: clundberg@hk-law.com
**Joshua J. Stellmon,** OSB No. 075183
(pro hac vice)
Email: jstellmon@hk-law.com
**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, Oregon 97201
Phone: (503) 225-0777
Facsimile: (503) 225-1257

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| **METLAKATLA INDIAN COMMUNITY,** a Federally Recognized Indian Tribe, | Case No.: 5:20-cv-00008-SLG |
| Plaintiff, | **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **MICHAEL J. DUNLEAVY**, Governor of the State of Alaska, **DOUG VINCENT-LANG**, Commissioner of the Alaska Department of Fish and Game, and **JAMES E. COCKRELL**, Commissioner of the Alaska Department of Public Safety | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 3

II.   LEGAL STANDARD ......................................................................... 9

III.  STATEMENT OF CASE .................................................................. 9

IV.   ARGUMENT .................................................................................... 11

    A.   The State's Position that the Community Must Prove
       Aboriginal Rights Fails as a Matter of Law ............................................. 11

       1.   The State has fully litigated the aboriginal rights issue and lost ........ 11

       2.   The Ninth Circuit recognized, correctly, that the Community
          is seeking a reserved right, not an aboriginal right ............................. 15

          a.   The Community's non-exclusive reserved fishing right
             Flows from congressional intent, not aboriginal rights ............... 15

       3.   The State's motion does not challenge the fact that the
          Community's ancestors fished in the waters surrounding
          The Annette Islands Reserve ............................................................. 19

    B.   The Alaska Native Claims Settlement Act is Irrelevant to
       this Case ................................................................................................ 21

       1.   Whether ANCSA abrogated aboriginal rights is irrelevant
          to whether the Community has implied reserved rights .................. 22

       2.   ANSCA did not abrogate the Community's reserved
          fishing rights .................................................................................... 22

    C.   The Court Has Resolved Both Key Questions in the Community's
       Favor ..................................................................................................... 24

       1.   The Ninth Circuit decided that the Community has a non-
          Exclusive reserved fishing right in the waters surrounding the
          Annette Islands Reserve ................................................................... 24

       2.   The Ninth Circuit already has held that the limited entry
          Program violates the Community's rights ........................................ 25

V.    CONCLUSION ................................................................................ 26

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 3 of 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Pacific Fisheries Co. v. United States,*
248 U.S. 78 (1918)................................................................6, 7, 9, 24

*Arizona v. California,*
373 U.S. 546 (1963) ........................................................................ 6

*Alsop v. Fedarwisch,*
9 App. D.C. 408 (1896)................................................................. 17

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)........................................................................ 9

*Arizona v. California,*
373 U.S. 546 (1963)........................................................................ 6

*Karuk Tribe of California v. U.S. Forest Service,*
681 F.3d 1006 (9th Cir. 2012) ...................................................... 18

*Metlakatla Indian Community v. Dunleavy,*
48 F.4th 963 (9th Cir. 2022), 2021 WL 3636038 ......................... 11, 12, 13

*Metlakatla Indian Community v. Dunleavy,*
58 F.4th 1034 (9th Cir. 2023) .................................................*passim*

*Native Village of Eyak v. Blank,*
688 F.3d 619 (9th Cir. 2012) ................................................... 16, 19

*Navajo Nation v. U.S. Forest Service,*
479 F.3d 1024 (9th Cir. 2007) ...................................................... 17

*Robertson v. Baldwin,*
165 U.S. 275 (1897)....................................................................... 17

*Sac & Fox Tribe of Okla. v. United States,*
383 F.2d 991 (Ct. Cl. 1967) ......................................................... 16

*Scudero v. State,*
496 P.3d 381 (Alaska 2021) ............................................................ 1

iv

*Tlingit and Haida Indians of Alaska v. U.S.*,
    147 Ct. Cl. 315 (U.S. Ct. of Cl. 1959) ................................................................. 1, 12

*U.S. v. Michigan,*
    471 F. Supp. 192 (W.D. Mich.1979) ........................................................................ 1

*U.S. v. Washington*,
    853 F.3d 946 (9th Cir. 2017) .................................................................................. 19

*Winters v. United States*,
    207 U.S. 564 (1908)................................................................................................ 15

**Statutes**

43 U.S.C. § 1602(b) ..................................................................................................... 23

43 U.S.C. § 1618(a) ............................................................................................... 22, 23

Act of March 3, 1891 ................................................................................................... 23

Alaska Native Claims Settlement Act, 43 U.S.C. ch. 33 ......................................... *passim*

Endangered Species Act .............................................................................................. 18

Religious Freedom Restoration Act ............................................................................. 18

**Other Authorities**

Federal Rule of Civil Procedure Rule 56(a) ............................................................. 1, 9

*Time Immemorial*, *Black's Law Dictionary* (11th ed. 2019) ...................................... 17

## CROSS-MOTION FOR SUMMARY JUDGMENT

According to Federal Rule of Civil Procedure Rule 56(a), the plaintiff Metlakatla Indian Community ("the Community") moves for summary judgment on its first claim for relief seeking an implied reserved right and against the defendants' (hereinafter "the State") second, third, fourth, and fifth affirmative defenses, which are set forth below:

> **State's Second Affirmative Defense:** "Plaintiff's members' [sic] do not hold an implied off-reservation fishing right in fishing districts 1 and 2 because the aboriginal claims needed to assert such a right were extinguished by Congress in 1971 with the passage of the Alaska Native Claims Settlement Act (ANCSA). 43 U.S.C. § 1603; *U.S. v. Michigan*, 471 F. Supp. 192, 253–258 (W.D. Mich. 1979)."

> **State's Third Affirmative Defense:** "Plaintiff's members do not hold an off-reservation fishing right in all of fishing districts 1 and 2 because as the Court of Claims determined in *Tlingit and Haida Indians of Alaska v. U.S.*, 147 Ct. Cl. 315 (U.S. Ct. of Cl. 1959), its members do not hold an aboriginal fishing right in all of fishing districts 1 and 2 that can yield an implied off-reservation fishing right. *See U.S. v. Michigan*, 417 F. Supp. 192, 253–258 (W.D. Mich. 1979)."

> **State's Fourth Affirmative Defense:** "Plaintiff's claims are completely barred under 43 U.S.C. § 1603(c), as the Alaska Native Claims Settlement Act (ANCSA) prevents any litigation in Alaska related to aboriginal claims."

> **State's Fifth Affirmative Defense:** "Plaintiff's members, even if they have an implied off-reservation fishing right, are subject to the State of Alaska's commercial fishing statutes and regulations, which includes the limited entry program, because those management statutes and regulations were adopted to conserve the State of Alaska's fisheries. *See Scudero v. State*, 496 P.3d 381."

Answer to Second Amended Complaint for Declaratory and Injunctive Relief at 19–20 (ECF No. 41) ("Answer").

PAGE 1 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Those five affirmative defenses suffer from the same fatal defect as the State's motion for summary judgment: namely, that the Community does not have any non-exclusive, off-reservation fishing rights. As explained below, the United States Supreme Court and the Ninth Circuit have already held, unequivocally, that Congress impliedly reserved those rights for the Community when it created the Annette Islands Reserve in 1891. As such, the State's assertion of those defenses and its summary judgment motion rests on an already rejected premise that is irreconcilable with the law applicable to this case and should be disavowed.

For similar reasons, the Community is also entitled to summary judgment on its first request for relief, which asks that the Court:

> Declare that Congress' reservation of the Annette Islands Reserve for the Metlakatla Indian Community included the non-exclusive right to fish in the areas where they have fished since time immemorial and where they continued to fish in 1891 when their reservation was established, free from unreasonable interference by the defendants, and that such right has not been revoked or diminished.

Second Amended Complaint at 21. The Ninth Circuit has decided that question in the Community's favor, and the State cannot ignore that holding.

In support of this motion, plaintiff relies on the following memorandum, the record herein, the parties' pleadings, the parties' pleadings before the Ninth Circuit Court of Appeals, and the opinion of the Ninth Circuit in this case. *Metlakatla Indian Community v. Dunleavy,* 58 F.4th 1034 (9th Cir. 2023).

PAGE 2 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

## MEMORANDUM IN SUPPORT OF CROSS-MOTION AND RESPONSE IN OPPOSITION TO STATE'S MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION.

The Court should deny the State's motion for summary judgment and grant the Community's cross-motions against the State's second, third, fourth, and fifth affirmative defenses and grant the Community's first request for declaratory relief to eliminate the irrelevant issue of whether the Community must prove an aboriginal right. As explained above, the Ninth Circuit has already rejected the State's argument on that point. This case is, and always has been, a reserved rights, rather than an aboriginal rights, case.

In that regard, the State's motion is a near-frivolous attempt to sidestep the Ninth Circuit's holdings in this case that the Community has an implied reserved non-exclusive right to fish in the waters surrounding the Annette Islands Reserve and that the State's limited entry program violates that right. The Ninth Circuit found that the Community has an implied non-exclusive off-reservation fishing right and remanded solely for this Court to determine the geographic scope of that right. The State should have sought Supreme Court review if it wanted to argue that the Community must demonstrate aboriginal rights to prove the existence of its reserved rights. The State likewise should have sought Supreme Court review if it felt the Ninth Circuit was wrong that the limited entry program violates the Community's rights. Instead, the State's instant motion

PAGE 3 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 8 of 33

indulges in a fantasy that it did not already raise those same arguments before the Ninth Circuit and lose.

There is no question that the Ninth Circuit held, unequivocally, that the Community has an implied, non-exclusive off-reservation fishing right in the waters around the Annette Islands Reserve. *Dunleavy,* 58 F.4th at 1045. Given that holding, the State's motion is a flagrantly improper attempt to nullify that decision by improperly characterizing this as an aboriginal rights case, rather than a reserved rights case, and by further suggesting that the Ninth Circuit qualified its holding with the need to establish that the Community's founding members fished exclusively in fishing districts 1 and 2. *See* State's Motion at 32 ("The minimal facts presented in their complaint, taken as true, would fail to prove that the Metlakatlans exclusively fished in fishing districts 1 and 2 when Congress created the Annette Islands Reserve in 1891."). Thus, the State's current position is irreconcilable with the Ninth Circuit's unqualified holding that the Congress impliedly reserved non-exclusive off-reservation fishing rights for the Community when it established the Annette Islands Reserve.

The only factual issue remaining in this case is the scope of the Community's implied right. In that regard, the State's motion explicitly accepts the Community's key allegations as true, including the following:

> The ancestors of the Community members had exercised their right to fish in the waters of Southeast Alaska since before recorded history. Congress intended for Community members to retain their right to fish in the waters

PAGE 4 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 9 of 33

surrounding the Annette islands Reserve so that they could thrive on their reservation. Without those rights, the Community has been and will continue to be deprived of the resource at the center of their culture and that serves as their primary economic opportunity, shackling the Community's members to unrelenting cycles of poverty.

Second Amended Complaint ¶ 54. The parties just spent over two years litigating the State's motion to dismiss the complaint through the Ninth Circuit, and the Ninth Circuit found that the Community's Complaint does state a claim.[1] The State requested en banc review of the decision on the basis that the panel got it wrong because the Community had not plead aboriginal rights, and, again, the State lost, with explicit instructions from the court that it would not entertain any more en banc requests. *Dunleavy,* 58 F.4th at 1036 ("The full court has been advised of the petition, and no judge of the court has requested a vote on the petition for rehearing en banc. . . . No further petitions for rehearing or rehearing en banc will be entertained.").

Rather than dismiss the Community's claim because it did not plead exclusive use of the waters surrounding the Annette Islands Reserve, the Ninth Circuit's decision confirmed the viability of the Community's claim and favorably resolved the two major legal questions in this case: (1) the 1891 Act preserved for the Community and its members an implied right to non-exclusive off-reservation fishing in the traditional fishing grounds for personal consumption and ceremonial purposes, as well as for

---

[1] The Community filed a Second Amended Complaint following the appeal, but the Complaint made no changes relevant to this motion.

PAGE 5 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 10 of 33

commercial purposes; and, (2) Alaska's limited entry program, as currently administered, is incompatible with the Metlakatlans' off-reservation fishing rights. Those holdings are final and binding after the State's unsuccessful request for Ninth Circuit en banc review.

As to the first point, the Ninth Circuit held as follows:

> The question before us is not the existence of implied fishing rights of the Community. In *Alaska Pacific Fisheries*, 248 U.S. at 88 – 89, the Supreme Court answered this threshold question when it inferred a fishing right from the 1891 Act, relying on that right to affirm an injunction against a non-Indian fish trap 600 feet from the shore of the Community's reservation. **We thus know from *Alaska Pacific Fisheries* that there is an implied fishing right stemming from the 1891 Act. The question before us is the scope of that right.**

*Dunleavy*, 58 F.4th at 1044 (emphasis added) (discussing *Alaska Pacific Fisheries Co. v. United States*, 248 U.S. 78 (1918)).

As to the second point, the Ninth Circuit held:

> **Alaska's limited entry program, as currently administered, is incompatible with the Metlakatlans' off-reservation fishing rights.** Fishing had always been, and continues to be, the heartbeat of the Community. Congress' intent in the 1891 Act was that the Metlakatlans would have off-reservation fishing rights that would "satisfy the future as well as the present needs" of the Community. *Arizona*, 373 U.S. at 600. Any regulation by Alaska of off-reservation fishing by the Community must be consistent with such rights.

*Id.* at 1047 (emphasis added) (discussing *Arizona v. California*, 373 U.S. 546 (1963)).

The State's motion claiming that the Community does not have an implied, non-exclusive off-reservation fishing right because it cannot prove aboriginal rights, and its corollary affirmative defenses, are impossible to square with the Ninth Circuit's holdings

PAGE 6 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR  97201**
**T: (503) 225-0777 / F: (503) 225-1257**

on those two issues. Affirmative defenses two, three, and four explicitly challenge the existence of the Community's implied right on the basis that the Community cannot prove an aboriginal right. *See* Answer at 19. But the Supreme Court and the Ninth Circuit have held that the Community *does* have an implied, reserved right – a question the Supreme Court resolved more than a century ago. *Dunleavy*, 58 F.4th at 1044 (citing *Alaska Pacific Fisheries,* 248 U.S. 78 (1918)).

Similarly, affirmative defense five argues that, even if the Community does have an implied off-reservation right, the State's limited entry program lawfully applies to the Community's off-reservation fishing rights – despite the Ninth Circuit already having decided that question against the State. *Id.* at 1047 (holding that the State's current limited entry program is incompatible with the Community's off-reservation fishing rights.) *Cf.* Answer at 19-20.

These decided issues cannot be relitigated, and the Community is entitled to summary judgment against the State's affirmative defenses.

As noted above, the only factual issue left to resolve on remand is to determine the scope of the Community's implied off-reservation fishing right. And the Ninth Circuit provided specific instructions on how to make that determination:

> We therefore hold that the 1891 Act preserved for the Community and its members an implied right to non-exclusive off-reservation fishing in the traditional fishing grounds for personal consumption and ceremonial purposes, as well as for commercial purposes. Because this case comes to us on appeal from a ruling on a Rule 12(b)(6) motion, **we remand to the**

PAGE 7 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 12 of 33

**district court to allow further proceedings to determine whether the Community's traditional off-reservation fishing grounds included the waters within Alaska's Districts 1 and 2.**

*Dunleavy*, 58 F.4th at 1045 (emphasis added). The issues raised in defendant's second, third, fourth and fifth affirmative defenses have no bearing on what waters the Community's traditional off-reservation fishing grounds included. Therefore, the Court should deny the State's motion for summary judgment and grant the Community's motion against the State's affirmative defenses.

The State attempts to reconcile its current argument with the Ninth Circuit's unqualified holding by arguing that Congress reserved fishing rights for the Community in Canada. State's Motion for Summary Judgment at 39 ("This Court may ask, 'how could the Ninth Circuit find the Metlakatlans held an implied off-reservation fishing right when Congress passed the 1891 Act, but there is no implied off-reservation fishing right in Southeast Alaska?' The answer is simple: before emigrating, the Metlaktlans held an aboriginal right in Canada."). That argument is totally without merit. First, the fact that Congress cannot and would not attempt to reserve extraterritorial fishing rights in Canada requires no analysis or citation. Simply, Congress does not have that power and it is fiction to even suggest that Congress would attempt to exercise power that it did not possess. Second, the State's position ignores that the United States Supreme Court found that the Community has an implied fishing right in the waters surrounding the Annette

PAGE 8 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 13 of 33

Islands Reserve, right where the Community is claiming them in this case, not in Canada. *Alaska Pacific Fisheries*, 248 U.S. at 87.

## II.    LEGAL STANDARD.

Under Rule 56(a) of the Federal Rules of Civil Procedure, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Once the moving party meets its initial burden of proving that no material fact is in dispute as to an issue, the Court must grant summary judgment on that issue unless the non-moving party can present facts that indicate a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## III.    STATEMENT OF CASE.

The State's motion includes approximately 19 pages of largely irrelevant history and background. The key facts are straightforward, and, again, the key questions have been resolved in the Community's favor by the Ninth Circuit.[2]

The Community's Second Amended Complaint adequately describes the facts of this case. Of significance for this motion, the Community alleges and will prove at trial that its members' ancestors fished in the waters surrounding the Annette Islands Reserve

---

[2] The Community disagrees with the State's recitation of the facts on numerous points, but does not address those disagreements here because they are irrelevant to resolving the question of whether the Ninth Circuit's decision requires the Community to demonstrate aboriginal rights.

PAGE 9 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR  97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 14 of 33

since time immemorial, which are now designated as areas 1 and 2 by the Alaska Department of Fish and Game. *See* Second Amended Complaint ¶ 13 ("From those locations and during those excursions, the Tsimshian fished throughout the waters of Southeast Alaska, including as far north as 50 miles from what is now the Annette Islands Reserve."). The Second Amended Complaint also alleges that the Community originally included Alaskan natives, whose ancestors had likewise fished in the waters surrounding the Annette Islands since time immemorial. *Id.* ¶ 17. The Complaint does not allege that the Community has an aboriginal right in the waters that are now areas 1 and 2 because this is a reserved rights case.

The Ninth Circuit remanded to this Court to determine one factual question: "whether the Community's traditional off-reservation fishing grounds included the waters within Alaska's Districts 1 and 2." *Dunleavy*, 58 F.4th at 1045. The State's motion does not challenge the Community's ability to demonstrate that its ancestors fished in the waters surrounding the Annette Islands Reserve. The sole basis of the State's motion is that the Community has not alleged that its ancestors used those waters on an exclusive basis.

As required by the Ninth Circuit, the Community is fully prepared to prove that its members fished in Alaska's districts 1 and 2 since time immemorial. The Community has retained an expert who will demonstrate that the Community's members' ancestors historically fished throughout the waters of Southeast Alaska. That testimony will be in

PAGE 10 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 15 of 33

line with the common understanding that the Tsimshian and ancestors of other Alaskan natives that joined the Community did fish throughout the waters of Southeast Alaska since time immemorial.[3]

## IV.    ARGUMENT.

### A.    The State's Position that the Community Must Prove Aboriginal Rights Fails as a Matter of Law.

#### 1.    The State has fully litigated the aboriginal rights issue and lost.

The State's primary argument on appeal was the same argument that it now asserts in its motion and in its second, third, and fourth affirmative defenses – namely, that the Community could not prove an implied reserved right because it could not demonstrate an underlying aboriginal right.  Appellees' Answering Brief at 26-27, *Metlakatla Indian Community v. Dunleavy,* 48 F.4th 963 (9th Cir. 2022) (No. 21-35185), 2021 WL 3636038, at *26-*27.  The Ninth Circuit disagreed, holding that "the 1891 Act reserves for the Metlakatlan Indian Community an implied right to non-exclusive off-reservation fishing in the areas where they have fished since time immemorial and where they continued to fish in 1891 when their reservation was established." *Dunleavy*, 58 F.4th at 1048.

_____

[3] Should the State's Reply argue that the Community cannot prove that its ancestors fished in the waters of Southeast Alaska (a position it does not take in its current motion), the Community requests that this matter be stayed until the close of discovery in the case, because resolving the question turns on expert testimony.

PAGE 11 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR  97201**
**T: (503) 225-0777 / F: (503) 225-1257**

The State squarely presented the aboriginal rights issue to the Ninth Circuit and had a full and fair opportunity to litigate the question.[4]  In its response brief on appeal, the State argued that aboriginal rights are a predicate for a reserved right:

> Courts have recognized that implied off-reservation fishing rights exist only where (1) a tribe had aboriginal fishing rights that could be preserved, (2) the tribe negotiated the retention of those rights, and (3) the tribe relinquished land or rights to the United States as consideration. As a result, no court has found that a tribe without aboriginal claims has implied off-reservation fishing rights.[80] Implied off-reservation fishing rights cases consider whether a federal law preserves a tribe's aboriginal fishing rights and thus allows the tribe to continue to fish at, for instance, all "usual and accustomed grounds and stations." If a tribe lacks aboriginal fishing rights, there would be no off-reservation fishing rights for Congress to preserve.

Appellees' Answering Brief, *Dunleavy*, 2021 WL 3636038, at \*26-\*27.  The State also argued:

> The Metlakatlans, who immigrated to the Annette Islands just a few years before enactment of the 1891 Act, had no aboriginal claims. The Metlakatlans therefore had no aboriginal fishing rights to retain in any

---

[4] The State's reliance on *Tlingit and Haida Indians of Alaska v. U.S.*, 147 Ct. Cl. 315 (U.S. Ct. of Cl. 1959), is misplaced for the same reason.  Even if that decision were binding on the Community, which it is not because they did not participate, the State relied on the case before the Ninth Circuit and lost.  The State cannot relitigate the issue now.  *See* Appellees' Petition for Panel and En Banc Rehearing at 10, *Metlakatla Indian Community v. Dunleavy*, 58 F.4th 1034 (9th Cir. 2023) (No. 21-35185).  In fact, the *Tlingit and Haida Indians of Alaska* decision illustrates the breadth of congressional power to take aboriginal rights and create reserves.  The Community's implied off-reservation fishing right flows from that power, not from aboriginal rights.  Further, even if the State was right that the Community must demonstrate aboriginal rights (which it is not), the question would be whether the tribes' ancestors, including the Tlingit and Haida ancestors, had the aboriginal right *before* the creation of the reserve.  A takings case over half a century later would not affect that analysis.

PAGE 12 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR  97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 17 of 33

negotiations. Father Duncan negotiated for the tribe to settle on the Annette Islands, but in doing so the Metlakatlans did not cede lands or waters; even if they had some aboriginal rights in those lands and waters to retain. The 1891 Act was not the culmination of negotiations settling aboriginal rights or tribal land claims, but rather a gratuitous land grant.

*Id.* at *28-*29.

The Community responded by arguing that aboriginal rights are not part of the analysis of whether Congress created a reserved right. The Community's Reply brief before the Ninth Circuit methodically addressed the case law cited by the State in support of the State's argument that aboriginal rights are an element of an implied reserved right, explaining why the *Chehalis, Colville Confederated Tribes,* and *Michigan* opinions do not require an aboriginal right. Plaintiff-Appellant's Reply Brief at 22-23, *Metlakatla Indian Community v. Dunleavy*, 48 F.4th 963 (9th Cir. 2022) (No. 21-35185), 2021 WL 4617706, at *22-*23 ("Put simply, the State's aboriginal rights three-part test does not guide the Court's review of the Community's claim . . . ."). The Community *did not* argue that it has an aboriginal right. The Community's position is and always has been that its reserved fishing right arises from congressional intent. The existence of aboriginal rights is entirely irrelevant.

In the light of the briefing, the Ninth Circuit panel was presented with the following two conflicting positions: (1) the State argued that the Community does not have a reserved right because it does not have the predicate aboriginal right; and, conversely, (2) the Community argued that its implied off-reservation fishing right arose

PAGE 13 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 18 of 33

from Congress's purpose in creating the reservation and the existence of an aboriginal right was irrelevant to whether it possessed a reserved right. The Ninth Circuit sided with the Community, concluding that the Community has that right, and that the Supreme Court in fact had decided that question more than a century ago. *Dunleavy*, 58 F.4th at 1048. Thus, the Court squarely rejected the State's position that the Community must have an aboriginal right to establish the existence of a reserved right, which is the sole basis of the State's present motion.

Dissatisfied with the Ninth Circuit's answer, the State sought en banc review of the decision. And again, the State challenged the sufficiency of the Community's allegations on the basis that the Community had not alleged aboriginal rights. Appellees' Petition for Panel and En Banc Rehearing at 10, *Metlakatla Indian Community v. Dunleavy*, 58 F.4th 1034 (9th Cir. 2023) (No. 21-35185). Rather than side with the State, the Ninth Circuit panel issued a slightly revised opinion clarifying only that, due to the procedural posture of the case, the Community must demonstrate the scope of its members' historical fishing practices. The Ninth Circuit opinion also stated that no further petitions for en banc review would be entertained, and the State did not file a petition for writ of certiorari with the Supreme Court.

///

///

PAGE 14 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 19 of 33

The Ninth Circuit's rejection of the State's aboriginal rights position is correct and binding on this Court. In fact, the Ninth Circuit went further and found unequivocally that the Community *does* have an implied, non-exclusive off-reservation fishing right in the waters surrounding the Annette Islands Reserve. The State cannot challenge that decision now either through its motion for summary judgment or its affirmative defenses.

      2.      **The Ninth Circuit recognized, correctly, that the Community is seeking a reserved right, not an aboriginal right.**

          a.      **The Community's non-exclusive reserved fishing right flows from congressional intent, not aboriginal rights.**

The Ninth Circuit's repudiation of the State's aboriginal rights defense was a straightforward application of Indian law. Notably, in this case the Community is not asserting a claim for relief based on an aboriginal right – rather, its claim seeks to protect and enforce a reserved right. Reserved rights are distinct from aboriginal rights both in origin and substance because they arise from the intent of the federal government in creating a reservation. *Winters v. United States,* 207 U.S. 564, 576–77 (1908). In this case, the Ninth Circuit applied well-established Indian law that dictates the inference of reserved rights, particularly as to the use of adjacent natural resources, which are necessary to achieve the reservation's purpose. *Id.* (holding that the federal government impliedly reserved water rights for the tribe so that they could farm the arid ground on their reservation).

PAGE 15 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Aboriginal rights, on the other hand, arise from the tribe's historic *exclusive* use of resources, not from the intent of the federal government. *Sac & Fox Tribe of Okla. v. United States,* 383 F.2d 991, 998 (Ct. Cl. 1967) (stating that to prove the existence of an aboriginal right, a tribe must demonstrate "actual, exclusive, and continuous use and occupancy for a long time of the claimed area") (internal punctuation and citation omitted). Unlike reserved rights, "[a]boriginal rights don't depend on a treaty or an act of Congress for their existence." *Native Village of Eyak v. Blank,* 688 F.3d 619, 622 (9th Cir. 2012). Aboriginal rights have no bearing on or relevance to this case because it is settled law that Congress, in creating the Annette Islands Reserve, reserved for the Community an implied, non-exclusive, off-reservation fishing right.

Significantly, the State's position that "time-immemorial" is synonymous with "aboriginal rights" is similarly without merit and, accordingly, finds no support in the Ninth Circuit's opinion or anywhere else. *See* State's Motion at 27 ("Remember, aboriginal rights are often referred to as rights held 'since time immemorial.'"). As the State points out, the aboriginal rights doctrine is specific, and requires an Indian tribe to prove certain elements. Here, the State's argument rests on the exclusivity element. However, the Ninth Circuit did not remand to determine "exclusivity." Rather, the court remanded to the District Court to determine the Community's ancestors' use of the surrounding water since time immemorial. The term "time immemorial" use, in contrast

PAGE 16 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 21 of 33

to "exclusive" use, has a much broader meaning.  Black's Law Dictionary provides the

following three definitions, none of which reference aboriginal rights:

> **time immemorial** (17c) **1.** A point in time so far back that no living person
> has knowledge or proof contradicting the right or custom alleged to have
> existed since then. • At common law, that time was fixed as the year 1189,
> the year that Henry II of England died. In Latin, the idea was fixed in the
> phrase *a tempore cujus contrarii memoria non existet*, meaning "from a time
> when there is no memory to the contrary." — Also termed *time out of
> memory*; *time out of mind*; *time of memory.* **2.** A point in time beyond which
> legal memory cannot go. See LEGAL MEMORY. **3.** A very long time.

*Time Immemorial*, *Black's Law Dictionary* (11th ed. 2019).  Courts have long used the

time immemorial language to communicate the specific concept of a date long ago,

before living memory or knowledge, which has nothing to do with exclusive use.  That

includes situations outside of an aboriginal rights analysis.[5]  In fact, Judge Fletcher

himself, the author of the Ninth Circuit's opinion, has used the term in Indian law cases

aside from the aboriginal rights cases.  For example, in *Navajo Nation v. U.S. Forest

Service*, 479 F.3d 1024, 1048 (9th Cir. 2007), he held that "[f]rom time immemorial, [the

Navajo] have relied on the [San Francisco] Peaks, and the purity of the Peaks' water, as

---

[5] The phrase time immemorial is also used in numerous contexts outside of Indian law.
*See, e.g.*, *Robertson v. Baldwin*, 165 U.S. 275, 280–82, 288 (1897) (holding that
involuntary "services which have from time immemorial been treated as exceptional shall
not be regarded as within [the 13th amendment's] purview."); *see also Alsop v.
Fedarwisch*, 9 App. D.C. 408, 417 (1896) (holding that certain terms in the deed at issue
"have been used from time immemorial for the creation of joint tenancies").  These
examples are by no means exhaustive.

PAGE 17 – **PLAINTIFF'S CONSOLIDATED
RESPONSE TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND CROSS-MOTION
FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR  97201**
**T: (503) 225-0777 / F: (503) 225-1257**

an integral part of their religious beliefs."). The Navajo challenged the U.S. Forest Service's approval of a proposed expansion to a ski area that would have involved the use of treated sewage water for snow making in violation of the Religious Freedom Restoration Act. In *Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1006, 1011 (9th Cir. 2012), Judge Fletcher used the phrase in discussing the facts of an Endangered Species Act case where the Karuk Tribe sued the USFS over mining activities in the Klamath watershed: "[t]he Karuk Tribe has inhabited what is now northern California since time immemorial.").

Here, the Ninth Circuit's precise language is dispositive: "We hold that the 1891 Act reserves for the Metlakatlan Indian Community an implied right to non-exclusive off-reservation fishing in the areas where they have fished since time immemorial and where they continued to fish in 1891 when their reservation was established. We reverse the decision of the district court and remand for further proceedings consistent with this opinion." *Dunleavy*, 58 F.4th at 1048 (emphasis added). The court's holding clearly states that the Community has a reserved right where they have fished since time immemorial, meaning for a very long time, and where they continued to fish at the time of the reservation's establishment. The court did not require proof of "exclusive" use. This Court should reject the State's attempt to create ambiguity where there is none or insert words or meanings that were not intended by the court.

PAGE 18 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 23 of 33

The Ninth Circuit's language is no mistake. The court was fully aware of the "aboriginal rights" doctrine and intentionally did not address or rely on it. Judge Fletcher, the author of the opinion, clearly understands the distinction between aboriginal and reserved rights. He has authored majorities and dissents in landmark Indian law cases addressing both concepts. *See U.S. v. Washington,* 853 F.3d 946 (9th Cir. 2017) (addressing reserved rights); *Native Village of Eyak v. Blank,* 688 F.3d 619, 626 (9th Cir. 2012) (addressing aboriginal rights) (Fletcher, J., dissenting). Based on those opinions, Judge Fletcher would have used the term "aboriginal rights" had he meant "aboriginal rights." But he did not - and the glaring absence of such language cannot be ignored.

      **3.**     <u>**The State's motion does not challenge the fact that the Community's ancestors fished in the waters surrounding the Annette Islands Reserve**</u>.

The State does not appear to dispute that the Community's ancestors fished in the waters surrounding the Annette Islands Reserve. The State challenges only the Community's ability to prove that its historic fishing in what is now areas 1 and 2 satisfies one element of an aboriginal right, particularly "exclusivity." The State's motion explicitly accepts the key allegations in the Community's Complaint as true and argues only that the allegations do not prove "exclusive" use of fishing districts 1 and 2. *See* State's Motion at 32 ("The minimal facts presented in their complaint, taken as true, would fail to prove that the Metlakatlans' exclusively fished in fishing districts 1 and 2

PAGE 19 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 24 of 33

when Congress created the Annette Islands Reserve in 1891."). But, as noted above, the Ninth Circuit did not require such evidence.

In fact, the Community's key allegations line up precisely with the Ninth Circuit's remand instructions that required the Community to prove that its ancestors' historic fishing grounds included what is now fishing districts 1 and 2:

> From time immemorial, fishing has been the bedrock of the Coast Tsimshian culture and way of life. While the Tsimshian maintained a central village, their fishermen migrated with the fish runs, establishing temporary fishing villages along the coast and rivers of British Columbia, and engaged in frequent trading voyages to the villages of other Alaskan Native tribes, such as the Tlingit and Haida Tribes. From these locations and during these excursions, the Tsimshian fished throughout the waters of Southeast Alaska, including as far north as 50 miles from what is now the Annette Islands Reserve.

Second Amended Complaint ¶ 13.

> The ancestors of the Community members had exercised their right to fish in the waters of Southeast Alaska since before recorded history. Congress intended for Community members to retain their right to fish in the waters surrounding the Annette islands Reserve so that they could thrive on their reservation. Without those rights, the Community has been and will continue to be deprived of the resource at the center of their culture and that serves as their primary economic opportunity, shackling the Community's members to unrelenting cycles of poverty.

*Id.* ¶ 54.

> The ancestors of the Metlakatlans, which includes the Tsimshian people and 'such other Alaskan natives as may join them' fished throughout Southeastern Alaska from time immemorial.

*Id.* ¶ 16.

PAGE 20 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 25 of 33

The State does not challenge those allegations, because there has never been any real question that the Community members' ancestors fished in the waters of Southeast Alaska. In enacting the limited entry program and seeking to enforce it against the Community, the State is continuing to put a baseless legal cage around the Community to keep its members locked on their reservation, away from the fish resources necessary to achieve Congress' goal of establishing a permanent home. The Community's Complaint simply seeks to break those barriers so that Metlakatlans can exercise their nonexclusive fishing right in the waters surrounding the Annette Islands Reserve. Everyone knew the Community had that right in 1891, and everyone except apparently the State of Alaska knows it now after the Ninth Circuit's opinion in this case. The Court should reject the State's attempt to erect additional barriers between the Community and its judicially recognized right to fish.

**B.** **The Alaska Native Claims Settlement Act is Irrelevant to this Case.**

Before addressing the State's substantive arguments related to the Alaska Native Claims Settlement Act, 43 U.S.C. ch. 33 ("ANCSA"), it is worth noting that the State's position that ANCSA extinguished the Community's fishing right cannot be correct because it is irreconcilable with the Ninth Circuit's decision in this case. The Ninth Circuit held that the Community does in fact have an implied reserved right and remanded to determine the scope. Yet, the State still claims ANCSA extinguished the Community's fishing right. Both cannot be true. The Ninth Circuit's decision is

PAGE 21 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

controlling, and the analysis should end there. If the State had a problem with the Ninth Circuit's decision, it was incumbent on the State to seek Supreme Court review.

### 1. Whether ANCSA abrogated aboriginal rights is irrelevant to whether the Community has implied reserved rights.

For all the reasons stated above, whether the Community had aboriginal rights is irrelevant to whether Congress reserved an implied, non-exclusive fishing right for the Community. Even assuming ANCSA had some effect on the Community's aboriginal rights, the Community is not seeking to enforce aboriginal rights. The State's sole argument is that ANCSA abrogated aboriginal rights, but aboriginal rights are irrelevant as discussed above.

Thus, the Court should deny the State's motion for summary judgment to the extent it relies on aboriginal rights. Similarly, the State's citation to ANCSA in its second and fourth affirmative defenses is wrong. Those affirmative defenses depend on the same suite of incorrect aboriginal rights arguments the State relies on in its motion and should be struck for the same reasons.

### 2. ANCSA did not abrogate the Community's reserved fishing rights.

Even if ANCSA was relevant, which it is not because this is a reserved rights case, the Community, its members, and the Annette Islands Reserve were specifically excluded from ANCSA's abrogation of native rights. 43 U.S.C. § 1618(a). ANCSA has no application here on that basis as well.

PAGE 22 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 27 of 33

ANCSA specifically excluded Metlakatlans from the definition of "Native:"

> ANCSA § 1602(b) Definitions — "Native" means "a citizen of the United States who is a person of one-fourth degree or more Alaska Indian **(including Tsimshian Indians not enrolled in the Metlakatla Indian Community)** Eskimo, or Aleut blood, or combination thereof. The term includes any Native as so defined either or both of whose adoptive parents are not Natives. It also includes, in the absence of proof of a minimum blood quantum, any citizen of the Unites States who is regarded as an Alaska Native by the Native village or Native group of which he claims to be a member and whose father or mother is (or if deceased, was) regarded as Native by any village or group. Any decision of the Secretary regarding eligibility for enrollment shall be final[.]

43 U.S.C. § 1602(b) (emphasis added).

ANCSA likewise specifically excludes the Annette Islands Reserve, which is the source of the Community's rights, including its off-reservation, non-exclusive fishing right:

> Notwithstanding any other provision of law, and except where inconsistent with the provisions of this chapter, the various reserves set aside by legislation or by Executive or Secretarial Order for Native use or from administration of Native affair, including those created under the Act of May 31, 1938 (52 Stat. 593), are hereby revoked subject to any valid existing rights of non-Natives. **This section shall not apply to the Annette Island Reserve established by the Act of March 3, 1891 (26 Stat. 1101) and no person enrolled in the Metlakatla Indian community of the Annette Island Reserve shall be eligible for benefits under this chapter.**

*Id.* § 1618(a) (emphasis added). Here, the Ninth Circuit found that the Community's rights flow from the Act of March 3, 1891. In other words, the Community's reserved non-exclusive fishing right is part of the reservation, arises from the reservation, and was preserved in ANCSA.

PAGE 23 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR  97201**
**T: (503) 225-0777 / F: (503) 225-1257**

C. **The Court Has Resolved Both Key Questions in the Community's Favor.**

      1.    **The Ninth Circuit decided that the Community has a non-exclusive reserved fishing right in the waters surrounding the Annette Islands Reserve.**

The Community is entitled to summary judgment on its first claim because the Ninth Circuit has already determined that the Community has a non-exclusive implied reserved right in the waters surrounding the Annette Islands Reserve. The Ninth Circuit's holding could not have been more plain:

> The question before us is not the existence of implied fishing rights of the Community. In *Alaska Pacific Fisheries*, 248 U.S. at 88–89, the Supreme Court answered this threshold question when it inferred a fishing right from the 1891 Act, relying on that right to affirm an injunction against a non-Indian fish trap 600 feet from the shore of the Community's reservation. **We thus know from *Alaska Pacific Fisheries* that there is an implied fishing right stemming from the 1891 Act. The question before us is the scope of that right.**

*Dunleavy*, 58 F.4th at 1044 (emphasis added) (discussing *Alaska Pacific Fisheries*, 248 U.S. 78 (1918)).

While the issue should not even be contested at this point, the Community is entitled to a judgment in its favor on its first claim requesting a declaration that it has an implied reserved fishing right in the waters around the Annette Islands Reserve. The sole remaining question is the scope of that right, which the Community will demonstrate by showing that its members' ancestors fished in the waters surrounding what is now the Annette Islands Reserve since time immemorial.

PAGE 24 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 29 of 33

## 2. The Ninth Circuit already has held that the limited entry program violates the Community's rights.

Finally, the Ninth Circuit's holding regarding the limited entry program speaks for itself and requires no commentary: "Alaska's limited entry program, as currently administered, is incompatible with the Metlakatlans' off-reservation fishing rights." *Dunleavy,* 58 F.4th at 1047. The State's fifth affirmative defense claiming that the limited entry program *can* apply to the Community's reserved fishing right is irreconcilable with that holding, and, thus, fails as a matter of law.[6]

The Ninth Circuit correctly held that the Community possesses a reserved, non-exclusive fishing right in the waters surrounding the Annette Island Reserve. The State chose not to appeal that decision to the United States Supreme Court. The Ninth Circuit's decision is binding on this Court, and the State cannot relitigate the issue whether they agree with the Ninth Circuit's decision or not. The Court should grant the Community's motion for summary judgment against the State's fifth affirmative defense because the Ninth Circuit resolved in the Community's favor the question of whether the State's limited entry program can apply to the Community's members.

---

[6] The conclusion of the State's motion for summary judgment "requests" an opportunity to raise this argument "if at any time in this litigation this Court finds MIC members hold an off-reservation fishing right . . . ." State's Motion at 40. The Court should deny that request for the same reasons that it should grant the Community's motion for summary judgment against the State's fifth affirmative defense.

PAGE 25 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

## V.    <u>CONCLUSION</u>.

For the foregoing reasons, the Court should deny the State of Alaska's motion for summary judgment and grant the Community's cross-motion against the State's second, third, fourth and fifth affirmative defenses and its cross-motion for summary judgment on the Community's first request for declaratory relief.

DATED this 16th day of October, 2023.

HAGLUND KELLEY LLP

By: /s/ Christopher Lundberg
     Christopher Lundberg, OSB No. 941084
     (pro hac vice)
     Email: clundberg@hk-law.com
     Joshua J. Stellmon, OSB No. 075183
     (pro hac vice)
     Email:  jstellmon@hk-law.com
     2177 SW Broadway
     Portland, OR 97201
     (503) 225-0777
     *Attorneys for Plaintiff*

PAGE 26 – **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR  97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 31 of 33

# CERTIFICATE OF WORD COUNT

Consistent with Local Rule 7.4, I certify that this document complies with the court-ordered word count limit because it contains 6,218 words.

DATED this 16th day of October, 2023.

**HAGLUND KELLEY LLP**

By: /s/ Christopher Lundberg
    Christopher Lundberg, OSB No. 941084
    (pro hac vice)
    Email: clundberg@hk-law.com
    Joshua J. Stellmon, OSB No. 075183
    (pro hac vice)
    Email:  jstellmon@hk-law.com
    2177 SW Broadway
    Portland, OR 97201
    (503) 225-0777
    *Attorneys for Plaintiff*

CERTIFICATE OF WORD COUNT

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR  97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 32 of 33

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT** was filed with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in Case No.: 5:20-cv-00008-SLG who are registered CM/ECF users will be served by the CM/ECF system.

DATED October 16, 2023.

HAGLUND KELLEY LLP

By: /s/ Christopher Lundberg
    Christopher Lundberg, OSB No. 941084
    (pro hac vice)
    Email: clundberg@hk-law.com
    Joshua J. Stellmon, OSB No. 075183
    (pro hac vice)
    Email: jstellmon@hk-law.com
    2177 SW Broadway
    Portland, OR 97201
    (503) 225-0777
    *Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 46   Filed 10/16/23   Page 33 of 33