TREG TAYLOR
ATTORNEY GENERAL

Christopher F. Orman (Alaska Bar No. 1011099)
Assistant Attorney General
Alaska Department of Law
PO Box 110300
Juneau, AK 99811-0300
Telephone: (907) 465-3600
Facsimile: (907) 465-3019
Email: *christopher.orman@alaska.gov*

*Attorney for the State of Alaska*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| METLAKATLA INDIAN COMMUNITY, a Federally Recognized Indian Tribe, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. DUNLEAVY, Governor of the State of Alaska, DOUG VINCENT-LANG, Commissioner of the Alaska Department of Fish and Game, and JAMES E. COCKRELL, Commissioner of the Alaska Department of Public Safety, <br><br> Defendants. | Case No.: 5:20-cv-00008-SLG <br><br> **DEFENDANTS' REPLY AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

The Ninth Circuit did not make new law. It adopted the *U.S. v. Michigan* rule.[1]

Under this rule, the Tsimshian emigrants' non-extinguished aboriginal rights that were

---

[1]     MIC argued *Chehalis* – a case that does not address the scope of an implied off-reservation fishing right – and not *U.S. v. Michigan* should apply. Plaintiff-Appellant's Reply Brief, 2021 WL 4617706 *18 – 20 (Sept. 28, 2021). The Ninth Circuit adopted

"preserved" when Congress created the Annette Islands Reserve provides the scope of MIC members' implied off-reservation fishing right.[2] The Ninth Circuit's final holding confirmed this interpretation, stating that the scope of MIC members' off-reservation fishing right were those waters where the Tsimshian emigrants had "fished since time immemorial and where they continued to fish in 1891."[3] By using the phrase "fished since time immemorial" – a phrase that for 200 years has been used in aboriginal rights litigation – the Ninth Circuit confirmed this is an aboriginal rights case.

For this Court to grant the relief requested, MIC has the burden of proving that the Tsimshian emigrants in 1891 had actual, continuous, and exclusive use since time immemorial of the historic waters of fishing districts 1 and 2.[4]

Due to the Tlingit and Haida takings litigation and the Alaska Native Claims Settlement Act (ANCSA), MIC cannot meet its burden.

Lastly, if this Court finds that MIC members' off-reservation fishing right includes any State of Alaska waters, this Court must consider whether the "conservation necessity" principle applies; thus, whether the State's limited entry program is

---

*U.S. v. Michigan. Metlakatla Indian Community v. Dunleavy*, 58 F.4th 1034 (9th Cir. 2023).

[2]   *Metlakatla Indian Community v. Dunleavy*, 58 F.4th 1034, 1044, 1048 (9th Cir. 2023).

[3]   *Id*. at 1048.

[4]   *Native Village of Eyak v. Blank*, 688 F.3d 619, 622 (9th Cir. 2012).

nondiscriminatory and satisfies a conservation purpose.[5] If the "conservation necessity" principle applies, then MIC members exercising their off-reservation fishing rights would need to comply with the State's limited entry permit program.

## ARGUMENT

I.    **The Ninth Circuit did not make new law when it adopted the _U.S. v. Michigan_ rule, and under that rule, the aboriginal rights Congress "preserved" when it created the reservation provides the scope of a tribe's off-reservation fishing right.**

The question before this Court is relatively simple: "what rule does this Court apply to determine whether MIC members' off-reservation fishing right includes fishing districts 1 and 2?"[6]

The Ninth Circuit answered that question when it adopted the _U.S. v. Michigan_ rule. As the Ninth Circuit explained:

> The Sixth Circuit affirmed the district court's holding that a treaty _reserved_ for the Sault Ste. Marie Tribe of Chippewa Indians of Michigan and Bay Mills Indian Community _implied non-exclusive fishing rights in certain areas of the Great Lakes. United States v. Michigan_, 471 F. Supp. 192, 253, 258 (W.D. Mich. 1979), aff'd, 653 F.2d 277. The district court concluded that the historical evidence "demonstrat[ed] that the Indians were absolutely dependent upon fishing for subsistence and their livelihood" such that "_they would not have **relinquished** their right to fish_ in the ceded waters of the Great Lakes." Id. at 253. Applying _Winters_, the district court held that the treaty "_impliedly reserved a right_ to fish commercially and for subsistence" in those areas of the Great Lakes because (1) _the treaty lacked "language expressly **relinquishing** the **aboriginal right** of the ... Indians to fish in the ... waters_"; (2) at the time of the treaty, "commercial fishing was essential to the livelihood of these Indians

---

[5]    Often referred to as the "_Puyallup_ factors." _See_ Cohen's Federal Indian Law, §§ 18.02, 18.04[2][e] (2012 ed).

[6]    MIC fails to explain what rule this Court should apply.

and for them **to have relinquished fishing rights** would have been tantamount to agreeing to a systematic annihilation of their culture, and perhaps of their very existence"; (3) the tribes and the federal government "were aware that the Indians had no way of sustaining themselves in Michigan except by fishing"; and (4) "the Indians did not understand the treaty to limit their right to fish."[7]

The tribe's off-reservation fishing right "depends upon [the tribe] having possessed aboriginal rights in the area" in question.[8] The aboriginal rights the tribe did not "relinquish" to Congress were "preserved" when the reservation was created.[9] These "preserved rights" provide the scope of the tribe's off-reservation fishing right.[10]

The Ninth Circuit confirmed it had adopted the *U.S. v. Michigan* rule when it used words like "preserved" and "relinquish." At its initial holding, the Ninth Circuit stated, "We therefore hold that the 1891 Act <u>preserved</u> for the Community and its members an implied right."[11] Aboriginal rights the Tsimshian did not "relinquish" would be the "preserved right" under *U.S. v. Michigan*.[12] Similarly, the Ninth Circuit cited to an 1898

---

[7]    *Metlakatla Indian Community*, 58 F.4th at 1044; *emphasis added*.

[8]    *U.S. v. State of Mich*., 471 F.Supp. 192, 255 (W.D. Mich. 1979).

[9]    *Id*.

[10]    Aboriginal rights are not created by a treaty or act. *See Native Village of Eyak*, 688 F.3d at 622. Congress can freely extinguish aboriginal rights. *Tee-Hit-Ton Indians v. U.S.*, 348 U.S. 272 (1955). Those non-extinguished aboriginal rights provide the scope of an off-reservation fishing right. *Metlakatla Indian Community*, 58 F.4th at 1044. Congress can also <u>expressly</u> grant off-reservation rights, and their scope is tied to Congress' language and intent. *U.S. v. State of Wash*., 157 F.3d 630 (9th Cir. 1998). But implied off-reservation fishing rights, are tied to aboriginal rights and thus are not limitless.

[11]    *Metlakatla Indian Community*, 58 F.4th at 1044.

[12]    *Id*.; *emphasis added*.

Report on Salmon Fisheries in Alaska, which stated "that these [fishing] practices 'provide convincing evidence that they did not equate immigration with a relinquishing of their aboriginal resource rights.'"[13] If the Ninth Circuit intended to make new law and depart from *U.S. v. Michigan*, referencing "preserved" rights or "relinquished" rights would have been unnecessary.[14] Instead, by using those phrases, the Ninth Circuit confirmed that the tribe's aboriginal rights when Congress created the reservation provides the scope of a tribe's off-reservation fishing right.[15]

Lastly, the Ninth Circuit did not expand the *Winters* doctrine beyond the "framework" used in *U.S. v. Michigan*. In June 2023, four months after the Ninth Circuit's decision here, the U.S. Supreme Court in *Arizona v. Navajo Nation* clarified that the *Winters* doctrine is a "water rights doctrine" and under the doctrine "the Federal Government [must] reserve[] water only to the extent needed to accomplish the purpose of the reservation."[16] As the Ninth Circuit explained, because the *Winters* doctrine is a "water rights doctrine," only some of its policies or "framework" have been adopted in

---

[13]   *Id*. at 1039; *emphasis added* (Note: this cited language was referencing the rights the Tsimshian held in Canada, and not in Southeast Alaska's waters; thus, confusing Old Metlakatla and New Metlakatla.).

[14]   *Id*.

[15]   *See also Metlakatla Indian Community*, 58 F.4th at 1046 ("Metlakatlans and their Tsimshian ancestors asserted and exercised a right to fish in these waters since time immemorial. In passing the 1891 Act, Congress "confirmed the continued existence of th[is] right[ ].").

[16]   599 U.S. 555, 561 (2023).

implied off-reservation fishing rights cases.[17] No court has expanded the *Winters* doctrine—or wholesale adopted the *Winters* doctrine—in off-reservation fishing rights cases. The Ninth Circuit did not do so here either.

In its final holding, the Ninth Circuit further confirmed it had not expanded the *Winters* doctrine and that in adopting the *U.S. v. Michigan* rule, a tribe's aboriginal rights at the time Congress created the reservation establishes the scope of that tribe's off-reservation fishing right.

## II. Indian law cases have used the phrase "use from time immemorial" as a synonym for "aboriginal right of use" for approximately 200 years and the Ninth Circuit, as well as MIC in their complaint, did not depart from that well-established case law.

In addition to using the phrases "preserved" and "relinquish," in its final holding, the Ninth Circuit expressly stated that the scope of MIC members' off-reservation fishing right is where the Tsimshian emigrants had "fished from time immemorial"; thus, where they held aboriginal rights.[18]

For almost 200 years, Indian law cases have used "aboriginal rights" and "use from time immemorial" interchangeably.[19] As the District Court of California explained,

---

[17]    *Metlakatla Indian Community*, 58 F.4th at 1043.

[18]    *Id.*

[19]    *Johnson v. M'Intosh*, 21 U.S. 543, (1823) (the U.S. Supreme Court never once used the word "aboriginal"); *Pueblo of Jemez v. United States*, 430 F.Supp.3d 943 (D.NM. 2019); *U.S. v. Santa Fe Pac. R. Co.*, 314 U.S 339 (1941) (aboriginal title case); *U.S. v. Adair*, 723 F.2d 1394 (9th Cir. 1983); *Chase v. Andeavor Logistics, L.P*, 2023 WL 5920379 (D. North Dakota 2023); *Tee-Hit-Ton Indians v. U.S.*, 348 U.S. 272, 277 (1955); *U.S. v. Dann*, 873 F.2d 1189, 1195 (9th Cir. 1989); *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998); *Greene v. Rhode Island*, 398 F.3d 45, (1st Cir. 2005); *Seneca Nation of Indians v. New York*, 382 F.3d 245, 248 fn. 4

"the Tribe alleges they have occupied the Coachella valley since time immemorial . . .

that means they held an aboriginal right of occupancy."[20] The District Court of Alaska

similarly stated, "until the 1971 Settlement Act the Eskimos of the Arctic Slope had a

right of exclusive possession to the Arctic Slope of Alaska based on use and occupancy

of that region from time immemorial, or as it is sometimes termed, 'aboriginal title.'"[21]

The "use" in "use from time immemorial" or "use since time immemorial"

changes depending on the case being heard. In an aboriginal land claims case, courts

articulate the aboriginal rights question at issue as "occupied from time immemorial."[22]

In an off-reservation fishing rights case, it is "fished from time immemorial."[23] But courts

use the same basic phrase of "use from time immemorial" throughout these cases.[24]

Nothing in the Ninth Circuit's decision suggests that when it used this

unmistakable aboriginal rights language in its final holding, that it departed from 200

years of case law.[25] The Ninth Circuit's final holding states, "We hold that the 1891 Act

---

(2nd Cir. 2004); *U.S. v. Abouselman*, 976 F.3d 1146 (10th Cir. 2020); and *U.S. v. Kent*, 945 F.2d 1441 (9th Cir. 1991).

[20]     *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water District*, 2015 WL 133309103 *9 (C.D. Cal. 2015) (the tribe never used the phrase "aboriginal rights.").

[21]     *U.S. v. Atlantic Richfield Co*., 435 F.Supp. 1009, 1014 (D.Alaska 1977).

[22]     Supra 19.

[23]     *Id*.

[24]     *Id*.

[25]     Judge Fletcher's other decisions are consistent with this interpretation. *See Navajo Nation v. U.S. Forest Service*, 479 F.3d 1024, 1048 (9th Cir. 2007), *reversed en banc* (the aboriginal rights language was appropriately removed given it was irrelevant); and *Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1006, 1011 (9th Cir. 2012).

reserves for the Metlakatla Indian Community an implied right to non-exclusive off-reservation fishing in the areas where they have <u>fished since time immemorial</u> and where they continued to fish in 1891 when their reservation was established."[26] The Ninth Circuit purposefully used the "use from time immemorial" language, which means "aboriginal rights." The Ninth Circuit, therefore, adopted an aboriginal rights test to determine the scope of MIC members' off-reservation fishing right.[27]

The Ninth Circuit's decision to adopt an aboriginal rights-based rule is consistent with factual allegations MIC made in their October 1, 2020 complaint. In reviewing this Court's decision granting a motion to dismiss, the Ninth Circuit accepted all of the factual allegations in MIC's complaint as true.[28] Three of MIC's allegations expressly included "use from time immemorial" language:

1. "Since time immemorial, ancestors of the Community members fished the waters of Southeastern Alaska." [Dkt 20, ¶ 38]

2. "The ancestors of the Metlakatlans . . . fished throughout Southeastern Alaska from time immemorial." [Dkt 20, ¶ 16].

3. "Since the Community's founding in 1887, its members have relied on the fishery resources in Southeast Alaska as their primary source of economic revenue as their ancestors had done since time immemorial." [Dkt 20, ¶ 1].

---

[26]     *Metlakatla Indian Community*, 58 F.4th at 1048; *emphasis added*.

[27]     Supra 19; *see also Native Village of Eyak*, 688 F.3d at 622.

[28]     *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993) ("We review here a decision granting a motion to dismiss, and therefore must accept as true all the factual allegations in the complaint.").

It strains common sense to believe MIC included these allegations based on a Black's Law Dictionary definition of "time immemorial" or the use of the phrase in a joint tenancy case.[29] [Dkt 46, pp. 21-23.] These allegations were included because MIC knew *U.S. v. Michigan* was the law on off-reservation fishing rights. Based on these allegations, the Ninth Circuit adopted the *U.S. v. Michigan* rule and thus the aboriginal rights test.[30] If MIC wanted to depart from *U.S. v. Michigan* and expand the *Winters* doctrine, their factual allegations failed to express that intent.[31]

All of which makes this an aboriginal rights case. However, MIC's complaint and briefing both use phrases like "ancestors of other Alaska natives that joined the Community." [Dkt 20; Dkt. 46]. This begs the question, "which tribe's aboriginal rights does MIC rely on and which ones should this Court consider?"

## III. This Court's aboriginal rights inquiry under *U.S. v. Michigan* is limited to the aboriginal rights held by the Tsimshian emigrants – the Metlakatlans – in 1891.

MIC's modern community consists of descendants of the Tsimshian emigrants – the Metlakatlans – as well as descendants of Tlingit, Haida, and even Aleut who joined the community after 1891.[32] Because of this, MIC alleges that at trial it will present

---

[29]  *See* supra 18. MIC's original complaint did not include these allegations. [Dkt 1 (August 7, 2020)].

[30]  *Metlakatla Indian Community*, 58 F.4th at 1048.

[31]  *See also* MIC's current complaint. [Dkt 40, ¶¶ 1, 13, 16, 21, 33 (*citing* the Ninth Circuit's decision), 40, 41, 57, and Prayer for Relief (1).].

[32]  Alaska-Natives.com, Metlakatla Indian Community; available at: https://www.alaskan-natives.com/305/305/ (accessed on November 6, 2023).

evidence that "the Tsimshian and <u>ancestors of other Alaskan natives</u> that joined the Community did fish throughout the waters of Southeast Alaska since time immemorial." [Dkt 46, p. 15-16; *emphasis added*]. Because Tlingit and Haida Indians have joined the Community, this phrasing suggests MIC intends to present evidence of the aboriginal rights the Tlingit and Haida Indians held – even potentially relying on the 1959 Court of Claims decision[33] – to establish the scope of MIC members' off-reservation fishing right.[34] Such an approach would be inconsistent with the Ninth Circuit's decision, the *U.S. v. Michigan* rule, the Tlingit and Haida takings litigation, and ANCSA. This Court's inquiry is limited to considering the aboriginal rights that the Tsimshian emigrants – the Metlakatlans – held in 1891.

When it applied *U.S. v. Michigan*, the Ninth Circuit found MIC members held an off-reservation fishing right based on the Tsimshian emigrants' – thus the Metlakatlans' – history and rights.[35] The Ninth Circuit included three pages of history about the Tsimshian and the Metlakatlans, explaining that the Metlakatlans were Tsimshian that joined Father Duncan's Canadian Christian community in British Columbia and then emigrated to the United States in 1887.[36] Rebutting the State's arguments, the Ninth Circuit explained the aboriginal rights held by those Metlakatlans gave rise to MIC

---

[33]    *Tlingit and Haida Indians of Alaska v. U.S.*, 147 Ct.Cl. 315, 342 (Ct. Cl. 1959).

[34]    *Id.*

[35]    *Metlakatla Indian Community*, 58 F.4th at 1038-1041.

[36]    *Metlakatla Indian Community*, 58 F.4th at 1046 (describing Metlakatlans as descending from Tsimshian ancestors and ignoring any other anthropological groups that may have joined.).

members' off-reservation fishing right.[37] It is those Tsimshian emigrants' rights and whether their aboriginal rights included fishing districts 1 and 2 that provides the scope of MIC members' off-reservation fishing right.[38]

By adopting the *U.S. v. Michigan* rule, the Ninth Circuit also confirmed the irrelevance of any rights held by Alaska Natives that joined the Community after 1891. The 1891 Act states that the Annette Islands were set apart as a reservation for "use by" the Metlakatlans as well as "Alaska Natives as may join them."[39] However, under *U.S. v. Michigan*, an off-reservation fishing right is tied to the aboriginal rights held by the tribe when the reservation was created.[40] This means, any rights held by members that joined after 1891 do not matter, because those would not be rights that Congress "preserved" in 1891.[41]

Those Tlingit and Haida Indians that may have joined the Community from 1887 – when the Metlakatlans emigrated to the Annette Islands – to 1891 had no aboriginal rights Congress could have preserved.[42] In 1959, the Court of Claims determined that the

---

[37]     *Metlakatla Indian Community*, 58 F.4th at 1037, 1044, and 1048.

[38]     *Id*. at 1048 (". . . in the areas where they continued to fish in 1891 <u>when their reservation was established</u>." *Emphasis added*.).

[39]     An act to repeal timber-culture laws, and for other purposes, 26 Stat. 1095, 1101 § 15 (March 3, 1891).

[40]     *Metlakatla Indian Community*, 58 F.4th at 1037, 1044, and 1048.

[41]     *Id*.

[42]     The Community on the Annette Islands started in 1887 when those Metlakatlans emigrated from Canada. [Dkt 42]. If MIC argues that there were Tlingit and Haida that had joined the community in British Columbia and were emigrants, those were not the

Tlingit and Haida Indians' aboriginal rights encompassed all of Southeast Alaska's waters.[43] The Court held those rights were extinguished, and thus taken, starting in 1884 because of the United States' "failure and refusal to protect the rights of Indians in such lands and waters."[44] This means in 1891 when Congress created the Annette Island Reserve, the Tlingit and Haida Indians' rights to these waters had already been extinguished; providing the basis for their just compensation award.[45] And because those rights had already been extinguished, under *U.S. v. Michigan*, there were no aboriginal rights for Congress to "preserve" when it passed the 1891 Act.[46] MIC, therefore, cannot rely on rights once held by Tlingit and Haida that joined prior to 1891.[47]

Lastly, relying on Alaska Natives' aboriginal rights conflicts with the finality Congress believed ANCSA's extinguishment clause would provide the State. In ANCSA, Congress extinguished all aboriginal rights in Alaska.[48] This includes any "ancestors of Alaska natives" aboriginal rights.[49] Congress also, more importantly, barred claims and

---

historical facts as the Ninth Circuit understood them. *Metlakatla Indian Community*, 58 F.4th at 1036-1039.

[43]     *Tlingit and Haida Indians of Alaska v. U.S.*, 147 Ct.Cl. 315, 342 (Ct. Cl. 1959).

[44]     *Id.*

[45]     *Id.*; *Tlingit and Haida Indians of Alaska v. U.S.*, 389 F.2d 778 (Ct. Cl. 1968).

[46]     *United States v. Michigan*, 471 F. Supp. at 258.

[47]     MIC also fails to explain how the rights held by those few Tlingit and Haida members that joined prior to 1891 would apply to all MIC members.

[48]     43 U.S.C. § 1603.

[49]     *Id.*

litigation based on aboriginal rights.[50] Congress included no exemptions for MIC or MIC members; meaning there is no suggestion Congress felt MIC members retained the right to later argue an off-reservation fishing right based on aboriginal rights its descendants once held. [Dkt 40, pp. 16-21]. ANCSA precludes MIC from relying on Alaska Natives' aboriginal rights.[51]

When this Court applies the *U.S. v. Michigan* rule, the scope of MIC's members' off-reservation fishing rights are the fisheries that the Tsimshian emigrants' – the Metlakatlans – "used from time immemorial" and that Congress preserved in 1891.  MIC must prove those Tsimshian emigrants had aboriginal rights in the historic waters of fishing districts 1 and 2.[52]

## IV.    MIC cannot prove that the Tsimshian emigrants had actual, exclusive, continuous use of the historic waters of fishing districts 1 and 2 in 1891.

To prove that the Tsimshian emigrants held aboriginal rights in the historic waters of fishing districts 1 and 2 in 1891, MIC must prove that those emigrants had exclusive, continuous use of the waters in question since time immemorial.[53]

As the State's motion for summary judgment explained in detail, MIC can never meet that burden. A tribe has aboriginal rights to certain lands and waters if that tribe can

---

[50]    *Id.*

[51]    *Id.*

[52]    Whatever rule this court adopts, the scope of this Court's factual inquiry should be limited to the rights that the Tsimshian emigrants held in 1891.

[53]    *Native Village of Eyak v. Blank,* 688 F.3d 619,622 (9th Cir. 2012).

prove "actual, continuous, and exclusive use" since time immemorial.[54] In 1959, the

Court of Claims determined the Tlingit and Haida Indians held aboriginal rights to

Southeast Alaska's lands and waters.[55] To make such a finding, the Court of Claims

determined that the Tlingit and Haida Indians had exclusive use of Southeast Alaska's

waters.[56] If the Court of Claims had found the Tsimshian had aboriginal rights to

Southeast Alaska's waters, its findings on the scope of the Tlingit and Haida's aboriginal

rights would have changed.[57] The Court of Claims had to implicitly find other tribes –

like the Tsimshian—never had actual, continuous, and exclusive use of Southeast

Alaska's waters.[58] For this reason, MIC can never prove the Tsimshian emigrants had

aboriginal rights in fishing districts 1 and 2 to satisfy the *U.S. v. Michigan* rule.

When Congress passed ANCSA, it sought to bar aboriginal rights litigation like

MIC has brought here. ANCSA's extinguishment clause is broad, extinguishing "all

aboriginal titles, if any, and claims of aboriginal title in Alaska based on use and

occupancy" as well as "All claims against . . . the State … based on claims of aboriginal

right [or] title."[59] These extinguishment clauses do not exempt MIC or MIC members.[60]

---

[54]     *Id*.

[55]     *Tlingit and Haida Indians of Alaska v. U.S*., 147 Ct. Cl. 315 (Crt. Cl. 1959).

[56]     *Id*.; *see also Native Village of Eyak,* 688 F.3d at 622.

[57]     *Id*.

[58]     *Id*.

[59]     43 U.S.C. § 1603.

[60]     43 U.S.C. § 1603.

Instead, Congress expressed its clear intent to bar the exact type of case MIC brings now against the State. [Dkt 40, pp. 16-21].

Because of ANCSA and the Tlingit and Haida takings litigation, MIC cannot prove that the Tsimshian emigrants held aboriginal rights in the historic waters of fishing districts 1 and 2. Further, the Ninth Circuit's use of the phrase "non-exclusive" does not suggest it departed from the standard aboriginal rights test outlined in *Native Village of Eyak*.

**V.      The Ninth Circuit used the phrase "non-exclusive fishing right" to differentiate an off-reservation fishing right from the fishing MIC members do within their exclusive fishery and does not suggest the Court adopted a revised aboriginal rights rule.**

When the Ninth Circuit used the phrase "non-exclusive fishing right" it did so to differentiate MIC members' off-reservation fishing right from its on-reservation exclusive fishery. The Ninth Circuit did not use the phrase to denote a departure from *Native Village of Eyak's* aboriginal rights test.

MIC has an exclusive fishery, or "exclusive zone," that is 3,000 feet from the Annette Islands' uplands.[61] Only MIC members or MIC's invitees can fish within this

---

[61]      *Metlakatla Indian Community*, 58 F.4th. at 1041. "Exclusive zone" is the phrase that MIC used in their complaint to denote their exclusive fishery. [Dkt 20, ¶¶ 24, 25, 28, 31, 32, 35, 35f, 37, 39, 41, and 52]; not to be confused with the exclusive economic zone, which is more than 200 miles offshore. *See* The United States is an Ocean Nation; available at:
https://www.gc.noaa.gov/documents/2011/012711_gcil_maritime_eez_map.pdf (accessed on November 6, 2023).

"exclusive zone."[62] Any non-member or non-invitee that fishes in the "exclusive zone" is subject to prosecution.[63] When MIC members fish outside of their "exclusive zone," even under their implied off-reservation fishing rights, they are fishing with other commercial fishermen. Because they are fishing with other commercial fishermen, they are fishing "non-exclusively."[64] "Non-exclusive" as used does not suggest the Court departed from the customary aboriginal rights test. Instead, the phrases "non-exclusive" and "exclusive zone" differentiate off-reservation fishing from on-reservation fishing.[65]

## VI. The law-of-the-case doctrine does not bar any of the State's arguments about the scope of MIC members' off-reservation fishing right.

The Ninth Circuit determined that under *Alaska Pacific Fisheries Co. v. U.S.*, MIC members hold a fishing right.[66] That fishing right was an exclusive, on-reservation fishery; i.e. the "exclusive zone" recognized by federal regulations.[67] However, the Ninth Circuit remanded for fact finding to determine whether the *Alaska Pacific Fisheries* fishing right extends outside of the exclusive fishery and includes fishing districts 1 and

---

[62]   25 C.F.R. § 241.2(b) ("The Annette Islands Reserve is declared to be exclusively reserved for fishing by members of the Metlakatla Indian Community.").

[63]   *Id*.

[64]   *Metlakatla Indian Community*, 58 F.4th at 1037, 1044, and 1048.

[65]   *Id*. at 1044; 248 U.S. 78 (1918).

[66]   *Id*. at 1044; 248 U.S. 78 (1918).

[67]   *Id*.; 25 C.F.R. § 241.2(b). For this reason, *Alaska Pacific Fisheries* is a case about the reservation's boundaries. 248 U.S. at 89 ("[Congress] did not reserve merely the site of their village, or the island on which they were dwelling, but the whole of what is known as Annette Islands, and referred to it as a single body of lands . . . [thus] embracing the intervening and surrounding waters as well as the upland.").

2.[68]  Because the State's arguments challenge the scope of MIC members' off-reservation fishing right and the Ninth Circuit never ruled on the scope of MIC's off-reservation fishing right, the law-of-the-case doctrine does not apply.

The law-of-the-case doctrine "is concerned primarily with efficiency."[69] "The law-of-the-case doctrine generally provides that when a court [usually a higher court] decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[70] However, a prior decision by a higher court does not need to be followed if "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice; (2) intervening controlling authority makes reconsideration appropriate; or (3) substantially different evidence was adduced at a subsequent trial."[71]

MIC admits that the Ninth Circuit did not rule on the scope of MIC members' off-reservation fishing right. [Dkt 46, pp. 12-13.] This should end the inquiry.

However, MIC argues that because the State's briefing before the Ninth Circuit noted that the Tsimshian did not hold aboriginal rights in fishing districts 1 and 2, the State is barred from raising the issue again now. [Dkt 46, pp. 10-13; 16-22]. But, the Ninth Circuit never ruled on the scope of MIC members' off-reservation fishing right, and thus the law-of-the-case doctrine does not bar the State's arguments.

---

[68]  *Id.*

[69]  *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016).

[70]  *Askins v. U.S. Dept. of Homeland Security*, 899 F.3d 1035, 1042 (9th Cir. 2018).

[71]  *Etemadi v. Garland*, 12 F.4th 1013, 1020 (9th Cir. 2021).

The Ninth Circuit completed a statutory interpretation of the 1891 Act, but did not determine the scope of any off-reservation fishing right. The Ninth Circuit assessed whether Congress intended to grant the Metlakatlans an off-reservation fishing right.[72] The State argued that Congress' intent could be discerned by focusing on two Indian canons of construction: "the circumstances surrounding the creation of the reservation" and "the history of the Metlakatlans."[73] Applying those rules of construction, the State argued the following: the Metlakatlans were from Canada and not from Alaska; they were squatters on the Annette Islands; the reservation was created at the request of Father Duncan to continue his religious work; that the Tsimshian did not undertake any negotiations because they had not been at war with the United States; and the Tsimshian had no land claims or aboriginal claims in Alaska to resolve.[74] The State asserted that these "circumstances" proved Congress did not intend on granting an off-reservation fishing right.[75] The Ninth Circuit expressly rejected the State's arguments and held the Metlakatlans had aboriginal rights that Congress preserved under the 1891 Act.[76] But the Ninth Circuit did not determine the scope of MIC members' off-reservation fishing right—and thus those aboriginal rights—and could not do so.

---

[72]    *Metlakatla Indian Community*, 58 F.4th 1034.

[73]    *Id.* at 1037-1038, 1048.

[74]    Appellee's Answering Brief, *Metlakatla Indian Community v. Dunleavy*, 2021 WL 3636038, *26-28 (CA 9th Cir. August 9, 2021).

[75]    *Id.*

[76]    *Metlakatla Indian Community*, 58 F.4th at 1046.

On the scope of that off-reservation fishing right, the Ninth Circuit faced a clear factual dispute between the parties. The Ninth Circuit was reviewing this Court's decision to grant the State's motion to dismiss.[77] In doing so, the Ninth Circuit accepted all of MIC's factual allegations as true.[78] This means the Ninth Circuit accepted <u>as true</u> MIC's allegations that its "ancestors" had "fished from time immemorial" in fishing districts 1 and 2.[79] [Dkt 20, ¶¶ 1, 13, 16, 19, 34, 35f, 37, and 38.]. When the State asserted the Metlakatlans held no aboriginal rights in fishing districts 1 and 2, that conflicted with MIC's allegations.[80] In the context of a Rule 12(b)(6) motion, the Ninth Circuit could not resolve that factual dispute about whether the Tsimshian emigrants held aboriginal rights in fishing districts 1 and 2.[81] However, this Court can.[82]

Because the Ninth Circuit did not rule on the scope of MIC members' off-reservation fishing rights and remanded for this Court to complete that review, the law-of-the-case doctrine does not bar the State's arguments that the Tsimshian emigrants did not have aboriginal rights in fishing districts 1 and 2.

---

[77]     *Id*. at 1045.

[78]     *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

[79]     *Id*.

[80]     Appellee's Answering Brief, 2021 WL 3636038 at *26-28.

[81]     *Leatherman*, 507 U.S. at 164.

[82]     *Metlakatla Indian Community*, 58 F.4th at 1037-1038, 1046

**VII. Even if this Court finds MIC members' off-reservation fishing rights include fishing districts 1 and 2, this Court must consider whether the State's limited entry permit program falls under the "conservation necessity principle."**

A court would only consider whether the State of Alaska's limited entry permit program satisfies the "conservation necessity" principle if it finds MIC's off-reservation fishing right includes State of Alaska waters. Because no court has determined whether MIC members' off-reservation fishing right includes fishing districts 1 and 2, no court— including the Ninth Circuit—could have considered the "conservation necessity" principle.[83]

The "conservation necessity" principle is well established in Indian law.[84] It "accommodates both the State's interest in management of its natural resources and the [tribe's] federally recognized guaranteed treaty rights."[85] Under this principle, a state can regulate a tribe's off-reservation fishing right if the regulation is for a conservation purpose.[86] This means that an act or "treaty leaves the state with power to impose on Indians equally with others such restrictions of a purely regulatory nature concerning the time and manner of fishing outside the reservation are necessary for the conservation of

---

[83]     MIC agreed that the trial court considers the conservation necessity principle. *See* Plaintiff-Appellant's Reply Brief, *Metlakatla Indian Community v. Dunleavy*, 2021 WL 4617706, * 23-24.

[84]     *See* Cohen's Indian Law, § 18.04[3][b].

[85]     *Minnesota v. Mille Lacks Band of Chippewa Indians*, 526 U.S. 172, 205 (1999).

[86]     Cohen's Indian Law, § 18.04[3][b].

fish."[87] However, the State's regulation must be "in the interest of conservation . . .

meet[] appropriate standards and [] not discriminate against the Indians."[88]

The Alaska Supreme Court has already determined that even if MIC members

hold an off-reservation fishing right, those members must comply with the State's limited

entry program because the program satisfies the "conservation necessity" principle.  In

*Scudero v. State of Alaska*, an MIC member fished off-reservation without a limited entry

permit.[89] The MIC member was convicted at trial for violating the State's limited entry

program.[90] The individual appealed, asserting that he held an aboriginal fishing right in

those waters and thus the State's limited entry permit program did not apply to him.[91]

The Alaska Supreme Court affirmed his conviction.[92] The Alaska Supreme Court held

that even if the defendant had an off-reservation fishing right in those waters, the State of

Alaska's limited entry permit program falls within the "conservation necessity

principle."[93]

Because the Ninth Circuit made no "conservation necessity" principle finding, the

law-of-the-case doctrine does not apply. The Ninth Circuit's three-sentence statement

about the State's limited entry permit program never addressed the "conservation

---

[87]     *Tulee v. State of Washington*, 315 U.S. 681, 684 (1942).

[88]     *Dept. of Game of Wash. V. Puyallup Tribe*, 414 U.S. 44, 45 (1973).

[89]     *Scudero v. State*, 496 P.3d 381 (Alaska 2021).

[90]     *Id*.

[91]     *Id*.

[92]     *Id*.

[93]     *Id*.

necessity" principle.[94] The matter was not ripe because no trial court had determined the scope of MIC member's off-reservation fishing right and found it includes Alaska waters. If this Court finds MIC's off-reservation fishing right includes fishing districts 1 and 2, then the "conservation necessity" principle would be relevant and must be considered. This Court, as the trial court, is not barred from reviewing the State's limited entry permit program under the "conservation necessity" principle.

Further, it would be "clearly erroneous" to find the Ninth Circuit's three-sentence statement about the State's limited entry permit program included a "conservation necessity" principle review. It would be "clearly erroneous" to find the Ninth Circuit resolved an issue not before it and when a threshold issue for this Court to determine had not been resolved yet. It would be "clearly erroneous" to find the Ninth Circuit had resolved an issue in three sentences without reviewing or considering an issue with well-established case law and an Alaska Supreme Court case directly on point. Lastly, it would be "unjust" for the limited entry permit program – a program that required a state constitutional amendment in 1973 to be implemented – to be deemed illegal without a court fully considering and weighing the "conservation necessity" principle.[95]

---

[94]     *Dept. of Game of Wash. V. Puyallup Tribe*, 414 U.S. 44, 45 (1973).

[95]     State of Alaska Dept. of Fish and Game, Sustaining Alaska's Fisheries: Fifty Years of Statehood (January 2009); available at: https://www.adfg.alaska.gov/static/fishing/PDFs/50years_cf/50years_full.pdf (accessed on November 6, 2023) (detailing the history of Alaska's fisheries and the basis for adopting the limited entry program).

Should this Court determine that MIC members' off-reservation fishing right includes fishing districts 1 and 2, the State asks this Court to review whether the limited entry permit program satisfies the "conservation necessity" principle.[96]  The law-of-the-case doctrine does not prevent such a review.

## CONCLUSION

For this Court to grant the relief requested, MIC must prove that: in 1891, the Tsimshian emigrants had actual, continuous, and exclusive use of the historic waters of fishing districts 1 and 2 since time immemorial.[97]

MIC cannot meet its burden.

For these reasons, the State opposes MIC's motion for summary judgment and requests this Court grant its motion for summary judgment.

---

[96]    Before the Ninth Circuit, MIC agreed that the "conservation necessity" principle is for this Court to consider. Plaintiff-Appellant's Reply Brief, 2021 WL 2483755, * 23-24.

[97]    *Native Village of Eyak*, 688 F.3d at 622.

DATED: November 15, 2023.    TREG TAYLOR
                             ATTORNEY GENERAL

By:    */s/ Christopher F. Orman*
       Christopher F. Orman
       Assistant Attorney General
       Alaska Bar No. 1011099
       Email: christopher.orman@alaska.gov
       *Attorney for the State of Alaska*

**CERTIFICATE OF WORD COUNT**
Consistent with Local Civil Rule 7.4, I certify that this
document complies with the court-ordered word count
limit because it contains 5,697 words.

*/s/ Christopher F. Orman*
Christopher F. Orman
Assistant Attorney General

**CERTIFICATE OF SERVICE**
I hereby certify that on October 15, 2023, I
electronically filed the foregoing by using the
CM/ECF system. Participants in the case who are
registered CM/ECF users will be served by the
CM/ECF system.

*/s/Richard J. Carter*
Richard J. Carter
Law Office Manager