**Christopher Lundberg,** OSB No. 941084
(pro hac vice)
Email: clundberg@hk-law.com
**Joshua J. Stellmon,** OSB No. 075183
(pro hac vice)
Email: jstellmon@hk-law.com
**Christopher T. Griffith,** OSB No. 154664
(pro hac vice pending)
**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, Oregon 97201
Phone: (503) 225-0777
Facsimile: (503) 225-1257

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| **METLAKATLA INDIAN COMMUNITY,** a Federally Recognized Indian Tribe,<br><br>Plaintiff,<br><br>v.<br><br>**MICHAEL J. DUNLEAVY**, Governor of the State of Alaska, **DOUG VINCENT-LANG**, Commissioner of the Alaska Department of Fish and Game, and **JAMES E. COCKRELL**, Commissioner of the Alaska Department of Public Safety<br><br>Defendants. | Case No.: 5:20-cv-00008-SLG<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |

PAGE 1 – **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 1 of 19

I. **<u>INTRODUCTION</u>**.

The Defendants' (the State) Response offers nothing new to rebut any of the Metlakatla Indian Community's (the Community) arguments in the Community's combined Response and Cross-Motion for Summary Judgment. Instead, the State merely restates its initial arguments, which, as pointed out by the Community, are irreconcilable with the Ninth Circuit's holdings in this case. As explained by the Community before, the Ninth Circuit held that the Community has an implied off-reservation fishing right in the waters adjacent to the Annette Islands Reserve and that the State's limited entry program violates that right by excluding the Community's members. *Metlakatla Indian Cmty. v. Dunleavy*, 58 F.4th 1034, 1044 (9th Cir. 2023).

The State's core aboriginal rights argument is directly contrary to the Ninth Circuit's holding and the law.[1] This reserved rights case is about Congress's power and intent, not the Community's historic aboriginal rights. Congress exercised its power to create a reservation for the Community, which included commercial and personal consumption fishing rights necessary for the Community's survival in the location. As explained in the Community's Cross-Motion and below, the reserved-rights doctrine examines the circumstances of the reservation's creation, including the purpose of the reservation, the people for whom the reservation was being created and the practice of those people, to determine the rights Congress granted when it created the reservation.

---

[1] Time immemorial does not mean aboriginal rights, no matter how many times the State says so without providing any relevant citation.

PAGE 2 – **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 2 of 19

While the existence of an aboriginal right may be a factor in that analysis, it is by no means a requirement.

The well-known fact that many of the original members of the Community moved to the Annette Islands from British Columbia made no difference to the United States Supreme Court in the *Alaska Pacific Fisheries* case or the Ninth Circuit in this one. In 1918, the Supreme Court held that the 1891 Act creating the Annette Islands Reserve reserved an implied fishing right for the Community in the waters adjacent to the Reserve and said the following:

> The purpose of creating the reservation was to encourage, assist and protect the Indians in their effort to train themselves to habits of industry, become self-sustaining and advance to the ways of civilized life. **True, the Metlakahtlans were foreign born, <u>but the action of Congress has made that immaterial here</u>.**

*Alaska Pacific Fisheries Co. v. United States*, 248 U.S. 78, 89 (1918) (emphasis added). Those same fishing rights are the rights at issue in this case, and the fact that a portion of the original community members immigrated from British Columbia is still irrelevant.[2] The Ninth Circuit remanded with specific instructions to determine the scope of the Community's implied reserved fishing rights based on the "central purpose of the

---

[2] The State of Alaska's continued resistance to acknowledging the Community's implied, off-reservation non-exclusive right to fish despite the Ninth Circuit's opinion is in line with its misguided view that the Community is made up of "squatters." State's Resp. at 18 (ECF No. 50). In truth, the Community's ancestors have inhabited and used the lands and waters of the Northwest Pacific Coast, including Southeast Alaska, since time immemorial and well before contact with Russian or European people. That long, long time of inhabitation and use stands in stark contrast with the creation of the State of Alaska, which obviously was established within living memory. Suffice it to say that the parties have a difference in opinion regarding who is squatting on whose land.

PAGE 3 – **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 3 of 19

reservation, understood in light of the history of the Community . . . ." *Dunleavy*, 58 F.4th at 1044. The opinion makes clear that the reservation's central purpose was to provide a stable home for the Community and ensuring access to fish was necessary to achieve that goal. Both the Supreme Court and the Ninth Circuit have now found that Congress exercised its power to create an implied off-reservation fishing right in the waters of southeast Alaska for the Community, and it is far past time the State of Alaska accepted that fact.

The State likewise cannot avoid the Ninth Circuit's holding that the limited entry program violates the Community's reserved fishing right. In certain circumstances the conservation necessity doctrine allows the State to impose a variety of regulations on tribal fishing rights. While that analysis is often complex, it is black and white here. The Ninth Circuit's decision found, correctly, that the State's limited entry program, which outright prevents the Community's members from exercising their rights, is outside any sphere of permissible regulations.

## II. ARGUMENT.

Aboriginal rights and reserved rights are fundamentally different. Implied reserved rights arise from the federal government's intent. Aboriginal rights flow from tribes' historic property rights in natural resources. Had the Ninth Circuit intended to coopt the aboriginal rights doctrine into the reserved rights doctrine, it would have said so. It did not. Rather, it applied the well-established reserved-rights doctrine and held correctly that Congress impliedly reserved for the Community an implied non-exclusive,

PAGE 4 – **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 4 of 19

off-reservation fishing right.  In so doing, the Ninth Circuit knew full well that many of the original Community members moved from British Columbia to Alaska.  Whether or not the Community's ancestors had aboriginal rights in the waters around the Reserve was and is irrelevant to the analysis.

The Community's memorandum in support of its motion for summary judgment and the Ninth Circuit's opinion adequately addressed the issues raised in the State's Response.  The Community offers the following additional points of clarification and emphasis:

### A. The Only Remaining Question is How Far the Community's Fishing Right Extends in the Waters Around the Annette Islands Reserve.

The Court should reject the State's attempt to relitigate whether the Community has an implied off-reservation right to fish in the waters surrounding the Reserve.  The Community's claim is for an implied reserved right, not an aboriginal right, and the fact that Congress reserved a non-exclusive fishing right is settled law.  Over a century ago, the Supreme Court of the United States held that the 1891 Act created a reserved, implied fishing right for the Community in the waters surrounding the Annette Islands Reserve. The Ninth Circuit unambiguously confirmed that holding on appeal in this case.[3]  The Court should reject the State's gamesmanship.

---

[3] The State's argument is too clever by half at times because it acknowledges that the Ninth Circuit found that the Community has a non-exclusive fishing right in the waters around the Annette Islands Reserve but argues that the scope is zero.

PAGE 5 – **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR  97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 5 of 19

Section C of the Ninth Circuit's opinion, entitled "The Community's Off-Reservation Fishing Right," explains the Circuit Court's reasoning in detail and provides the framework for this case on remand. The Court's logic is straightforward. First, the Court concluded that the United States Supreme Court has already decided that the Community has an implied right to fish in the waters around the Annette Islands Reserve and that the sole question is the scope of that right:

> **The question before us is not the existence of implied fishing rights of the Community**. In *Alaska Pacific Fisheries*, 248 U.S. at 88–89, 39 S.Ct. 40, the Supreme Court answered this threshold question when it inferred a fishing right from the 1891 Act, relying on that right to affirm an injunction against a non-Indian fish trap 600 feet from the shore of the Community's reservation. We thus know from *Alaska Pacific Fisheries* that there is an implied fishing right stemming from the 1891 Act. **The question before us is the scope of that right.**

*Dunleavy*, 58 F.4th at 1044 (emphasis added). The Ninth Circuit then examined the circumstances surrounding the reservation's creation, including the purpose of the reservation, the people for whom the reservation was being created, and the practice of those people, and ultimately held that in creating the Annette Islands Reserve, Congress reserved for the Community an implied right to fish, on a non-exclusive basis, outside the Reserve. The Court's analysis is reproduced in full below:

> A central purpose of the reservation, understood in light of the history of the Community, provides the answer.
>
> As described above, since time immemorial Metlakatlans have fished outside the boundaries of their current reservation. Before the arrival of European settlers, they fished throughout the waters of Southeast Alaska for ceremonial purposes, for personal consumption, and for trade. Shortly before they came to the Annette Islands, Metlakatlans established a commercial fish cannery

PAGE 6 – **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 6 of 19

> to adapt their mode of trade to modern conditions. When Metlakatlans moved to the islands in the late 1880s at the invitation of President Cleveland, they did so with the understanding that they would be able to support themselves by fishing, as they had always done. Indeed, soon after moving to the reservation, the Community set up a new cannery—supplied by off-reservation fishing—and quickly increased production in the following years. When Congress passed the 1891 Act establishing the Metlakatlans' reservation, it did so with the expectation that the Metlakatlans would continue to support themselves by fishing. *Id.* at 89, 39 S.Ct. 40 ("The purpose of creating the reservation was to encourage, assist[,] and protect the Indians in their effort to . . . become self-sustaining .... Without [fishing rights] the [Community] could not prosper."). That is, Congress passed the Act with the expectation not only that Metlakatlans would catch fish for ceremonial purposes and personal consumption, but that they would also pursue the commercial fishery that had provided, and continued to provide, essential economic support for the Community. Congress clearly contemplated that Metlakatlans would continue to fish off-reservation toward those ends. Congress also expected fishing to support the Community not only at the time the reservation was created, but in the future. In the words of the Supreme Court in *Arizona v. California*, fishing "was intended to satisfy the future as well as the present needs" of the Community. 373 U.S. at 600, 83 S.Ct. 1468; *see also Alaska Pac. Fisheries*, 248 U.S. at 89, 39 S.Ct. 40 ("Congress intended to conform its action to their situation and needs.").

*Id.* at 1044–45. Notably, the Ninth Circuit's remand instructions say nothing about aboriginal rights, or exclusive or continuous use. In fact, the Ninth Circuit specifically explained that the Community had moved to the Annette Islands from elsewhere. The Ninth Circuit focused, correctly, on what Congress intended to do, not on the Community's aboriginal rights.

The Court then concluded Section C by reiterating its holding and again providing explicit instructions to this Court on how to determine the scope of the right:

PAGE 7 – **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 7 of 19

> **We therefore hold that the 1891 Act preserved for the Community and its members an implied right to non-exclusive off-reservation fishing in the traditional fishing grounds for personal consumption and ceremonial purposes, as well as for commercial purposes**. Because this case comes to us on appeal from a ruling on a Rule 12(b)(6) motion, **we remand to the district court to allow further proceedings to determine whether the Community's traditional off-reservation fishing grounds included the waters within Alaska's Districts 1 and 2**.

*Id.* at 1045 (emphasis added). Notably, the Circuit Court did not use the term "time immemorial" anywhere in its remand instructions, which is the phrase the State has built its entire argument upon. Instead, the Ninth Circuit used the phrase "traditional off-reservation fishing grounds," which is on all fours with the Community's position and the Ninth Circuit's opinion. The Community has alleged and will prove that its ancestors' traditional fishing grounds included areas throughout southeast Alaska, including what are now districts 1 and 2.

### B. Time Immemorial is Not Synonymous With Aboriginal Rights.

The flawed cornerstone of the State's argument is that "time immemorial" means "aboriginal rights." Courts frequently use the term "time immemorial" in Indian law because it is often relevant that tribes have been engaged in certain activities for millennia. But the State repeating that time immemorial means aboriginal rights does not make it so. The State cites zero authority to support that proposition because it is not correct and thus cannot do so. Rather, in footnote 19 of the State's Response, the State lists an apparently random selection of Indian law cases both in and outside of the

PAGE 8 – **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 8 of 19

aboriginal rights context that use the phrase, none of which stand for the proposition that "time immemorial" means "aboriginal rights."

The Ninth Circuit's use of the term time immemorial is clear in context. For example, the very first sentence of the opinion uses the term "time immemorial" in exactly the way the Community and all courts understand that phrase: "Since time immemorial, members of the Metlakatlan Indian Community ("the Community") and their Tsimshian ancestors have inhabited the coast of the Pacific Northwest and fished in its waters." *Dunleavy*, 58 F.4th at 1036. That statement is merely a recitation of the undisputed fact that the Community and its ancestors have lived in and around the Pacific Northwest for thousands of years.[4] While an element of establishing an aboriginal claim, the phrase "time immemorial" is not alone a substitute for aboriginal rights.

The term "time immemorial" in the aboriginal rights context means "for a very long time," just like it does in the other Indian law cases. Ironically, the State's own Response uses "time immemorial" in exactly that way when discussing aboriginal rights. In the introduction, the State claims that the Community must demonstrate "continuous, and exclusive use *since time immemorial* of the historic waters of fishing districts 1 and 2." State's Resp. at 1 (emphasis added). In support, the State cites *Native Village of*

---

[4]Even if the State were correct that aboriginal rights are required (which they decidedly are not), the State makes essentially no attempt to explain why the Court should disregard the aboriginal rights of the native Alaskans that joined the Community at its inception.

PAGE 9 – **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 9 of 19

*Eyak v. Blank*, 688 F.3d 619, 622 (9th Cir. 2012).[5] But what the *Village of Eyak* opinion actually says is that to prove aboriginal rights tribes "have the burden of proving actual, exclusive and continuous use and occupancy ***for a long time*** of the claimed area." *Id.* at 622 (emphasis added) (internal quotation marks omitted). In a slight-of-hand manner, throughout its Response the State substitutes the "time immemorial" in the place of "for a long time" (which is exactly what it means) to support its fatally flawed code-word argument.

### C. Congress has the Power to Create Implied Reserved Rights Regardless of Whether the Community has Aboriginal Rights.

#### 1. Congress reserves by implication the natural resources necessary to achieve the federal purpose of a reservation.

At root, this case is about Congress's power to reserve natural resources to achieve specific goals. When it creates a reservation, Congress impliedly reserves the natural resources necessary to achieve the federal purpose in creating the reservation. "A right will be inferred when that right supports a purpose for which a reservation was established." *Dunleavy*, 58 F.4th at 1042 (citing *Winters v. United States*, 207 U.S. 564, 567–77 (1908)). Congress's power to reserve lands and waters to achieve its goals is not hemmed in by the existence of aboriginal rights.

In fact, the federal government has the power to create implied reserved rights in contexts outside of Indian reservations where aboriginal rights are not even arguably at

---

[5] That opinion, which the State cites as the basis for its position that the Community must prove aboriginal rights because the Ninth Circuit said "time immemorial," does not even use the term.

PAGE 10 – **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 10 of 19

play. For example, in *Cappaert v. United States*, 426 U.S. 128 (1976), the question was whether a national monument designed to protect an endangered species of fish impliedly reserved the water rights necessary to protect the species' habitat. The Supreme Court relied on common sense to determine that the federal government's creation of the reservation must have impliedly reserved water rights because the reservation would be useless otherwise.

In *John v. United States*, 720 F.3d 1214 (2013), the Ninth Circuit analyzed *Cappaert* and explicitly held that the federal reserved rights doctrine applies to all federal reservations, not just Indian reservations. The Court even referenced the Metlakatla Indian Community in finding that implied reserved rights exist in a variety of contexts:

> *Winters* involved an Indian reservation, but the federal reserved water rights doctrine applies to all federal reservations. The word "reservation" does not mean only an Indian reservation—there is only one Indian reservation in Alaska, the Metlakatla Indian Community of Tsimshian Indians at the Annette Islands Reserve south of Ketchikan—but rather "any body of land, large or small, which Congress has reserved from sale for any purpose." Reservations in Alaska serve a variety of purposes, such as military bases and parks. *Cappaert v. United States,* a modern case, shows how the federal reserved water rights doctrine works outside the context of an Indian reservation. In *Cappaert,* the federal reservation of a national monument featuring a notable pool of water required enough water to fill the pool to protect an endangered species living there. As a result, the state could not grant a permit to a ranch two and one-half miles away to pump so much groundwater that the pool (and the species) would be further endangered. The Supreme Court held that a federal reservation acquires for the federal government a right to "appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation," regardless of whether the waters are navigable or nonnavigable.

*Id.* 1225 (footnotes omitted).

PAGE 11 – **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 11 of 19

Under *Winters, Caepert, John,* and the Ninth Circuit opinion in this case, determining Congress' intent requires a practical, case-by-case analysis. When Congress creates a reservation, whether for an Indian tribe or endangered fish, it impliedly reserves the natural resources necessary to achieve the goal of that reservation. Identifying that purpose requires an analysis of the specific circumstances surrounding the creation of the reservation. The Ninth Circuit did just that, finding that an implied, off-reservation, non-exclusive fishing right is necessary to achieve the federal purpose in creating the Reserve.

In the Community's case, Congress created a reservation on an island for a fishing people. As the Supreme Court explained, "[t]he purpose of creating the reservation was to encourage, assist and protect the Indians in their effort to train themselves to habits of industry [and] become self-sustaining." *Alaska Pacific Fisheries*, 248 U.S. at 89. Congress was free to sell, reserve, or transfer property in what is now Alaska, and it exercised that power in 1891 by creating the Annette Islands Reserve to serve as a permanent home for the Community. *John*, 720 F.3d at 1224 ("Congress had unfettered power to regulate the Territory of Alaska from 1867, when the United States purchased the land from Russia, until 1959, when the Territory attained statehood."). The Community's implied reserved fishing right flows from the federal purpose in creating the Reserve because the Community cannot achieve that federal purpose without access to fish.

///

///

PAGE 12 – **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 12 of 19

## 2. The State's proffered "*U.S. v. Michigan*" rule does not exist.

The State simply invented a *U.S. v. Michigan* rule in its opposition memorandum in an attempt to overlay a non-existent aboriginal rights requirement on the implied reserved rights doctrine. No court has ever used that phrase. No secondary sources use that phrase. The Ninth Circuit's discussion of *U.S. v. Michigan* simply recognized that the Sixth Circuit had applied the *Winters* doctrine in the fishing rights context and explained the application of the law in that context. *Dunleavy*, 58 F.4th at 1044 ("Our sister circuit endorsed the application of the *Winters* framework to the context of off-reservation fishing rights in *United States v. Michigan*, 653 F.2d 277 (6th Cir. 1981)). Section B of the Ninth Circuit's opinion walks through the *Winters* line of cases and concludes with a passing discussion of the *U.S. v. Michigan* district and circuit court opinions as an example of the *Winters* doctrine applied to a fishing case.

The district court opinion upheld by the Sixth Circuit in *U.S. v. Michigan* is a good example of the practical implied rights analysis required by *Winters*. In that case, the district court looked at the circumstances surrounding the creation of the reservation for the Sault Ste. Marie Tribe of Chippewa Indians and concluded that Congress impliedly reserved a non-exclusive fishing right because the tribe was entirely dependent on fishing for their livelihood. *United States v. Michigan*, 471 F. Supp. 192, 253, 258 (W.D. Mich. 1979). The tribes had aboriginal rights in the area, and the court noted that fact in its analysis, but nothing in the opinion indicates that aboriginal rights were or are a

PAGE 13 – **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 13 of 19

requirement for implied reserved rights. That fact was just one of multiple circumstances around the creation of the reservation at issue.

### D. The Tlingit and Haida Takings Litigation and ANCSA are Irrelevant to Whether Congress Reserved a Fishing Right for the Community.

Again, the State's position that the Tlingit and Haida takings litigation and ANCSA preclude the Community from proving the existence of an implied reserved right is impossible to square with the Supreme Court and Ninth Circuit's decisions to the contrary. The Community's claim is for an implied reserved right, not an aboriginal right. The questions for this Court are what Congress intended to accomplish by creating the Annette Islands Reserve in 1891 and what rights were necessary for the Community to realize that federal purpose. But even if aboriginal rights were relevant (which they are not), events over half a century after Congress created the Reserve are irrelevant to determining the federal purpose in 1891.

### E. The State's "Law of the Case" Argument Betrays its True Intention to Overturn the Ninth Circuit's Ruling.

The State's convoluted "law of the case" argument resolves any doubt that it is attempting to nullify the Ninth Circuit's decision. The State outright argues that this Court should disregard the Ninth Circuit's decision: "However, a prior decision by a higher court does not need to be followed if '(1) the decision is clearly erroneous and its enforcement would work a manifest injustice; (2) intervening controlling authority makes reconsideration appropriate; or (3) substantially different evidence was adduced at a subsequent trial.'" State's Response at 17 (citing *Stacy v. Colvin*, 825 F.3d 563, 567 (9th

PAGE 14 – **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 14 of 19

Cir. 2016)). The State's position is far off base for two reasons. First, none of those three justifications even arguably applies. Second, nothing has changed since the Ninth Circuit issued its opinion holding that the Community has a reserved, non-exclusive right to fish in the waters around the Annette Islands Reserve. The State's defense is an obvious second attempt to relitigate the Ninth Circuit's holding that the Supreme Court resolved the question of whether the Community has an off-reservation implied fishing right over a century ago. *Dunleavy*, 58 F.4th at 1044.

> F. **The Ninth Circuit Has Already Determined, Correctly, That the Limited Entry Program Violates the Community's Implied Reserved Fishing Rights.**

The State did not appeal the Ninth Circuit's decision that the limited entry program violates the Community's rights, and that decision is binding here. While the Ninth Circuit has settled the question in this case, the Community offers the following to explain why the outcome is obvious.

Under federal preemption, a state cannot qualify or condition the exercise of a Tribe's recognized rights. *Tulee v. Washington*, 315 U.S. 681 (1942) (striking down a licensing fee that acted as a barrier to recognized fishing rights); *Puyallup Tribe v. Dep't of Game*, 391 U.S. 392, 398 (1968) ("The right to fish . . . may, of course, not be qualified by the State . . . ."); *Washington State Dep't of Licensing v. Cougar Den, Inc.*, 139 S. Ct. 1000 (U.S. 2019) (recognizing that the fishing right reserved by the Yakima in *Tulee* pre-empted state licensing requirements and holding that a state-imposed tax on travel with goods similarly interfered with the treaty reserved right to travel on public

PAGE 15 – **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 15 of 19

roadways). Thus, states cannot require tribal members to acquire a fishing license if it would interfere with federally recognized fishing rights. *Puyallup Tribe*, 391 U.S. at 398 (1968) (citing *Tulee* for the proposition that the right to fish in accordance with a treaty cannot be qualified).

In *Tulee*, the Supreme Court struck down a state licensing fee when a member of the Yakima Tribe was cited for fishing without a Washington license. *Tulee*, 315 U.S. 681. Under the Yakima's treaty, the Tribe reserved the right to fish at "all usual and accustomed places." *Id.* at 683. The licensing fee acted "as a charge for exercising the very right" that the treaty was intended to reserve. *Id.* at 685. The Supreme Court held that "while the treaty leaves the state with power to impose . . . restriction of a purely regulatory nature concerning the time and manner of fishing outside the reservation as are necessary for the conservation of fish, it forecloses . . . a fee of the kind in question here." *Id.* at 684.

The Community is not challenging any season or gear regulation in this case.[6] The Community's sole complaint is that the State cannot exclude the Community from

---

[6] The State urges this Court to apply *Scudero v. State,* a decision from the Supreme Court of Alaska. However, the matter of resolving the status of the Community's rights created by the 1891 Act of Congress is plainly a federal question and a state court decision is not binding on this Court. Moreover, the Community takes issue with the Supreme Court of Alaska's overly general discussion of the conservation necessity doctrine as applied to the State's limited entry program. To the extent the opinion is based on the season restrictions that Mr. Scudero violated, the opinion is irrelevant because the Community is not challenging the State's authority to open or close fishing areas (or to issue gear restrictions) based on conservation needs. The Community's concern is focused on the limited entry program, which the Ninth Circuit held to be unlawful as applied to the Community. To the extent the *Scudero* decision conflicts with the Ninth Circuit's holding

participating in the fisheries of districts 1 and 2. The State does not dispute that the limited entry program excludes Community members, and, the Ninth Circuit correctly held that the manner in which the State currently administers the limited entry program violates the Community's reserved non-exclusive, off-reservation fishing rights. The reason the Ninth Circuit so held is because, under well-settled federal law, a State cannot prevent the Community's members from exercising reserved fishing rights.

## III. CONCLUSION.

For the foregoing reasons, the Court should grant the Community's Cross-Motion for Summary Judgment.

DATED December 20, 2023.

**HAGLUND KELLEY LLP**

By: /s/ Christopher Lundberg
Christopher Lundberg, OSB No. 941084
(pro hac vice)
Email: clundberg@hk-law.com
Joshua J. Stellmon, OSB No. 075183
(pro hac vice)
Email: jstellmon@hk-law.com
Christopher T. Griffith
(pro hac vice pending)
Email: cgriffith@hk-law.com
2177 SW Broadway
Portland, OR 97201
(503) 225-0777
*Attorneys for Plaintiff*

---

that the limited entry program violates the Community's rights, the Ninth Circuit's decision is binding.

PAGE 17 – **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 17 of 19

# CERTIFICATE OF WORD COUNT

Consistent with Local Rule 7.4, I certify that this document complies with the court-ordered word count limit because it contains 3,984 words.

DATED this 20th day of December, 2023.

                                                HAGLUND KELLEY LLP

                                          By: /s/ Christopher Lundberg
                                                Christopher Lundberg, OSB No. 941084
                                                (pro hac vice)
                                                Email: clundberg@hk-law.com
                                                Joshua J. Stellmon, OSB No. 075183
                                                (pro hac vice)
                                                Email:  jstellmon@hk-law.com
                                                Christopher T. Griffith
                                                (pro hac vice pending)
                                                Email:  cgriffith@hk-law.com
                                                2177 SW Broadway
                                                Portland, OR 97201
                                                (503) 225-0777
                                                *Attorneys for Plaintiff*

CERTIFICATE OF WORD COUNT

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR  97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 18 of 19

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** was filed with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in Case No.: 5:20-cv-00008-SLG who are registered CM/ECF users will be served by the CM/ECF system.

DATED December 20th, 2023.

HAGLUND KELLEY LLP

By: /s/ Christopher Lundberg
Christopher Lundberg, OSB No. 941084
(pro hac vice)
Email: clundberg@hk-law.com
Joshua J. Stellmon, OSB No. 075183
(pro hac vice)
Email: jstellmon@hk-law.com
Christopher T. Griffith
(pro hac vice pending)
Email: cgriffith@hk-law.com
2177 SW Broadway
Portland, OR 97201
(503) 225-0777
*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 57   Filed 12/20/23   Page 19 of 19