TREG TAYLOR
ATTORNEY GENERAL

Christopher F. Orman (Alaska Bar No. 1011099)
Assistant Attorney General
Alaska Department of Law
PO Box 110300
Juneau, AK 99811-0300
Telephone: (907) 465-3600
Facsimile: (907) 465-3019
Email: *christopher.orman@alaska.gov*

Attorney for the State of Alaska

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| METLAKATLA INDIAN COMMUNITY, a Federally Recognized Indian Tribe,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. DUNLEAVY, Governor of the State of Alaska, DOUG VINCENT-LANG, Commissioner of the Alaska Department of Fish and Game, and JAMES E. COCKRELL, Commissioner of the Alaska Department of Public Safety,<br><br>Defendants. | Case No.: 5:20-cv-00008-SLG<br><br>**DEFENDANTS' RESPONSE TO THE UNITED STATES' AMICUS BRIEF** |

**DEFENDANTS' RESPONSE TO THE UNITED STATES' AMICUS BRIEF**

The Ninth Circuit directed this Court to determine if MIC members' implied off-reservation fishing right includes fishing districts 1 and 2.[1] The current motion practice

---

[1] *MIC v. Dunleavy*, 58 F.4th 1034, 1048 (9th Cir. 2023).

*MIC v. Dunleavy, et al.*  Civil Action No.: 5:20-cv-00008-SLG
Defendants' Response to the U.S.'s Amicus Brief  Page 1 of 12
Case 5:20-cv-00008-SLG   Document 61   Filed 01/26/24   Page 1 of 12

brings two issues before this Court: (1) what rule did the Ninth Circuit adopt to determine the scope of MIC's implied off-reservation fishing right?; and (2) if it is a test based on the aboriginal rights the Tsimshian held in 1891, can MIC meet its burden? On these two issues, the U.S.'s "friend-of-the-court" briefing is unhelpful.[2]

I. **The Ninth Circuit concluded that Congress impliedly reserved non-exclusive off-reservation fishing rights is coextensive with the aboriginal rights MIC alleged in their complaint.**

On remand, the Ninth Circuit directed this court to determine the scope of where the Community's ancestors "have fished since time immemorial and where they continued to fish in 1891 when their reservation was established," because, according to the Ninth Circuit, that "time immemorial" right are the aboriginal rights Congress "preserved."[3] Reserved rights cases are of little help here.

Reserved right cases – what the state colloquially refers to as *Winters* doctrine cases[4] – are cases about the allocation of a resource for the tribe's *on-reservation needs*.[5] "The *Winters* decision established that the creation of an Indian reservation *impliedly reserves water rights* to the tribe or tribes occupying the territory, that those water rights

---

[2]  *Miller-Wohl Co., Inc. v. Comm. of Labor and Industry State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982).

[3]  58 F.4th at 1048.

[4]  ECF 51 (November 15, 2023).

[5]  *Cappaert v. U.S.*, 426 U.S. 128 (1976) (water rights needed to ensure Devil's Hole has sufficient water); and *In re the Determination of the Rights to the Use of the Surface Waters of the Yakima River Drainage Basin*, 498 P.3d 911, 925 – 930 (Wash. 2021).

*MIC v. Dunleavy, et al.*            Civil Action No.: 5:20-cv-00008-SLG
Defendants' Response to the U.S.'s Amicus Brief        Page 2 of 12
Case 5:20-cv-00008-SLG   Document 61   Filed 01/26/24   Page 2 of 12

are *reserved to carry out the purposes for which the lands were set aside*."[6] Reserved rights cases, the tribe's water rights, and the reservation's needs can then "disrupt non-Indian water uses" because that right extends to water off-reservation.[7] These reserved rights are then quantified based on the tribe's "reasonably foreseeable needs," which depends on the tribe's current population as well as reasonably anticipated "future needs."[8] Those needs may include agriculture or to ensure the vitality of an on-reservation fishery.[9]

Because reserved rights cases address the allocation of a resource for *on-reservation* needs, they provide no guidance on what rule this court should apply on remand to determine whether MIC members' *implied <u>off-reservation</u> fishing right* includes certain state-managed waters.[10] The courts in *Coville*, *Adair, and In re Yakima River Drainage* were focused on the acres of water that the tribe needed to sustain its on-reservation agriculture or its on-reservation fisheries.[11] Those trial courts were determining the allocation of a resource for *on-reservation needs*.[12] They were not

---

[6] Cohen's Handbook of Federal Indian Law, § 19.03[1] (Lexis Nexis 2012).

[7] *Id*.

[8] *Id.* at § 19.03[5][a]; *see also In re the Determination of the Rights to the Use of the Surface Waters of the Yakima River Drainage Basin*, 498 P.3d at 925 – 930.

[9] *See Colville Confederated Tribes v. Walton*, 647 F.2d 42 (9th Cir. 1981); *U.S. v. Adair*, 723 F.2d 1394 (9th Cir. 1983).

[10] *See Colville Confederated Tribes*, 647 F.2d 42; *Adair*, 723 F.2d 1394; *Cappaert*, 426 U.S. 128; and I*n re the Determination of the Rights to the Use of the Surface Waters of the Yakima River Drainage Basin*, 498 P.3d 911.

[11] *Id*.

[12] *Id*.

*MIC v. Dunleavy, et al.*                        Civil Action No.: 5:20-cv-00008-SLG
Defendants' Response to the U.S.'s Amicus Brief           Page 3 of 12
Case 5:20-cv-00008-SLG   Document 61   Filed 01/26/24   Page 3 of 12

addressing the scope of an *implied off-reservation fishing right*.[13] The U.S. never explains how this Court should apply that resource quantification test, likely because it is inapplicable here.

Instead, the metric the Ninth Circuit used to determine the scope of what Congress preserved for the Metlakatlans were their aboriginal rights. As the Ninth Circuit acknowledged, this is an implied off-reservation fishing rights case, which means the aboriginal rights the Tsimshian emigrants held in 1891 determines the scope of MIC's off-reservation fishing rights.[14] After providing an over of the *Winters* doctrine cases, the Ninth Circuit concluded by citing to the only implied off-reservation fishing right case, *U.S. v. Michigan*, and adopted its reasoning.[15] In doing so, the Ninth Circuit explained that MIC members' implied off-reservation fishing right were the product of the Tsimshians' aboriginal rights that Congress "preserved."[16] On remand, the Ninth Circuit directed that the MIC members' implied off-reservation fishing right would include the

---

[13]    *Confederated Tribes of Chehalis Indian Reservation v. Washington* is irrelevant. The Ninth Circuit did not find that the tribe held an implied off-reservation fishing right. 96 F.3d 334 (9th Cir. 1996). As a result, the Ninth Circuit never answered what test a court would use to determine the scope of a tribe's implied off-reservation fishing right. 96 F.3d at 342-343. However, it is instructive that in *Chehalis* the Ninth Circuit found that the tribe held no aboriginal fishing rights and then relied on the lack of aboriginal fishing rights to conclude that there was no implied off-reservation fishing right either. *Id*.

[14]    *Id*. at 1045.

[15]    *Id*. at 1044.

[16]    *Id*.

MIC v. Dunleavy, et al.  Civil Action No.: 5:20-cv-00008-SLG
Defendants' Response to the U.S.'s Amicus Brief  Page 4 of 12
Case 5:20-cv-00008-SLG   Document 61   Filed 01/26/24   Page 4 of 12

waters that the "Metlakatlans and their Tsimshian ancestors asserted and exercised a right to fish in . . . since time immemorial."[17]

The Ninth Circuit had several opportunities to deviate from the aboriginal rights implied off-reservation fishing rights rule. The Ninth Circuit could have created new reserved-rights case law. It could have outlined some new rule for determining the scope of MIC members' implied off-reservation fishing right. It never did. Instead, the Ninth Circuit concluded that the 1891 Congress preserved the rights the Community had since "time immemorial" (i.e., their "aboriginal rights).[18]

Even though their briefing focuses on irrelevant reserved rights cases, the United States makes several helpful admissions. They agree that "[a]boriginal rights may form the basis of a reserved rights claim."[19] They also agree that the phrase "time immemorial" references aboriginal rights, even in water rights cases.[20] All consistent with the Ninth Circuit's decision and the state's arguments.

## II. *Menominee*, *Walton* and *Parravano* share nothing in common with this case.

It would be erroneous to suggest "[c]ases like *Menominee*, *Parravano*, and *Walton*" are similar to this case.[21] In *Parravano v. Babbitt*, the Ninth Circuit reviewed

---

[17] *Id*.

[18] *Id*.

[19] ECF 59, p. 11 (January 12, 2024).

[20] *Id*. at p. 15.

[21] ECF 59, p. 16 ("Cases like *Menominee*, *Parravano*, and *Walton* recognize tribal reserved hunting and fishing rights."). The U.S. making such a broad statement is bewildering given they discuss *Aqua Caliente Band of Chauilla Indians v. Coachella Valley Water District* at length, but ignore that the trial court in *Aqua Caliente* expressly

*MIC v. Dunleavy, et al.*                                            Civil Action No.: 5:20-cv-00008-SLG
Defendants' Response to the U.S.'s Amicus Brief                  Page 5 of 12
Case 5:20-cv-00008-SLG    Document 61    Filed 01/26/24    Page 5 of 12

whether the Magnuson-Stevens Act applied to *on-reservation fisheries* created by executive orders in the 1800s and after Congress re-partitioned the various reservation boundaries in 1988.[22] In *Menominee Indian Tribe of Wisconsin v. Thompson*, the Seventh Circuit reviewed several treaties to determine if the tribe held *expressed – not implied – off-reservation fishing rights*.[23] Lastly, in *Coville Confederated Tribes v. Walton*, a reserved rights case, the tribe had recently introduced cutthroat trout *on-reservation*. Because the trout's *on-reservation* spawning grounds failed to receive enough water, the trout were not reproducing and thus this new on-reservation fishery was in peril.[24] The Ninth Circuit affirmed the trial court's finding that the Colville Confederated Tribes were entitled to 666.4 acre feet per year of water to ensure the success of the trout's *on-reservation* spawning grounds.[25] None of these cases are implied off-reservation fishing rights cases, and none suggest some non-aboriginal rights based rule for determining the scope of MIC members' implied off-reservation fishing right.

---

explained that aboriginal rights were those rights "used since time immemorial." 2015 WL 13309103; ECF 59, p. 18.

[22] 70 F.3d 539, 542 - 545 (9th Cir. 1995) ["The 1876 and 1891 executive orders extended Hoopa Valley Reservation, which ran along both sides of the Klamath River, from the mouth of the Trinity River down to the Pacific Ocean" and thus created *on-reservation* fisheries. 70 F.3d 539, 542 - 544 (9th Cir. 1995). Then "[i]n 1988, Congress enacted the Hoopa-Yurok Settlement Act to divide the extended Hoopa Valley Reservation into the Yurok Reservation and Hoopa Valley Reservation. One of the concerns of Congress at the time of the 1988 *partitioning* was to protect the Tribes' fisheries."].

[23] 161 F.3d 449, 452-453 (7th Cir. 1998).

[24] 647 F.2d 42, 45-46, 48-49 (9th Cir. 1981).

[25] *Id*.

*MIC v. Dunleavy, et al.*                  Civil Action No.: 5:20-cv-00008-SLG
Defendants' Response to the U.S.'s Amicus Brief              Page 6 of 12
Case 5:20-cv-00008-SLG    Document 61    Filed 01/26/24    Page 6 of 12

### III. The law of the case doctrine does not apply to the state's motion for summary judgment.

The state's motion for summary judgment is not barred under the law-of-the-case doctrine.[26] "Under the law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case."[27] As the U.S Supreme Court has explained, "The law of the case doctrine was understandably crafted with the course of ordinary litigation in mind" and thus it does not apply in a way that would preclude other phases of litigation.[28]

The Ninth Circuit interpreted the 1891 Act and held that Congress intended to grant an implied off-reservation fishing right when it preserved the Tsimshian emigrants' aboriginal rights in 1891.[29] The Ninth Circuit was tasked with interpreting the 1891 Act and thus determining Congress' intent when it created the Annette Islands' Reserve.[30] In that capacity, the State explained the Tsimshian emigrants, who recently emigrated to the Territory of Alaska in 1887 to avoid religious persecution, did not hold any aboriginal rights to these lands and waters, and thus there were no rights Congress could have intended to preserve.[31] The Ninth Circuit disagreed that these Tsimshian had no

---

[26] *U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

[27] *Id*.

[28] *See Arizona v. California*, 460 U.S. 605, 618 – 619 (1983).

[29] 58 F.4th 1034

[30] *Id*.

[31] Appellees' Answering Brief, 2021 WL 3636038 (August 9, 2021) ("In 1891, Congress passed an unambiguous act that granted recently emigrated Candain Tsimshian Indians a reservation . . . for a religious colony."). To be clear, the State does not take a

*MIC v. Dunleavy, et al.*  Civil Action No.: 5:20-cv-00008-SLG
Defendants' Response to the U.S.'s Amicus Brief  Page 7 of 12
Case 5:20-cv-00008-SLG   Document 61   Filed 01/26/24   Page 7 of 12

aboriginal rights, and instead acknowledged they held aboriginal rights somewhere, and recognized that the tribe alleged it fished since time immemorial in fishing districts 1 and 2.[32] It remanded to determine the scope of those "time immemorial" rights that Congress "preserved" because the Court was reviewing a 12(b)(6) motion.[33] This became the basis for finding MIC members had an implied off-reservation fishing right.[34] The Ninth Circuit remanded for this Court to determine "the areas where they have fished since time immemorial and where they continued to fish in 1891."[35]

Consistent with the Ninth Circuit's directive, the state's arguments are focused on the <u>scope</u> of MIC members' implied off-reservation fishing right and thus the rule the Ninth Circuit adopted from *U.S. v. Michigan*.[36] The state has not asked this court to "reconsider" the Ninth Circuit's decision. The state has not asked this Court to revisit whether Congress' intended to grant an implied off-reservation fishing right when it

---

position on whether the Tsimshian emigrants held aboriginal rights in Canada, where they had lived and fished since time immemorial.

[32]  58 F.4th at 1045, 1048.

[33]  58 F.4th at 1045. The Ninth Circuit used the phrase "time immemorial" at least five times.

[34]  58 F.4th 1044, 1045, 1048 (the Ninth Circuit used the phrase "time immemorial" at least five times.).

[35]  *Id*. at 1048.

[36]  As the State has previously noted, it is telling that MIC argued against *U.S. v. Michigan* before the Ninth Circuit. *MIC v. Dunleavy*, Plaintiff-Appellant's Reply Brief, 2021 WL 4617706 *18 (Sept. 28, 2021) ("Nor can the State claim victory by urging the Court to replace the *Chehalis* implied rights framework with an alleged three-part test requiring aboriginal fishing rights, the negotiated retention of same, and consideration for the retained rights."). Yet, the Ninth Circuit relied on *U.S. v. Michigan*. 58 F.4th at 1044.

*MIC v. Dunleavy, et al.*  Civil Action No.: 5:20-cv-00008-SLG
Defendants' Response to the U.S.'s Amicus Brief  Page 8 of 12
Case 5:20-cv-00008-SLG   Document 61   Filed 01/26/24   Page 8 of 12

created the Annette Islands Reserve.[37] Instead, the state has moved for summary judgment arguing that the aboriginal rights the Tsimshian emigrants held in 1891 provides the scope of MIC members' implied off-reservation fishing right.[38] The law of the case doctrine does not apply because the state's arguments go directly to the heart of the issues on remand.

IV. **ANCSA bars MIC's claims "against the State," because those claims are based on the Tsimshian emigrants "using" certain "water areas . . . since time immemorial."**

43 U.S.C. § 1603(c)'s plain language bars MIC's claims. 43 U.S.C. § 1603(c) states, "All claims against . . . the State . . . based on claims of aboriginal right, title, use, or occupancy of land or water areas in Alaska . . . are hereby extinguished." MIC has brought a claim "against the State" based on "use" of "water areas" in Southeast Alaska;[39] their complaint contains numerous allegations that they hold an off-reservation fishing right based on "use since time immemorial."[40] Nothing in 43 U.S.C. § 1603(c) suggests that Congress' plain statement barring "claims against . . . the State . . . based on claims of aboriginal right, title, use, or occupancy of . . . water areas" does not apply to

---

[37] 58 F.4th 1034; *see U.S. v. Alexander*, 106 F.3d at 876.

[38] ECF 42 (Sept. 11, 2023).

[39] ECF 40 (May 12, 2023).

[40] *Id.* at ¶¶ 1, 13, 16, 21, 33 (*citing MIC v. Dunleavy* decision), 38f, 40, 41, 57 (". . . it reserved the right of the Metlakatlans to on-exclusive off-reservation fishing in the areas where they have fished since time immemorial."), and Prayer for Relief (1).

*MIC v. Dunleavy, et al.*  Civil Action No.: 5:20-cv-00008-SLG
Defendants' Response to the U.S.'s Amicus Brief  Page 9 of 12
Case 5:20-cv-00008-SLG   Document 61   Filed 01/26/24   Page 9 of 12

MIC or its members.[41] The clear language in 43 U.S.C. 1603(c) forecloses this litigation.[42]

Further, aboriginal rights litigation often requires considering and adjudicating other tribes' aboriginal rights, which ANCSA clearly bars.[43] Aboriginal rights litigation does not happen in a vacuum.[44] To find a tribe holds aboriginal rights to certain lands or waters means implicitly determining whether another tribe had exclusive, continuous use of the land or water since time immemorial.[45] Therefore, to consider whether the Tsimshian emigrants held aboriginal rights to Southeast Alaska waters here, implicitly requires this Court to consider the aboriginal rights of the Tlingit and Haida that fished in

---

[41] *See* 43 U.S.C. § 1602(b) (defining "Native").

[42] MIC participated in the ANCSA negotiations and requested compensation in addition to retaining their reservation. Alaska Native Land Claims, Hearings before Committee on Interior and Insular Affairs United States Senate, S. 2906 and S. 1964, S. 2690, and S. 2020, February 8, 9, and 10, 1968, p. 415 (statement of S. Bobo Dean) (U.S. Gov. Printing 1968); and Alaska Native Land Claims, Hearings before the Committee on Interior and Insular Affairs, U.S. Senate, S. 1830, August 7 and 8, 1969, p. 109 (statement of Solomon Guthrie) (U.S. Gov. Ofc. 1969). During those negotiations, MIC never asserted its members held any aboriginal rights or off-reservation fishing rights that warranted compensation. *Id*.

[43] E.g. *Tlingit and Haida Indians of Alaska v. U.S.*, 177 F.Supp. 452 (Ct. Cl. 1959) (the map shows that the Court of Claims considered the rights held by the Athabascan, the Tlingit, the Haida, and the Tsimshian.).

[44] *See Native Village of Eyak v. Blank*, 688 F.3d 619, 622 (9th Cir. 2012).

[45] *Native Village of Eyak*, 688 F.3d at 622; *Johnson v. M'Intosh*, 21 U.S. 543, 549-550 (1823); *Northwestern Bands of Shoshone Indians v. U.S.*, 324 U.S. 335, 338 – 339 (1945); *Tee-Hit-Ton Indians v. U.S.*, 348 U.S. 272, 277 (1955); *Oneida Indian Nation of N.Y. State v. Oneida County, New York*, 414 U.S. 661, 664 (1974) (all of which cite to the aboriginal rights test.).

*MIC v. Dunleavy, et al.*                                           Civil Action No.: 5:20-cv-00008-SLG
Defendants' Response to the U.S.'s Amicus Brief                   Page 10 of 12
Case 5:20-cv-00008-SLG    Document 61    Filed 01/26/24    Page 10 of 12

these same waters.[46] This Court would be implicitly adjudicating rights for tribes whose aboriginal rights Congress clearly extinguished under ANCSA.[47]

## CONCLUSION

MIC pled an *implied off-reservation fishing right* case. Accepting the facts in MIC's complaint as true, the Ninth Circuit concluded that the implied right was the preservation of the Community's "time immemorial" rights. That makes this a case about the aboriginal rights the Tsimshian emigrants held in 1891[48]; not the allocation of a resource for on-reservation purposes.

Due to ANCSA and the Court of Claims' 1959 decision on the Tlingit and Haida takings, MIC can never prove the Tsimshian emigrants held aboriginal rights in the historic waters of fishing districts 1 and 2 prior to 1891. The State requests this Court grant its motion for summary judgment.

DATED: January 26, 2024.

                                            TREG TAYLOR
                                            ATTORNEY GENERAL

                                  By:   */s/ Christopher F. Orman*
                                                  Christopher F. Orman
                                                  Assistant Attorney General
                                                  Alaska Bar No. 1011099
                                                  Email: christopher.orman@alaska.gov
                                                  *Attorney for the Defendants*

---

[46] Southeast Alaska's aboriginal rights have already been adjudicated. *Tlingit and Haida Indians of Alaska*, 177 F.Supp. 452.

[47] *Id*.

[48] *See* ECF Doc. No. 42.

*MIC v. Dunleavy, et al.*                                                             Civil Action No.: 5:20-cv-00008-SLG
Defendants' Response to the U.S.'s Amicus Brief                        Page 11 of 12
Case 5:20-cv-00008-SLG   Document 61   Filed 01/26/24   Page 11 of 12

**CERTIFICATE OF WORD COUNT**

Consistent with Local Civil Rule 7.4(a), I certify that this document complies with the court-ordered word count limit because it contains 2716 words.

*/s/ Christopher F. Orman*
Christopher F. Orman
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2024, I electronically filed the foregoing by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Christopher F. Orman*
Christopher F. Orman
Assistant Attorney General

*MIC v. Dunleavy, et al.*     Civil Action No.: 5:20-cv-00008-SLG
Defendants' Response to the U.S.'s Amicus Brief     Page 12 of 12
Case 5:20-cv-00008-SLG   Document 61   Filed 01/26/24   Page 12 of 12