**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

METLAKATLA INDIAN COMMUNITY,

                Plaintiff,

      v.

MICHAEL J. DUNLEAVY, *et al.*,

                Defendants.

Case No. 5:20-cv-00008-SLG

## ORDER RE MOTIONS FOR SUMMARY JUDGMENT

Before the Court at Docket 42 is Defendants' Motion for Summary Judgment.[1]

Plaintiff Metlakatla Indian Community ("Metlakatla" or "the Community") filed a

Consolidated Response to Defendants' Motion for Summary Judgment and Cross-

Motion for Summary Judgment at Docket 47.[2] Defendants filed a consolidated Reply

and Opposition to Plaintiff's Cross-Motion for Summary Judgment at Docket 50.[3]

Metlakatla filed a Reply in Support of Cross-Motion for Summary Judgment at Docket

57. The United States also filed an amicus curiae brief in support of Metlakatla's

cross-motion for summary judgment and in opposition to Defendants' motion for

---

[1] Defendants consist of Michael J. Dunleavy, Governor of Alaska; Doug Vincent-Lang, Commissioner of the Alaska Department of Fish and Game; and James E. Cockrell, Commissioner of the Alaska Department of Public Safety (collectively, "the State"). Docket 40 at ¶¶ 4-6 (2d Am. Compl.).

[2] Metlakatla also filed the same document at Docket 46; for convenience and consistency, the Court refers only to Metlakatla's filing at Docket 47 in this order.

[3] Defendants also filed the same document at Docket 51; for convenience and consistency, the Court refers only to Defendants' filing at Docket 50 in this order.

summary judgment.[4]  Defendants responded to the amicus curiae brief at Docket 61, and Metlakatla responded at Docket 62.

Oral argument on the motions was held on February 15, 2024, in Juneau, Alaska.[5]

## BACKGROUND

This case is before this Court on remand—the factual allegations have been set forth in detail by the Ninth Circuit and are summarized here from the Circuit Court's decision as follows[6]:

"[M]embers of the Metlakatla Indian Community ('the Community') and their Tsimshian ancestors have inhabited the coast of the Pacific Northwest and fished in its waters" since "time immemorial."[7]  For the Tsimshian peoples, fishing is a "bedrock of the Tsimshian culture and way of life."[8]  The Community, consisting of a group of Tsimshians and lay Anglican missionary "Father Duncan," was originally established in 1862 in British Columbia, Canada, where it "began a communal commercial fishing enterprise" and "established a fish cannery."[9]  When Canada began changing its

---

[4] Docket 59.

[5] *See* Docket 68.  The United States participated at oral argument as amicus curiae.  *See* Docket 64 (order granting leave for the United States to participate at oral argument).

[6] *See Metlakatla Indian Cmty. v. Dunleavy*, 58 F.4th 1034 (9th Cir. 2023).

[7] *Id.* at 1036.

[8] *Id.* at 1037.

[9] *Id.* at 1036-37 (first citing Andrew Martindale et al., *Bending but Unbroken: The Nine Tribes of the Northern Tsimshian Through the Colonial Era, in Power, Political Economy, and Historical Landscapes of the Modern World* 251, 270 (Christopher R. DeCorse ed., 2019); then citing Marjorie M. Halpin & Margaret Seguin, *Tsimshian Peoples: Southern Tsimshian, Coast Tsimshian,*

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al.*
Order re Motions for Summary Judgment
Page 2 of 27

Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 2 of 27

oversight of the Community in the 1880s and denied it recognition of its "aboriginal territorial rights and their attendant resource rights," the Community "authorized Father Duncan to travel to Washington, D.C., to attempt to secure land for the Metlakatlans in the Territory of Alaska."[10]  In 1887, "five Metlakatlans traveled to the Territory of Alaska in search of a new home," choosing "the nearby Annette Islands because of the islands' easy access to waters with abundant fish,"[11] and "because the fishery adjacent [to] the shore would afford a primary means of subsistence and a promising opportunity for industrial and commercial development."[12]  Later that year, "[a]t the invitation of President [Grover] Cleveland, the remainder of the 823 Metlakatlans followed."[13]

 "In 1891, four years after the Metlakatlans moved to the islands, Congress passed the [Act of March 3, 1891 ('1891 Act')], recognizing the Metlakatlan Indian

---

*Nishga, and Gitksan, in* 7 *Handbook of North American Indians* 281 (Wayne Suttles & William Sturtevant eds., 1990); and then citing Brian C. Hosmer, *American Indians in the Marketplace: Persistence and Innovation Among the Menominees and Metlakatlans, 1870-1920* 149, 183 (1999)).

[10] *Id.* at 1037-38 (citations omitted).

[11] *Id.* at 1038 (citations omitted).

[12] *Alaska Pac. Fisheries Co. v. United States*, 248 U.S. 78, 88 (1918).

[13] *Metlakatla*, 58 F.4th at 1038 (citations omitted).  The Metlakatlans traveled to Alaska via boats. *See* 21 Cong. Rec. 10092 (1890) ("[T]hey lost everything except what they could take in their hands and put in their boats and take over to Alaska.").  Metlakatla, Alaska, is approximately 71 miles northwest from Metlakatla, British Columbia, as the crow flies.  *See* Measured Distance from Metlakatla, British Columbia, to Metlakatla, Alaska, Google Maps, https://www.google.com/maps/place/Metlakatla,+BC+V0V+1G0,+Canada/@54.8256601,-131.9131342,9.17z/data=!4m6!3m5!1s0x540d2b1a878e64fb:0x2965af421c075a9e!8m2!3d54.337 324!4d-130.444669!16zL20vMGcyMjBm?entry=ttu (right click Metlakatla, British Columbia; then click "Measure distance"; then click Metlakatla, Alaska) (last visited May 31, 2024).

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al*.
Order re Motions for Summary Judgment
Page 3 of 27

Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 3 of 27

Community and establishing the Annette Islands as the Community's reservation."[14] That same year, the Community established a cannery on its reservation that was supplied by the Metlakatlans' fishing efforts "where they had always fished, both in the waters immediately surrounding the reservation and in the waters miles away."[15] "This cannery replaced the cannery they had established at Metlakatla, British Columbia," and by 1900, "the cannery had annual output of more than 17,000 cases of cans."[16] The Community "also continued to rely on fish for cultural practices, including feasts for observances of birth, marriage, death, and other important life transitions entailing consuming, giving, and exchanging fish."[17]

In 1916, after "non-Indians had placed a fish trap 600 feet off the shore of the reservation" and refused to remove it, President Woodrow Wilson "proclaimed that the waters 3,000 feet from the shoreline of the Annette Islands were reserved for the

---

[14] *Metlakatla*, 58 F.4th at 1038. The 1891 Act, as codified at 25 U.S.C. § 495 (omitted), provides:

> Until otherwise provided by law the body of lands known as Annette Islands, situated in Alexander Archipelago in southeastern Alaska on the north side of Dixon's entrance, is set apart as a reservation for the use of the Metlakahtla Indians, and those people known as Metlakahtlans who, on March 3, 1891, had recently emigrated from British Columbia to Alaska, and such other Alaskan natives as may join them, to be held and used by them in common, under such rules and regulations, and subject to such restrictions, as may be prescribed from time to time by the Secretary of the Interior.

25 U.S.C. § 495 has been "omitted from the Code as being of special and not general application." Off. of the L. Revision Couns., Editorial Notes for 25 U.S.C. § 495, https://perma.cc/9BTG-MMCS (last visited May 7, 2024).

[15] *Metlakatla*, 58 F.4th at 1039 (citations omitted).

[16] *Id.* (citations omitted).

[17] *Id.*

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al*.
Order re Motions for Summary Judgment
Page 4 of 27

Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 4 of 27

exclusive use of the Metlakatlans" ("the Proclamation").[18]  And in 1918, without referencing President Wilson's Proclamation, the Supreme Court held in *Alaska Pacific Fisheries Co. v. United States* that "the 1891 Act establishing the reservation granted an exclusive right to Metlakatlans to fish in the 'fishing grounds' 'adjacent' to the Annette Islands."[19]  After that decision, Metlakatlans continued to fish and supply their cannery from both "the waters immediately surrounding the reservation and in the waters miles away," "where they had always fished."[20]

In 1972, Alaska "adopted a constitutional amendment that authorized the State to limit the entry of new participants into commercial fisheries in Alaskan waters."[21]  Thereafter, "Alaska instituted a 'limited entry' program to regulate commercial fishing," codified at Alaska Statute § 16.43.010 *et seq.*[22]  Since the implementation of the program, however, changing conditions and "[n]on-Indian commercial fishing practices in the State-managed fishing areas surrounding the Community's exclusive zone have put a substantial strain on Community fish yields."[23]  "State-managed

---

[18] *Id.* at 1039-40 (citing Presidential Proclamation, 39 Stat. 1777, 1777-78 (Apr. 28, 1916) (codified at 25 C.F.R. § 241.2)).

[19] *Id.* at 1040 (first quoting *Alaska Pac. Fisheries*, 248 U.S. at 88-89; and then citing *Metlakatla Indian Cmty. v. Egan*, 369 U.S. 45, 49 (1962) ("In 1918, without reference to the proclamation, this Court upheld the right of the Metlakatlans to exclude others from the waters surrounding their islands on the ground that these waters were included within the original reservation by Congress.")).

[20] *Id.* at 1039-41 (citations omitted).

[21] *Id.* at 1041 (citing Alaska Const. art. VIII, § 15).

[22] *Id.* (citation omitted).

[23] *Id.*

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al.*
Order re Motions for Summary Judgment
Page 5 of 27

fisheries sometimes intercept salmon before they return to the Community's exclusive zone"; and while the Metlakatlans "adopted a management strategy that has increased the exclusive zone's herring biomass to more than 20,000 tons—one of the largest herring stocks in Southeast Alaska"—"when herring leave the exclusive zone, Alaska's limited entry program restricts access to the herring by Community members."[24]

Thus, on August 7, 2020, the Community initiated this lawsuit against the State.[25] The Community's Second Amended Complaint alleges that the State's limited entry program "violat[es] the Community's congressionally reserved right to fish in" the Community's "non-exclusive, historical fishing areas."[26] The complaint asserts that "[t]he Metlakatlan people fished predominantly in areas within a day's travel of the Reserve—currently designated by the State of Alaska Department of Fish & Game as Areas 1 and 2."[27] The complaint seeks (1) a declaration "that Congress' reservation of the Annette Islands Reserve for the Metlakatla Indian Community included the non-exclusive right to fish in the areas where they have fished since time immemorial and where they continued to fish in 1891 when their reservation was established, free from unreasonable interference by the defendants,

---

[24] *Id.*

[25] *See* Docket 1.

[26] Docket 40 at ¶¶ 59-60 (2d Am. Compl.).

[27] Docket 40 at ¶ 19 (citing Docket 40 at 23-24, showing Areas 1 and 2 as the shaded pink and green areas).

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al*.
Order re Motions for Summary Judgment
Page 6 of 27

Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 6 of 27

and that such right has not been revoked or diminished"; and (2) "a permanent injunction barring the defendants from asserting jurisdiction over the Community and its members inconsistent with the Community's reserved fishing rights, and from otherwise unreasonably interfering with the Community's reserved fishing rights."[28]

In February 2021, this Court held that the Community did not have implied off-reservation fishing rights and dismissed the complaint for a failure to state a claim pursuant to Federal Rule of Procedure 12(b)(6).[29]  The Ninth Circuit reversed, holding that "the 1891 Act preserved for the Community and its members an implied right to non-exclusive off-reservation fishing in the traditional fishing grounds for personal consumption and ceremonial purposes, as well as for commercial purposes."[30]  The Circuit Court explained that "Congress' intent in the 1891 Act was that the Metlakatlans would have off-reservation fishing rights that would 'satisfy the future as well as the present needs' of the Community."[31]  The Circuit Court further held that "Alaska's limited entry program, as currently administered, is incompatible with the Metlakatlans' off-reservation fishing rights."[32]  Based on its decision, the Ninth Circuit remanded to this Court "to allow further proceedings to determine whether the

---

[28] Docket 40 at 20-21.

[29] *See Metlakatla Indian Cmty. v. Dunleavy*, Case No. 5:20-cv-00008-JWS, 2021 WL 960648 (D. Alaska Feb. 17, 2021), *rev'd and remanded*, 58 F.4th 1034 (9th Cir. 2023).

[30] *Metlakatla*, 58 F.4th at 1045.

[31] *Id.* at 1047 (quoting *Arizona v. California*, 373 U.S. 546, 600 (1963)).

[32] *Id.*

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al.*
Order re Motions for Summary Judgment
Page 7 of 27

Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 7 of 27

Community's traditional off-reservation fishing grounds included the waters within Alaska's Districts 1 and 2."[33]

Following that decision, the State filed the instant motion for summary judgment, and the Community cross-moved for summary judgment on its first claim for relief seeking a declaration of an implied reserved right and against the State's second, third, fourth, and fifth affirmative defenses.[34]

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1362 because a federally recognized Indian tribe commenced this civil action, and pursuant to 28 U.S.C. § 1331 because this is a civil action with claims arising under federal law, namely, § 15 of the Act of March 3, 1891,[35] and federal Indian common law.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact lies with the movant.[36] When

---

[33] *Id.* at 1045.

[34] Docket 42; Docket 47 at 6.

[35] 26 Stat. 1095, 1101 (1891). Section 15 of the Act of March 3, 1891, was codified at 25 U.S.C. § 495, which the Community cited to in its complaint. Docket 40 at ¶ 7. Because 25 U.S.C. § 495 has since been deleted from the U.S. Code, the Court cites to the underlying act. *See supra* note 14.

[36] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al.*
Order re Motions for Summary Judgment
Page 8 of 27

considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[37] In reviewing cross-motions for summary judgment, a court "review[s] each separately, giving the non-movant for each motion the benefit of all reasonable inferences."[38]

## DISCUSSION

The State's overarching position is that this case is about aboriginal rights,[39] which do not "depend on a treaty or an act of Congress for their existence," but which would require the Community to prove "actual, exclusive, and continuous use and occupancy for a long time of the claimed area."[40] From that position, the State propounds two primary arguments: (1) that the Alaska Native Claims Settlement Act ("ANCSA") bars this litigation because it extinguished all claims based on aboriginal rights in Alaska[41]; and (2) that the Community's implied non-exclusive fishing right in Districts 1 and 2 exists only to the extent that the Community can prove that, since "time immemorial," it has had "actual, exclusive, and continuous use" of those fishing

---

[37] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[38] *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016) (citing *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008)).

[39] *See* Docket 42 at 2 ("This is a case about aboriginal rights.").

[40] *Native Vill. of Eyak v. Blank*, 688 F.3d 619, 622 (9th Cir. 2012) (internal quotation marks and citations omitted).

[41] Docket 42 at 24 & n.111 (citing 43 U.S.C. § 1603); Docket 61 at 9.

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al.*
Order re Motions for Summary Judgment
Page 9 of 27

Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 9 of 27

grounds, which it cannot prove.[42]

The Community, on the other hand, maintains that this case is about reserved rights, a legal theory distinct from aboriginal rights.[43] Reserved rights may include an implied reserved right, which "will be inferred when that right supports a purpose for which a reservation was established," such as an implied water right when the declared "purpose of the reservation was to encourage the Tribes to give up their 'nomadic' way of life and to become farmers."[44] A reserved right may arise regardless of whether an aboriginal right to the same land or resource previously existed.[45] Because the Ninth Circuit has already held that the Community has an implied, reserved off-reservation fishing right, the Community contends that the State's arguments "are irreconcilable with the Ninth Circuit's holdings in this case," which are "binding on this Court."[46] In its amicus brief, the United States also asserts that the State misunderstands the distinction between aboriginal rights and reserved rights, and that the State's arguments are barred by the rule of mandate and the law of the

---

[42] Docket 42 at 27-39; Docket 50 at 3-19; Docket 61 at 2.

[43] Docket 47 at 20.

[44] *Metlakatla*, 58 F.4th at 1042-43 (citing *Winters v. United States*, 207 U.S. 564, 565, 576-77 (1908)).

[45] *See, e.g.*, *Winters*, 207 U.S. 564 (holding that an implied water right existed without considering the existence of any aboriginal rights); *Confederated Tribes of Chehalis Indian Rsrv. v. Washington*, 96 F.3d 334, 341-42 (9th Cir. 1996) (holding that the Tribes' aboriginal fishing rights were extinguished and stating that the issue in the case was whether executive orders creating reservations, which were "issued before Washington became a state, contained implied off-reservation fishing rights").

[46] Docket 57 at 2; Docket 62 at 2.

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al.*
Order re Motions for Summary Judgment
Page 10 of 27

case doctrine.[47]  Because the Ninth Circuit issued a mandate and remanded this case on one narrow topic—"to determine whether the Community's traditional off-reservation fishing grounds included the waters within Alaska's Districts 1 and 2"[48]— and because the parties dispute the scope of remand, the Court first considers that scope.

## I.    Scope of Remand

In determining the scope of remand, a lower court "must first apply the rule of mandate."[49]  The rule provides that a "district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it."[50]   "[A]lthough lower courts are obliged to execute the terms of a mandate, they are free [to decide] 'anything not foreclosed by the mandate' . . . ."[51] To "ascertain what was intended by [the] mandate," a lower court may consult the higher court's opinion in addition to the mandate itself.[52]  Thus, "although the mandate of an appellate court forecloses the lower court from reconsidering matters determined in the appellate court, it 'leaves to the district court any issue not

---

[47] Docket 59 at 7, 11.

[48] *Metlakatla*, 58 F.4th at 1045.

[49] *United States v. Kellington*, 217 F.3d 1084, 1092 (9th Cir. 2000).

[50] *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) (citation omitted).

[51] *Kellington*, 217 F.3d at 1092-93 (citation omitted).

[52] *Id.* at 1093 (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895)).

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al.*
Order re Motions for Summary Judgment
Page 11 of 27

Case 5:20-cv-00008-SLG    Document 70    Filed 06/07/24    Page 11 of 27

expressly or impliedly disposed of on appeal.'"[53]  However, a lower court's decision

after remand may not be "counter to the spirit of the circuit court's decision."[54]  In this

case, the mandate simply made the Circuit Court's judgment effective[55]; accordingly,

the Court consults the Ninth Circuit's opinion "to ascertain what was intended by its

mandate."[56]

      "The rule of mandate is similar to, but broader than, the law of the case

doctrine."[57]  "The law of the case doctrine generally prohibits a court from considering

an issue that has already been decided by that same court or a higher court in the

same case."[58]  "For the doctrine to apply, the issue in question must have been

'decided explicitly or by necessary implication in [the] previous disposition.'"[59]  "The

doctrine is concerned primarily with efficiency, and should not be applied when the

evidence on remand is substantially different, when the controlling law has changed,

or when applying the doctrine would be unjust."[60]  Unlike the rule of mandate, a district

---

[53] *Id.* at 1094 (citation omitted).

[54] *Id.* at 1093 (citation omitted).

[55] The entirety of the mandate reads: "The judgment of this Court, entered September 08, 2022, amended January 31, 2023 takes effect this date.  This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.  Costs are taxed against the appellee in the amount of $102.60."  Docket 34.

[56] *Kellington*, 217 F.3d at 1093 (citation omitted).

[57] *Stacy v. Colvin*, 825 F.3d 563, 567-68 (9th Cir. 2016) (citation omitted).

[58] *Id.* at 567 (citation omitted).

[59] *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (alteration in original) (citation omitted).

[60] *Stacy*, 825 F.3d at 567 (citation omitted).

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al.*
Order re Motions for Summary Judgment
Page 12 of 27

Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 12 of 27

court's application of the law of the case doctrine is discretionary.[61]

In this case, the Ninth Circuit held that the Community has an implied off-reservation fishing right in the Community's "traditional fishing grounds" by virtue of the 1891 Act of Congress: "We therefore hold that the 1891 Act preserved for the Community and its members an implied right to non-exclusive off-reservation fishing in the traditional fishing grounds for personal consumption and ceremonial purposes, as well as for commercial purposes."[62]  Nonetheless, the State maintains that the Community cannot have an implied reserved right to non-exclusive off-reservation fishing in Districts 1 and 2 because it cannot prove that its fishing in that area, since time immemorial, was to the exclusion of other Indians.[63]  The State asserts that this Court is not barred by the law of the case doctrine from considering the State's arguments, because while "[t]he Ninth Circuit completed a statutory interpretation of the 1891 Act" and "assessed whether Congress intended to grant the Metlakatlans an off-reservation fishing right," it "never ruled on the scope of [the Community] members' off-reservation fishing right."[64]  The State maintains that the Ninth Circuit, in "reviewing this Court's decision to grant the State's motion to dismiss," had to accept as true the Community's "allegations that its 'ancestors' had 'fished from time

_____

[61] *Id.* (citation omitted).

[62] *Metlakatla*, 58 F.4th at 1045, 1048.

[63] Docket 42 at 27; Docket 50 at 2.  To prove an aboriginal right, a party must prove "actual, exclusive, and continuous use and occupancy for a long time of the claimed area."  *Native Vill. of Eyak*, 688 F.3d at 622 (internal quotation marks and citation omitted).

[64] Docket 50 at 17-18.

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al.*
Order re Motions for Summary Judgment
Page 13 of 27

Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 13 of 27

immemorial' in fishing districts 1 and 2."[65]  The State maintains that the phrase "from time immemorial" means the same as "aboriginal rights."[66]  And the State asserts that it is entitled to summary judgment because it is undisputed "that the Tsimshian emigrants did not have aboriginal rights in fishing districts 1 and 2," and that, in any event, ANCSA "bar[s] aboriginal rights litigation like [the Community] has brought here."[67]

The State's arguments misconstrue the Ninth Circuit's holding in this case. The Circuit Court's decision did not rest on aboriginal rights; rather, it was based on an implied reserved right from the 1891 Act.[68]  First, the Ninth Circuit held that the United States Supreme Court in *Alaska Pacific Fisheries* already determined that the Community has an implied reserved fishing right in the waters surrounding the Annette Islands.  Indeed, the Ninth Circuit explained that the Supreme Court in that case "inferred a fishing right from the 1891 Act, relying on that right to affirm an injunction against a non-Indian fish trap 600 feet from the shore of the Community's

---

[65] Docket 50 at 19 ("In the context of a Rule 12(b)(6) motion, the Ninth Circuit could not resolve that factual dispute about whether the Tsimshian emigrants held aboriginal rights in fishing districts 1 and 2.  However, this Court can.").

[66] Docket 50 at 6 ("[T]he Ninth Circuit expressly stated that the scope of [the Community] members' off-reservation fishing right is where the Tsimshian emigrants had 'fished from time immemorial'; thus, where they held aboriginal rights."); Docket 61 at 2 (asserting that "[t]he Ninth Circuit concluded that Congress impliedly reserved non-exclusive off-reservation fishing rights [which are] coextensive with the aboriginal rights [the Community] alleged in [its] complaint").

[67] Docket 50 at 14, 19.

[68] *Metlakatla*, 58 F.4th at 1044 (citation omitted); *cf. Chehalis*, 96 F.3d at 341-42 (holding that the Tribes' aboriginal fishing rights were extinguished and stating that the issue in the case was whether executive orders creating reservations, which were "issued before Washington became a state, contained implied off-reservation fishing rights").

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al*.
Order re Motions for Summary Judgment
Page 14 of 27

reservation."[69]   The Ninth Circuit concluded: "We thus know from *Alaska Pacific Fisheries* that there is an implied fishing right stemming from the 1891 Act."[70] Accordingly, the Ninth Circuit next considered "[t]he question before [the Circuit Court]," which it framed as "the scope of that right."[71]   Thus, contrary to the State's assertion that "the Ninth Circuit did not rule on the scope of [the Community] members' off-reservation fishing rights,"[72] the Ninth Circuit explicitly "provide[d] the answer" to "[t]he question before [it of] the scope of" the "implied fishing right stemming from the 1891 Act."[73]

The Ninth Circuit answered that question by identifying "[a] central purpose of the [Community's] reservation."[74]   The Circuit Court observed that "since time immemorial Metlakatlans have fished outside the boundaries of their current reservation . . . throughout the waters of Southeast Alaska for ceremonial purposes,

---

[69] *Metlakatla*, 58 F.4th at 1044 (citing *Alaska Pac. Fisheries*, 248 U.S. at 88-89).  The Ninth Circuit noted that, in doing so, "the Supreme Court relied only on the 1891 Act.  It did not rely on, or even mention, the 3,000-foot boundary established by President Wilson's 1916 Proclamation."  *Id.* at 1040 (citing *Egan*, 369 U.S. at 49).

[70] *Id.* at 1044; *see also Alaska Pac. Fisheries*, 248 U.S. at 89 (holding that "[t]he use of the adjacent fishing grounds was equally essential" for the Metlakatlans to "sustain themselves" and that Congress "did not *reserve* merely the site of their village, or the island on which they were dwelling, but the whole of what is known as Annette Islands, . . . embracing the intervening and surrounding waters . . . , as descriptive of the area comprising the islands" (emphasis added)).

[71] *Metlakatla*, 58 F.4th at 1044.

[72] Docket 50 at 19.

[73] *Metlakatla*, 58 F.4th at 1044 ("The question before us is the scope of that right.  A central purpose of the reservation, understood in light of the history of the Community, provides the answer.").

[74] *Id.*

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al.*
Order re Motions for Summary Judgment
Page 15 of 27

Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 15 of 27

for personal consumption, and for trade."[75]   When they were still in Canada, the "Metlakatlans established a commercial fish cannery to adapt their mode of trade to modern conditions," and when they relocated to the Annette Islands, "they did so with the understanding that they would be able to support themselves by fishing, as they had always done."[76]   The Ninth Circuit explained that, "[w]hen Congress passed the 1891 Act establishing the Metlakatlans' reservation, it did so . . . with the expectation not only that Metlakatlans would catch fish for ceremonial purposes and personal consumption, but that they would also pursue the commercial fishery that had provided, and continued to provide, essential economic support for the Community."[77]   The Circuit Court held that "Congress clearly contemplated that Metlakatlans would continue to fish off-reservation toward those ends" so that their "future as well as the[ir] present needs" would be satisfied.[78]

Therefore, the Ninth Circuit considered what "the [Metlakatlans] would have understood" when their reservation was created and the purpose of their reservation, as deduced from the surrounding circumstances and Congress's intent, to define the "scope" of the Community's implied off-reservation fishing rights.[79]   The Ninth Circuit

---

[75] *Id.*

[76] *Id.*

[77] *Id.* at 1044-45 (citing *Alaska Pac. Fisheries*, 248 U.S. at 89 ("The purpose of creating the reservation was to encourage, assist[,] and protect the Indians in their effort to . . . become self-sustaining . . . .   Without [fishing rights] the [Community] could not prosper.")).

[78] *Id.* at 1045 (first quoting *Arizona*, 373 U.S. at 600; and then citing *Alaska Pac. Fisheries*, 248 U.S. at 89 ("Congress intended to conform its action to their situation and needs.")).

[79] *Id.* at 1042, 1044-45 (quoting *Chehalis*, 96 F.3d at 342) (other citations omitted).

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al*.
Order re Motions for Summary Judgment
Page 16 of 27

then concluded that the "scope" of the Metlakatlans' already-existing implied off-reservation fishing right includes their "traditional fishing grounds"—that is, "the areas where they have fished since time immemorial and where they continued to fish in 1891 when their reservation was established"—"for personal consumption and ceremonial purposes, as well as for commercial purposes."[80]

The State incorrectly construes the Ninth Circuit's discussion of the Metlakatlans' traditional fishing grounds as a requirement that the Metlakatlans must prove the existence of aboriginal rights, *i.e.*, that their use of those waters was exclusive.[81] To the contrary, the Circuit Court's discussion tracks the case law governing reserved rights. Earlier in the opinion, the Ninth Circuit explained that "[a] right will be inferred when that right supports a purpose for which a reservation was established."[82] It further held that, "[b]ecause the purposes of reservations are often unarticulated in a statute, treaty, or executive order, [courts] consider 'the circumstances surrounding their creation[] and the history of the Indians for whom they were created.'"[83] As noted above, in defining the scope of the Community's implied fishing right, the Ninth Circuit considered the purpose of the Community's reservation, which was informed by "the circumstances surrounding [its] creation,"

---

[80] *Id.* at 1045, 1048.

[81] *See* Docket 50 at 6-9, 13-14.

[82] *Metlakatla*, 58 F.4th at 1042 (citing *Winters*, 207 U.S. at 576-77).

[83] *Id.* (quoting *Chehalis*, 96 F.3d at 342).

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al.*
Order re Motions for Summary Judgment
Page 17 of 27

Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 17 of 27

Congress's intent, and "the history of the Indians for whom [it was] created."[84] Simply because the Circuit Court discussed the Metlakatlans' historical use of off-reservation fishing grounds—which it noted that it should do to determine the reservation's purposes—does not transform this case into one which requires proof of aboriginal rights given that the implied fishing right here stems from the 1891 Act.[85]

## II.     The State's Motion for Summary Judgment

Because the Ninth Circuit has already determined the scope of the Community's implied right to include non-exclusive off-reservation fishing, the Court

---

[84] *See id.* at 1042, 1044-45 (citations omitted).

[85] At Docket 65, the Court requested that the parties address at oral argument the following paragraph from the Ninth Circuit's opinion:

> Second, Alaska argues that the Community is foreclosed from claiming an implied right to off-reservation fishing because Metlakatlans "had no aboriginal claims to preserve." However, as discussed above, Metlakatlans and their Tsimshian ancestors asserted and exercised a right to fish in these waters since time immemorial. In passing the 1891 Act, Congress "confirmed the continued existence of th[is] right[]." *Adair*, 723 F.2d at 1414.

*Metlakatla*, 58 F.4th at 1046 (quoting *United States v. Adair*, 723 F.2d 1394, 1414 (9th Cir. 1983)). While the State maintains that this paragraph affirms the State's position that this case is an aboriginal rights case, the Court disagrees. *See* Docket 69 at 3-4 (Oral Arg. Tr. Excerpt). The Ninth Circuit here makes no mention that the Community's fishing practices had to be to the exclusion of all others; the Circuit Court notes only that the Metlakatlans had fished in those waters since "time immemorial," which simply means "[a] point in time so far back that no living person has knowledge or proof contradicting the right or custom alleged to have existed since then" or "[a] very long time." *See* Time Immemorial, Black's Law Dictionary (11th ed. 2019). Furthermore, in *United States v. Adair*, the Ninth Circuit considered aboriginal uses even though the case was about reserved rights; there, it held that "where . . . a tribe shows its aboriginal use of water to support a hunting and fishing lifestyle, and then enters into a treaty with the United States that reserves this aboriginal water use, the water right thereby established retains a priority date of first or immemorial use." 723 F.2d at 1414. As such, that the Ninth Circuit considered the Metlakatlans' long-standing off-reservation fishing practices in this reserved rights case does not, again, convert it into an aboriginal rights case.

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al*.
Order re Motions for Summary Judgment
Page 18 of 27

Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 18 of 27

is "foreclose[d] . . . from reconsidering [that] matter[]."[86]  Here, the Ninth Circuit's opinion is explicit; it remands to this Court "to allow further proceedings to determine whether the Community's traditional off-reservation fishing grounds included the waters within Alaska's Districts 1 and 2."[87]  Therefore, the question before this Court is not the question of the scope of the Community's implied fishing right—which the Ninth Circuit has already held to be the Community's "traditional fishing grounds for personal consumption and ceremonial purposes, as well as for commercial purposes"—but rather the limited factual inquiry of whether those "traditional fishing grounds" include the waters within Districts 1 and 2.[88]  Because the State presents no evidence on that factual inquiry, the Court denies the State's motion for summary judgment.[89]

To be clear, the Court does not equate the Ninth Circuit's use of the phrases "traditional fishing grounds" and "the areas where [the Metlakatlans] have fished since time immemorial and where they continued to fish in 1891 when their reservation was established"[90] with the requirement to prove aboriginal rights in the legal sense—that is, "actual, exclusive, and continuous use and occupancy for a long

---

[86] *Kellington*, 217 F.3d at 1094 (citation omitted).

[87] *Metlakatla*, 58 F.4th at 1045.

[88] *Id.*

[89] *See Celotex Corp.*, 477 U.S. at 325 (holding that the burden of showing the absence of a genuine dispute of material fact lies with the movant).

[90] *Metlakatla*, 58 F.4th at 1045, 1048.

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al.*
Order re Motions for Summary Judgment
Page 19 of 27

Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 19 of 27

time of the claimed area."[91]  Rather, the Court reads the Ninth Circuit's discussion as a recount of the history of the Community's Tsimshian ancestors and their fishing practices in the area.  Additionally, the Court is unpersuaded by the State's argument that the Community may not rely on any of its members' ancestors who may have held aboriginal rights in the area, such as the Tlingit and Haida Indians, or that the Ninth Circuit "remanded to this Court to determine the scope of the aboriginal rights held by the emigrant Metlakatlans in 1891," who had Tsimshian, not Tlingit and Haida, ancestors.[92]  Again, the State's aboriginal rights arguments are irrelevant to this reserved rights case; moreover, the Ninth Circuit makes no distinction between Community members with "Tsimshian ancestors"[93] and those of other ancestry. Rather, the Ninth Circuit's opinion applies to "the Metlakatlan Indian Community" and where its members had "fished since time immemorial and where they continued to fish in 1891 when their reservation was established."[94]  Thus, those members include the Metlakatlans who had "emigrated from British Columbia to Alaska, and," up to that point, "such other Alaskan natives as may [have] join[ed] them."[95]

---

[91] *Native Vill. of Eyak*, 688 F.3d at 622 (internal quotation marks and citation omitted).

[92] Docket 42 at 33, 38 (emphasis omitted) (first citing *Tlingit & Haida Indians of Alaska v. United States*, 177 F. Supp. 452, 457-58 (Ct. Cl. 1959) (holding that the Tlingit & Haida Indians held aboriginal rights in southeast Alaska because they "exclusively used and occupied all of that area of southeastern Alaska" as shown in a map attached to the order); and then citing *Metlakatla*, 58 F.4th at 1038, 1045-46).

[93] *See* Docket 42 at 38.

[94] *Metlakatla*, 58 F.4th at 1048.

[95] *Id.* at 1038 (quoting 1891 Act).

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al*.
Order re Motions for Summary Judgment
Page 20 of 27

Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 20 of 27

The State further contends that the Ninth Circuit "adopted the *U.S. v. Michigan* rule," which the State asserts means that only "the Tsimshian emigrants' non-extinguished aboriginal rights that were 'preserved' when Congress created the Annette Islands Reserve provides the scope of [the Community] members' implied off-reservation fishing right."[96]  The State maintains that the Circuit Court confirmed it had adopted the *Michigan* district court's framework "when it used words like 'preserved' and 'relinquished.'"[97]  The Court disagrees.  The Ninth Circuit simply noted the district court's application of *Winters v. United States*, the "seminal case" on implied reserved rights, in the *Michigan* case and did not cite the case again in its discussion of the Community's off-reservation fishing rights.[98]  The Ninth Circuit noted that its "sister circuit endorsed the application of the *Winters* framework to the context of off-reservation fishing rights in *United States v. Michigan*" and affirmed the trial court's finding that an implied reserved right "to fish commercially and for subsistence" existed because "the historical evidence 'demonstrat[ed] that the Indians were absolutely dependent upon fishing for subsistence and their livelihood,' such that 'they would not have relinquished their right to fish in the ceded waters of the Great Lakes.'"[99]  But the Ninth Circuit in no way indicated that it was adopting any

---

[96] Docket 50 at 1-2 (citing *Metlakatla*, 58 F.4th at 1044).

[97] Docket 50 at 4.

[98] *See Metlakatla*, 58 F.4th at 1042, 1044 (citing *United States v. Michigan*, 471 F. Supp. 192, 253 (W.D. Mich. 1979), *aff'd*, 653 F.2d 277 (6th Cir. 1981)).

[99] *Id.* at 1044 (first citing *Michigan*, 653 F.2d 277; and then quoting *Michigan*, 471 F. Supp. at 253).

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al*.
Order re Motions for Summary Judgment
Page 21 of 27

Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 21 of 27

rule from *Michigan*.[100]

The State also asserts that reserved rights cases, including *Winters*, "are of little help" because those cases concern "the allocation of a resource for the tribe's *on-reservation needs*."[101]  The State contends that such cases "provide no guidance on what rule this court should apply on remand to determine whether [the Community] members' implied off-reservation fishing right includes certain state-managed waters."[102]  But this Court need not determine what rule to apply on remand because the Ninth Circuit has already articulated the rule this Court is to apply.  The Ninth Circuit expressly applied the *Winters* framework to determine the Community's implied off-reservation rights.

The State also asserts that "*Confederated Tribes of Chehalis Indian Reservation v. Washington* is irrelevant" in determining "the scope of an implied off-reservation fishing right" because the Ninth Circuit in *Chehalis* "did not find that the tribe[s] held an implied off-reservation fishing right" and therefore "never answered what test a court would use to determine the scope of [that] . . . right."[103]  *Chehalis* examined whether—after two tribes' aboriginal fishing rights were extinguished—executive orders that were issued before Washington became a state and that

---

[100] *See id.* at 1044.

[101] Docket 61 at 2 (emphasis in original) (citing *Winters*, 207 U.S. 564).

[102] Docket 61 at 3 (emphasis omitted).

[103] Docket 61 at 3-4 & n.13 (emphasis omitted).

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al.*
Order re Motions for Summary Judgment
Page 22 of 27

created the tribes' reservations "contained implied off-reservation fishing rights."[104] Like *Chehalis*, the instant case does not concern aboriginal rights; rather, like *Chehalis*, it involves an enactment made before Alaska became a state that created the Metlakatlans' reservation, and pertains to the existence of implied off-reservation fishing rights stemming from that statutory enactment.  Thus, contrary to the State's position that the Community's implied fishing rights exist only if the Community can prove it had aboriginal fishing rights in an area,[105] *Chehalis* clearly stands for the proposition that an implied reserved right may be found even if a tribe has no aboriginal rights.  However, as discussed in the previous paragraph, this Court need not reference *Chehalis* or any other cases to determine "what test a court would use to determine the scope of a tribe's implied off-reservation fishing right,"[106] because the Ninth Circuit has already spoken to that issue here.

As to the State's contention that ANCSA bars this litigation because it extinguished all claims based on aboriginal rights in Alaska, the Court agrees with the Community and the United States that ANCSA is inapplicable here because this case does not concern aboriginal rights, but rather reserved rights.[107]

Finally, the State asserts that, if this Court finds that the Community's off-reservation fishing rights include fishing in Districts 1 and 2, then the Court "must

---

[104] 96 F.3d at 341-42.

[105] *See* Docket 42 at 27.

[106] Docket 61 at 4 n.13.

[107] *See* Docket 42 at 24 & n.111 (citing 43 U.S.C. § 1603); Docket 47 at 26-28; Docket 59 at 20-21.

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al.*
Order re Motions for Summary Judgment
Page 23 of 27

consider whether the State's limited entry permit program falls under the 'conservation necessity principle,'" which the State maintains would allow it to "regulate a tribe's off-reservation fishing right if the regulation is for a conservation purpose."[108]  The Court rejects this argument as premature and contrary to the Ninth Circuit's ruling, which expressly held that "Alaska's limited entry program, as currently administered, is incompatible with the Metlakatlans' off-reservation fishing rights."[109]

For the foregoing reasons, the Court denies the State's motion for summary judgment.

### III.    The Community's Cross-Motion for Summary Judgment

The Community cross-moves for summary judgment on its first claim for relief and against the State's second, third, fourth, and fifth affirmative defenses.[110]  The Community's first claim for relief requests that the Court:

> Declare that Congress' reservation of the Annette Islands Reserve for the Metlakatla Indian Community included the non-exclusive right to fish in the areas where they have fished since time immemorial and where they continued to fish in 1891 when their reservation was established, free from unreasonable interference by the defendants, and that such right has not been revoked or diminished[.][111]

Because the Community requests relief on an issue already decided by the Ninth Circuit, which held that the scope of the Metlakatlans' implied off-reservation fishing

---

[108] Docket 50 at 20.

[109] *Metlakatla*, 58 F.4th at 1047; *see also* discussion *infra* pp. 25-27.

[110] Docket 47 at 6.

[111] Docket 40 at 21.

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al*.
Order re Motions for Summary Judgment
Page 24 of 27

right includes their "traditional fishing grounds"—that is, "the areas where they have fished since time immemorial and where they continued to fish in 1891 when their reservation was established"[112]—the Court grants summary judgment to the Community on this request. The Court will set for trial the issue of "whether the Community's traditional off-reservation fishing grounds included the waters within Alaska's Districts 1 and 2."[113]

The State's second and third affirmative defenses are contingent upon a finding that the Community must prove they had aboriginal rights in Districts 1 and 2.[114] As discussed above, this case concerns reserved rights, which do not require proof of aboriginal rights. Therefore, the Court grants summary judgment to the Community as to the State's second and third affirmative defenses.

The State's fourth affirmative defense asserts that ANCSA bars this litigation because it extinguished all claims based on aboriginal right, title, use, or occupancy.[115] However, the Community does not assert a claim based on aboriginal rights; rather, it asserts a claim based on reserved rights. Thus, the Court grants summary judgment to the Community as to the State's fourth affirmative defense.

The State's fifth affirmative defense alleges that, even if the Community has an implied off-reservation fishing right, it is still "subject to the State of Alaska's

---

[112] *Metlakatla*, 58 F.4th at 1045, 1048.

[113] *See id.* at 1045.

[114] *See* Docket 41 at 19.

[115] Docket 41 at 19 (citing 43 U.S.C. § 1603(c)).

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al.*
Order re Motions for Summary Judgment
Page 25 of 27

Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 25 of 27

commercial fishing statutes and regulations, which includes the limited entry program, because those management statutes and regulations were adopted to conserve the State of Alaska's fisheries."[116]   The Ninth Circuit held that "Alaska's limited entry program, as currently administered, is incompatible with the Metlakatlans' off-reservation fishing rights," and that "[a]ny regulation by Alaska of off-reservation fishing by the Community must be consistent with such rights."[117] However, the Ninth Circuit's opinion is silent as to what aspects of the limited entry program, "as currently administered," are incompatible with the Community's off-reservation fishing rights, and both parties acknowledge that this issue has not been fully briefed to either the Ninth Circuit or to this Court.[118]   "[T]he mandate of an appellate court forecloses the lower court from reconsidering matters determined in the appellate court, [but] it 'leaves to the district court any issue not expressly or impliedly disposed of on appeal.'"[119]  Thus, the Court finds that genuine issues remain as to what aspects of the State's limited entry program are incompatible with the

---

[116] Docket 41 at 19-20 (citing *Scudero v. State*, 496 P.3d 381 (Alaska 2021)).

[117] *Metlakatla*, 58 F.4th at 1047.

[118] In the Community's briefing to the Ninth Circuit, the Community asserted that the "district court expressly did not reach" the issue of "[w]hether the limited entry program is designed for conservation and implemented in a non-discriminatory manner."  The Community further asserted that the Ninth Circuit "should not address this merits issue, which instead should be reached by the district court in the first instance after full briefing."  Plaintiff-Appellant's Reply Brief at 23, *Metlakatla*, 58 F.4th 1034 (No. 21-35185) (quoting *Metlakatla*, 2021 WL 960648, at *2) (other citations omitted).  The State at oral argument in front of the Ninth Circuit also asserted that this issue was "not on review."  Transcript of Oral Argument, *Metlakatla*, 58 F.4th 1034 (No. 21-35185), 2021 WL 9098227.

[119] *Kellington*, 217 F.3d at 1094 (citation omitted).

Case No. 5:20-cv-00008-SLG, *Metlakatla Indian Community v. Dunleavy, et al*.
Order re Motions for Summary Judgment
Page 26 of 27
Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 26 of 27

Community's off-reservation fishing rights.[120]  Accordingly, the Court denies summary judgment to the Community as to the State's fifth affirmative defense.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Defendants' Motion for Summary Judgment at Docket 42 is DENIED, and that Plaintiff's Cross-Motion for Summary Judgment at Docket 47 is GRANTED in part and DENIED in part as set forth herein. A status conference is scheduled for **June 25, 2024, at 11:00 a.m. in Anchorage Courtroom 2** to set a trial date for a determination of "whether the Community's traditional off-reservation fishing grounds included the waters within Alaska's Districts 1 and 2"[121] and to establish pretrial deadlines.

DATED this 7th day of June, 2024, at Anchorage, Alaska.

_/s/ Sharon L. Gleason_
UNITED STATES DISTRICT JUDGE

---

[120] The Community agrees that "Indian fishing rights can be limited for conservation purposes" so long as the conservation purpose is "sound" and does not discriminate against Indians.  Transcript of Oral Argument, _Metlakatla_, 58 F.4th 1034 (No. 21-35185), 2021 WL 9098227 (citing _Puyallup Tribe v. Dep't of Game of Wash._, 391 U.S. 392, 398-99 (1968)).  But while a state may regulate "the time and manner of fishing . . . necessary for the con[s]ervation of fish," a reserved right may "not be qualified or conditioned by the [s]tate," such as requiring a tribal member to purchase a fishing license for an area in which the member has a reserved right to fish.  _Puyallup_, 391 U.S. at 398-99 (quoting _Tulee v. Washington_, 315 U.S. 681, 684 (1942)); _see also_ Docket 57 at 15-17.

[121] _See Metlakatla_, 58 F.4th at 1045.

Case No. 5:20-cv-00008-SLG, _Metlakatla Indian Community v. Dunleavy, et al._
Order re Motions for Summary Judgment
Page 27 of 27

Case 5:20-cv-00008-SLG   Document 70   Filed 06/07/24   Page 27 of 27