**Christopher Lundberg,** OSB No. 941084
(pro hac vice)
Email: clundberg@hk-law.com
**Joshua J. Stellmon,** OSB No. 075183
(pro hac vice)
Email: jstellmon@hk-law.com
**Christopher T. Griffith,** OSB No. 154664
(pro hac vice)
Email: cgriffith@hk-law.com.
**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, Oregon 97201
Phone: (503) 225-0777
Facsimile: (503) 225-1257

     Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| **METLAKATLA INDIAN COMMUNITY,** a Federally Recognized Indian Tribe, <br><br>     Plaintiff, <br><br> v. <br><br> **MICHAEL J. DUNLEAVY**, *et al.*, <br><br>     Defendants. | Case No.: 5:20-cv-00008-SLG <br><br> **Oral Argument Requested** |

**PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR  97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG    Document 112    Filed 07/21/25    Page 1 of 40

# TABLE OF CONTENTS

I.   INTRODUCTION .............................................................1

II.   FACTS.........................................................................7

    A.  The Community's Tsimshian Ancestors Fished in the Waters of
        Southeast Alaska Since Time Immemorial................................8

    B.  Tlingit and Haida People Were Among the Community's Original
        Members and Fished in Off-Reservation Areas.......................10

    C.  The Community's Tlingit and Haida Ancestors Also Fished in the
        Waters of Southeast Alaska Since Time Immemorial. ...........11

    D.  The Community's Members Continued to Fish in the Waters of
        Southeast Alaska Until the State of Alaska Implemented the Limited
        Entry Program in Violation of the Community's Congressionally
        Reserved Fishing Rights.........................................................11

    E.  The Community Is Not Asserting Aboriginal Rights, Nor Seeking
        Ownership of Any Fishing Area. ............................................13

III.  POINTS AND AUTHORITIES ......................................14

    A.  The Central Council has no Legally Protected Interest
        in this Litigation.....................................................................14

        1.  The Central Council has no legally recognized fishing rights............16

        2.  The Central Council has no sovereign authority to regulate the
            activities of nonmembers. ...............................................19

        3.  This case will have no impact on the Central Council's sovereign
            right to self-governance..................................................20

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

  4. The Central Council's concern about impacts on its fishing
    opportunity is pure speculation. ...........................................24

 B. The Central Council Failed to Timely Intervene. ...................27

  1. The Central Council's motion is untimely. .........................28

   a. The Central Council sat on its hands for nearly five years and
     waited until the remedial stage of this case to attempt to thwart the
     Community's rights.......................................................29

   b. The Community would be prejudiced if the Central Council were
     permitted to intervene. .................................................31

   c. The Central Council has no reasonable explanation for its failure
     to timely intervene. .....................................................32

IV. CONCLUSION................................................................32

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Pac. Fisheries v. United States,*
248 U.S. 78 (1918)............................................................................18

*Alaska v. Native Village of Venetie Tribal Government,*
522 U.S. 520 (1998)..........................................................17, 19, 20, 22

*Cachil Dehe Band of Wintun Indians of the Colusa Indians v.
California,* 547 F.3d 962 (9th Cir. 2008) ....................................14, 15

*Chillkat Indian Village v. Johnson,*
870 F.2d 1469 (9th Cir. 1989) ...............................................................21

*Kescoli v. Babbit,*
101 F.3d 1304 (9th Cir. 1996) ...............................................................22

*Keweenaw Bay Indian Community v. State of Michigan,*
11 F.3d 1341 (6th Cir. 1993) .................................................................26

*Makah Indian Tribe v. Verity,*
910 F.2d 555 (9th Cir.1990) ............................................... 15, 26, 27

*Metlakatla Indian Community, Annette Island Reserve v. Egan,*
369 U.S. 45 (1962)................................................................................18

*Metlakatla Indian Community v. Dunleavy,*
58 F.4th 1034 (9th Cir. 2023) ........................................18, 25, 29, 31

*Metlakatla Indian Community v. Dunleavy,*
736 F.Supp.3d 741 (D. Alaska 2024) ..........................................*passim*

*Microsoft Corp. v. Baker,* 582 U.S. 23 (2017)..................................14, 15

*Native Village of Eyak v. Trawler Diane Marie, Inc.,*
154 F.3d 1090 (9th Cir. 1998) ...............................................................18

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

*Pit River Home & Agricultural Co-op Assn. v. United States*,
30 F.3d 1088 (9th Cir. 1994) ...............................................................................23

*Puyallup Tribe v. Dep't of Game*,
391 U.S. 392 (1968) ...........................................................................................25

*Quileute Indian Tribe v. Babbit*,
18 F.3d 1456 (9th Cir. 1994) ...............................................................................23

*Skokomish Indian Tribe v. Goldmark*,
994 F.Supp.2d 1168 (D. Wash. 2014) .........................................................26, 27

*Smith v. Marsh*,
194 F.3d 1045 (9th Cir. 1999) ...............................................................................32

*Snoqualmie Indian Tribe v. Washington*,
8 F.4th 853 (9th Cir. 2021) .................................................................................16

*Spangler v. Pasadena City Bd. of Ed.*,
552 F.2d 1326 (9th Cir. 1977) ...............................................................................27

*State of Montana v. United States*,
450 U.S. 544 (1981)......................................................................................19, 23

*Tlingit and Haida Indians of Alaska v. United States*,
177 F. Supp. 452 (Ct. Cl. 1959)......................................................................9, 11

*Tlingit and Haida Indians of Alaska v. United States*,
182 Ct. Cl. 130 (1968) ....................................................................................6, 16

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) .....................................................................*passim*

*United States v. State of Oregon*,
913 F.2d 576 (9th Cir.1990) ....................................................................27, 28, 30

*United States v. State of Washington*,
86 F.3d 1499 (9th Cir. 1996) .............................................................28, 30, 32

*Village of Gambel v. Clark*,
746 F.2d 572 (9th Cir. 1984) ...............................................................................17

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR  97201**
**T: (503) 225-0777 / F: (503) 225-1257**

*Ward v. Apple, Inc.*,
   791 F.3d 1041 (9th Cir. 2015) ................................................................14

**Statutes**

28 U.S.C. § 1362 ................................................................................21

43 U.S.C. § 1603 ...........................................................................6, 17

**Other Authorities**

Benjamin W. Thompson, *The De Facto Termination of Alaska Native
   Sovereignty: An Anomaly in an Era of Self-Determination*, 24 Am.
   Indian L. Rev., 421 (2000) .................................................................19

Fed. R. Civ. P. 24 ........................................................................26, 27

Fed. R. Civ. P. 19 ....................................................................passim

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

# I. INTRODUCTION.

At this extremely late hour, the Central Council of Tlingit & Haida Indians of Alaska ("Central Council") ask this Court to dismiss this case and, in so doing, to forever deny the Metlakatla Indian Community (the "Community") from enjoying the full benefits of its Congressionally reserved, non-exclusive off-reservation fishing rights, which the United States Supreme Court and the Ninth Circuit Court of Appeals have already determined exist. Such an extreme result would be a grave injustice.

The Community sympathizes with the Central Council's loss of its fishing rights. But the unfortunate reality is that the Central Council has no fishing rights to protect. That is true now and will be true no matter what the outcome is in this case. As such, the Central Council has nothing to gain by seeking dismissal of the Community's case other than to deny the Community a remedy that is just and necessary to its long-term survival.

As explained below, the Central Council's motion is flawed and should be rejected for three primary reasons: (1) it is based on their misunderstanding that the limited scope of the Ninth Circuit's remand requires a determination that the Community owns fishing areas; (2) it is based on an incomplete historical account of the time immemorial presence of Tsimshian, Tlingit and Haida in Southeast

PAGE 1 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Alaska and relatedly it fails to meaningfully acknowledge the Community's original Tlingit and Haida members; and, (3) it does not meet the any of the factors required to warrant such an extreme remedy under Rule 19.

As an overarching matter, the Central Council's motion lacks merit because it is based on the same wrong analytical narrative that the State of Alaska has twice advanced and lost; namely, that this case requires proving aboriginal fishing rights. It does not. As this Court has made abundantly clear, aboriginal rights are irrelevant because this case concerns the Community's Congressionally reserved, already-existing off-reservation fishing rights. At this late stage, the only remaining inquiry is the scope of those off-reservation fishing rights, not whether those rights exist or whether Tlingit, Haida or Tsimshian own a fishing area.

In a carefully worded opinion, this Court described the proper analytical framework, which when applied to the Central Council's arguments shows that its motion is misguided and must be denied. In that regard, this Court explained the correct analytical framework as follows.

Initially, this Court explained that the already existing off-reservation reserved rights included an expectation that the Community would fish for subsistence and ceremonial purposes, and that they would "pursue the commercial fishery that had provided, and continued to provide, essential economic support for

PAGE 2 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG    Document 112    Filed 07/21/25    Page 8 of 40

the Community," noting that the off-reservation fishing areas would have to be vast enough to satisfy the Community's "future as well as the[ir] present needs." *Metlakatla Indian Community v. Dunleavy*, 736 F.Supp.3d 741, 751-52 (D. Alaska 2024). This Court stated that the key, congressional-intent inquiry to determine the full scope of the Community's already-existing reserved fishing right required a consideration of what "the [Metlakatlans] would have understood" to be the scope of those rights when their reservation was created and the purpose of their reservation, "as deduced from the surrounding circumstances and Congress's intent[.]" *Id*. at 752. In other words, this Court explained that the correct interpretative approach was to assess where Metlakatlans (which included Tsimshian, Tlingit and Haida Indians) would have expected to fish to allow them to continue to live as their original members had always lived and to successfully engage in the newly emerging commercial fisheries. *Id*.

This Court then provided the analytical framework to answer that limited question, which was to identify the Metlakatlans' Tsimshian, Tlingit and Haida ancestors' "traditional fishing grounds," which the Court described as "the areas where they have fished since time immemorial and where they continued to fish in 1891 when their reservation was established." *Id*. This Court clarified that "the phrases 'traditional fishing grounds' and 'the areas where [the Metlakatlans] have

PAGE 3 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG    Document 112    Filed 07/21/25    Page 9 of 40

fished since time immemorial and where they continued to fish in 1891 when their reservation was established'" was not synonymous "with the requirement to prove aboriginal rights in the legal sense." *Id*. at 753. Rather, as this Court explained, the factual inquiry considered the history of the Community's Tsimshian, Tlingit and Haida ancestors and their fishing practices in the area. *Id*.

Underscoring the irrelevance of aboriginal fishing rights, the Community has never argued in this case that it has an aboriginal fishing right in the waters of Southeast Alaska – or that it seeks such a finding by this Court. Rather, the Community has always argued that, just as this Court and the Ninth Circuit have instructed, the scope of its already-existing implied, off-reservation fishing right is established by the time immemorial fishing practices of its Tlingit, Haida and Tsimshian ancestors in the area and the fishing areas it used in 1891 to satisfy its current and future needs.

In addition to its misunderstanding of the nature of the scope-related inquiry, the Central Council's motion rests on an incomplete historical narrative. According to the Central Council's incomplete narrative, Tsimshian are only recent arrivals to Southeast Alaska, were historically excluded from all the adjacent fisheries by Tlingit and Haida, and that Tlingit and Haida were not original members of the Community. In reality, Tsimshian have an ancient

PAGE 4 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG    Document 112    Filed 07/21/25    Page 10 of 40

presence in Southeast Alaska and routinely plied the surrounding waters during village occupation and trade journeys as well as in connection with intertribal marriages. The Tsimshian, Tlingit and Haida were (and are) integrated tribal communities as those Northern Northwest Coast Indians routinely married into one another's clans. The Metlakatla Indian Community and its ancestral tribal communities have always reflected that integrated reality when they lived in what is now Southeast Alaska, when they migrated into what is now British Columbia, when Congress established the Community in 1891 and even today.

The Central Council's presentation of an incomplete history is contrary to the Ninth Circuit's mandate, which "makes no distinction between Community members with 'Tsimshian ancestors' and those of other ancestry." *Metlakatla Indian Community*, 736 F.Supp.3d at 753. In that regard, rather than countering the Community's claims in this case, the materials submitted by the Central Council only bolster the Community's position that its already-existing implied reserved fishing right includes the marine waters of Districts 1 and 2.

The Central Council's motion also rests on several false legal premises. The most surprising of these is its claim that its cultural *at.oow* constitutes legally protected fishing rights. In 1968, the Federal Court of Claims conclusively held that Tlingit and Haida have "no statutory property right in migratory fish" and "no

PAGE 5 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG    Document 112    Filed 07/21/25    Page 11 of 40

property right to a fishery location based on aboriginal occupancy and use." *Tlingit and Haida Indians of Alaska v. United States*, 182 Ct. Cl. 130, 144 (1968). To the extent that any fishing rights or claims based on those rights survived that decision, the Central Council and its constituent Tlingit and Haida clans voluntarily relinquished them when they signed onto the Alaska Native Claims Settlement Act, which extinguished "[a]ll aboriginal titles" and "claims of aboriginal title" based on "use and occupancy," including "any aboriginal . . . fishing rights that may exist." 43 U.S.C. § 1603. Although the Community is sympathetic to the Central Council's effort to elevate its "symbolic" *at.oow*[1] above federal law, it simply does not have any legally protectable interest in fishing rights.

Similarly, while the Central Council has sovereign authority over its members, it has no legally protected sovereign authority at stake in this litigation. It has no sovereign land base, no sovereign water, and no sovereign fishing areas. Even if it could somehow regulate the fishing activities of its members, Central Council has no sovereign authority to regulate the fishing

---

[1] *See*, Excerpts of Rosita Kaahani Worl, *Tlingit Atoow: Tangible and Intangible Property* (1998) (unpublished Ph. D. dissertation) (Dkt. 108-1) at 35, ¶ 2 (Explaining that, after the extinction of aboriginal title under ANCSA, "the clans reluctantly acknowledged they could no longer protect their legal claims to ownership ot the land and their hunting and fishing areas.").

PAGE 6 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG   Document 112   Filed 07/21/25   Page 12 of 40

activities of any non-members, let alone the Metlakatla Indian Community. Moreover, no matter the outcome of this case, the Central Council's sovereign authority over its members will not be impacted in any way.

Finally, the Central Council's eleventh-hour motion is untimely. Rather than timely intervene and raise these issues five years ago, when this Court and then later the Ninth Circuit was tasked with determining the existence of the Community's reserved fishing rights, the Central Council sat on its hands. The Central Council's unreasonable delay and its belated effort to forever thwart the remedy that the Community is entitled to would severely prejudice the Community. For all these reasons, and as explained in detail below, this Court should deny the Central Council's motion to dismiss.

## II.  FACTS.

The Tsimshian, Tlingit and Haida share a long, interconnected and dynamic history. They are the only members of the Northern Northwest Coast Culture, and they share significant cultural features including matrilineality, exogamy, reciprocity and marital access to the tribal territory and resources of the other tribes.[2] This shared culture resulted in a multigenerational process of integration

---

[2] Langdon Decl., ¶ 12.

PAGE 7 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

of the tribes, particularly the Tsimshian and Tlingit.[3]  The history of the Tsimshian,

Tlingit, and Haida in Southeast Alaska demonstrates that the Tribes have

traditionally been mutually supportive, and the Tribes' historically dynamic and

interrelated lineage in the region is well-documented.[4]

A.   **The Community's Tsimshian Ancestors Fished in the Waters of Southeast Alaska Since Time Immemorial.**

The Tsimshian have been present in the area that is now Southeast Alaska

since time immemorial, where they coexisted with the Tlingit and Haida and

continuously used the marine resources in the same areas as the Tlingit and Haida.[5]

The tribal groups regularly shared traditional cultural practices such as potlatches,

and they are so integrated that some Tlingit tribes are descendants of ancient

Tsimshian tribes.[6]  Even the tribal name "Tlingit" reflects this shared history.

Tlingit translates as "the Tides People," with "Tlin" meaning "tides" in Tlingit and

"git" meaning "human being" in Tsimshian.[7]  A concrete example of this integrated

history is the 1,500-year-old petroglyph on the Unuk River that marks the

historical Tlingit familial fishing grounds of Louie and Walter Wagner, and Albert

---

[3] *Id.*, ¶ 13.
[4] *Id.*, ¶¶ 13-15 & 24.
[5] Langdon Decl., ¶¶ 23-24; Declaration of David R. Boxley ("Boxley Decl."), ¶¶ 2, 7-9, Exs. A & B.
[6] Boxley Decl., ¶¶ 2 & 21.
[7] Boxley Decl., ¶ 18.

PAGE 8 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR  97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG     Document 112     Filed 07/21/25     Page 14 of 40

Smith, the Metlakatla Indian Community's mayor.[8]  Consistent with that intertwined history, many of todays' Community members trace their ancestral roots to Tsimshian, Tlingit, and Haida.[9]

Trade occurred between the tribes throughout Southeast Alaska since time immemorial and the Tsimshian engaged in extensive and longstanding trade relationships with the Tlingit tribes.[10]  During those trading expeditions, the Tsimshian would engage in subsistence fishing.[11]  The ancestors of today's Metlakatla Indian Community routinely traded with other tribes in Southeast Alaska, including the trading of smoked eulachon for halibut, and then later in the same season, eulachon grease for seaweed.[12]  Tsimshian territorial waters in Southeast Alaska were documented as far north as Kake and included the western side of the Portland Canal.[13]  The Central Council has acknowledged as much.  In a map that it submitted to the Federal Court of Claims in *Tlingit and Haida Indians of Alaska v. United States*, 177 F. Supp. 452 (Ct. Cl. 1959) the Central Council

---

[8] Declaration of Albert G. Smith ("Smith Decl."), ¶¶ 1; 10-12, Ex. A.
[9] Langdon Decl., ¶¶ 14, 34-37; Boxley Decl., ¶ 34; Smith Decl., ¶ 1; Declaration of Desmond Hayward-King ("Hayward-King Decl."), ¶1; Declaration of Freeman McGilton ("McGilton Decl."), ¶ 1; Declaration of Edward Gunyah ("Gunyah Decl."), ¶ 1; Declaration of Daniel Mardsen, Sr. ("Mardsen Decl."), ¶ 1.
[10] Langdon Decl., ¶ 56; Smith Decl., ¶ 15.
[11] Langdon Decl., ¶¶ 56-57, Ex. A.
[12] Smith Decl., ¶¶ 14-16.
[13] Boxley Decl., ¶¶ 28-29, Ex. E.

PAGE 9 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR  97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG     Document 112     Filed 07/21/25     Page 15 of 40

designated the western half of the Portland Canal as Tsimshian territory.[14] Notably, Tlingit and Haida tribes traditionally only claimed property rights in freshwater rivers and streams or the intertidal zone, not the marine water areas where the Community's reserved fishing rights are located.[15]

## B. <u>Tlingit and Haida People Were Among the Community's Original Members and Fished in Off-Reservation Areas.</u>

There is no dispute that there were substantial Tlingit and Haida people among the original members of the Community.[16] Consistent with the wishes of Chief William Kinnincock – who granted permission to the Metlakatla Tsimshian to inhabit the reserve and relinquished any Tlingit claim to the island – many Tongass Tlingits continued to reside on the Anette Islands Reserve.[17]  In connection with prosecuting the newly emerging commercial fishery at that time, those Tlingit and Haida Metlakatlans fished in off-reservation areas in which they had a right to fish.[18]

///

///

---

[14] Boxley Decl., ¶¶ 30-31, Ex. F.
[15] Langdon Decl., ¶¶ 27-29.
[16] Id., ¶¶ 39-41.
[17] Boxley Decl., ¶ 34, Ex. G.
[18] Langdon Decl., ¶ 42 and Ex. B, pgs. 1-15

PAGE 10 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR  97201
T: (503) 225-0777 / F: (503) 225-1257

C. **The Community's Tlingit and Haida Ancestors Also Fished in the Waters of Southeast Alaska Since Time Immemorial.**

As explained in the *Tlingit and Haida Indians of Alaska v. United States*, 177 F. Supp. 452 (Ct. Cl. 1959), as asserted by the various declarants offered by the Central Council in support of its Motion, and as advanced by the State, there is no dispute that Tlingit and Haida occupied Southeast Alaska and fished in the area for subsistence, ceremonial and trade purposes.[19]

D. **The Community's Members Continued to Fish in the Waters of Southeast Alaska Until the State of Alaska Implemented the Limited Entry Program in Violation of the Community's Congressionally Reserved Fishing Rights.**

After the establishment of the Annette Islands Reserve, the Community continued to fish in the off-reservation marine waters of Districts 1 and 2 (and beyond) to successfully prosecute the commercial fishery.[20] The ability to fish outside the Annette Islands Reserve was essential to its commercial success. When it was founded, only 30% of the fish processed by the Annette Islands Packing Company ("AIPC") came from reservation waters.[21] Approximately two-thirds of the commercial harvest came from off-reservation waters.[22] *Id.* This is simply the

---

[19] *Id.* at. ¶¶43
[20] Smith Decl., ¶¶ 17-18; Hayward-King Decl., ¶¶ 9-10; McGilton Decl., ¶ 4; Gunyah Decl., ¶ 4; Mardsen Decl., ¶ 5; Declaration of Soloman H. Guthrie ("Guthrie Decl"), ¶¶ 4-7.
[21] Langdon Decl., ¶ 34.
[22] *Id.*

PAGE 11 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG    Document 112    Filed 07/21/25    Page 17 of 40

nature of commercial fishing – fishermen need to go where the fish are and they would have expected to be able to do so.[23]  The Community fishermen who plied State waters never had to ask permission of the Tlingit or Haida or anyone, and they never were excluded from those waters.[24] Rather, the various tribes cooperated and helped each other in their fishing.[25]

These practices did not change until the State established its limited entry permit system.[26]  Many Community members were unable to secure a limited entry permit.[27]  As one fisherman describes it, the limited entry system "turned Annette Islands into a cage."[28]  As a direct result of the limited entry system, the Community was unable to maintain its previous harvest levels, and the AIPC was forced to close.[29]  The loss of that economic engine has been devastating to the Community.[30]  AIPC was the longest continuously running business enterprise in

---

[23] Smith Decl., ¶¶ 17-18; Guthrie Decl., ¶ 8; Hayward-King Decl., ¶¶ 9-10; Gunyah Decl., ¶ 8; Mardsen Decl., ¶¶ 5-6; McGilton Decl., ¶¶ 2-4 & 6; Langdon Decl., ¶¶33-34, Ex. B.
[24] Smith Decl., ¶18; Guthrie Decl., ¶¶ 4 & 8; Hayward-King Decl., ¶ 9; Gunyah Decl., ¶ 4; Mardsen Decl., ¶ 7; McGilton Decl., ¶ 5.
[25] *Id.*
[26] Smith Decl., ¶¶ 19-20; Guthrie Decl., ¶ 4-10; Hayward-King Decl., ¶¶ 10-14; Gunyah Decl., ¶¶ 8-10; Mardsen Decl., ¶¶ 5-6; McGilton Decl., ¶¶ 2-4 & 6.
[27] *Id.*
[28] Gunyah Decl., ¶ 10.
[29] Smith Decl., ¶ 19; Guthrie Decl., ¶ 10; Hayward-King Decl., ¶¶ 12-14; Gunyah Decl., ¶¶ 8-10; McGilton Decl., ¶¶ 6-8.
[30] *Id.*

PAGE 12 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR  97201
T: (503) 225-0777 / F: (503) 225-1257

Indian country.[31]  As a result of the closure, the long-term survival of the

Community is at risk.[32]

### E. <u>The Community Is Not Asserting Aboriginal Rights, Nor Seeking Ownership of Any Fishing Area.</u>

To be clear, the Community is not asserting any aboriginal rights in this

litigation, not seeking "traditional rights," not seeking or claiming exclusive

ownership of or access to an off-reservation fishing location claimed by a Tlingit

or Haida Tribe, not seeking to deny or diminish any Tlingit or Haida claim to

aboriginal property or territory, and not seeking to fish anywhere, in any way and

at any time.[33]  Rather, it seeks to restore the off-reservation fishing rights Congress

reserved for the Community to live as its original members – including Tlingit and

Haida – had always lived and to engage in the then-newly emerging fisheries.[34]  As

a matter of history, the Community generally agrees with the view that the Central

Council takes of its territory and aboriginal property rights.[35]  Importantly, the

Tlingit and Haida historical use supports the restoration of the reserved off-

reservation fishing rights sought by the Metlakatla Indian Community.

///

---

[31] Smith Decl., ¶ 19.
[32] *Id.*
[33] *Id.*, ¶ 7; Boxley Decl., ¶ 13; Langdon Decl., ¶¶ 27-32, ¶ 35.
[34] *Id.*, ¶ 8.
[35] *Id.*, ¶ 9; Langdon Decl., ¶¶ 18, 21-25.

PAGE 13 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR  97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG     Document 112     Filed 07/21/25     Page 19 of 40

## III. POINTS AND AUTHORITIES.

In deciding the Central Council's Rule 19 motion to dismiss, this Court must first decide whether the Central Council is a "required party" who should "normally be joined under the standards of Rule 19(a)." *Cachil Dehe Band of Wintun Indians of the Colusa Indians v. California*, 547 F.3d 962, 969 (9th Cir. 2008)(citing *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022 (9th Cir.2002)). If the Central Council is a "required party," this Court must then determine whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Id.* (citing Fed. R. Civ. P. 19(b)). The Central Council is a "required party" only if it claims a legally protected interest relating to the subject of the action and it is "so situated that disposing of the action" in its absence may: "(i) as a practical matter impair or impede its ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *Id.* at 970 (quoting Fed. R. Civ. P. 19(a)(1)(B)).

### A. The Central Council has no Legally Protected Interest in this Litigation.

The Ninth Circuit has "consistently held" that only "legally protected" interests warrant protection under Rule 19. *Ward v. Apple, Inc.*, 791 F.3d 1041, 1051 (9th Cir. 2015), *abrogated on other grounds by Microsoft Corp. v. Baker*,

PAGE 14 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG    Document 112    Filed 07/21/25    Page 20 of 40

582 U.S. 23 (2017).  When considering intervention by an Indian tribe, a "*crucial premise*" underlying the mandatory joinder rule is that the non-party tribe must possess "an interest in the pending litigation that is 'legally protected.'"  *Cachil Dehe Band of Wintun Indians*, 547 F.3d at 970 (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir.1990)(emphasis added)).  While the interest "need not be 'property in the sense of the due process clause,'" it must be "more than a financial stake," and "more than speculation about a future event."  *Id*.

The Central Council has no legally protectable interest in this case.  It has no legally recognized fishing rights, exclusive or otherwise.  It has no right to govern the actions of non-members.  This case will have no impact on the Central Council's sovereign right to govern its own members.  And the Central Council's asserted interest in ensuring a healthy fishery rests on speculation that the Community's fishing in Districts 1 and 2 will negatively impact the fishing harvest of the Central Council's members.  Quite to the contrary, the Community fully shares that interest and will fish in a responsible and sustainable manner and, consistent with Federal law, will follow the State's opening, closing, gear and location regulations governing the fisheries.  Accordingly, the Central Council is not a "necessary party" to this action, and its motion to dismiss should be denied.

///

**PAGE 15 – PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

1.  **<u>The Central Council has no legally recognized fishing rights</u>**.

The Central Council argues that determining the scope of the Community's reserved fishing rights would "unavoidably" impact its rights, including "exclusive" fishing rights that it claims to never have given up.  Mot. Dismiss at 12; Buchanan Decl., ¶ 7.  That is not accurate.  The Central Council has no fishing rights, exclusive or otherwise.  The United States Court of Claims squarely decided – in no uncertain terms – that any exclusive rights the Central Council may have had at one time "did not survive" the United States' acquisition of Alaska from Russia.  *Tlingit and Haida Indians of Alaska v. United States*, 182 Ct. Cl. 130, 142 (1968).  The *Tlingit and Haida* court explained that the fishing rights of Alaskan tribes were extinguished upon the creation of the United States and that the *only* remaining tribal fishing rights were nonexclusive use rights authorized by Congress such as those belonging to the Community.  *Id*. at 141-42 (internal citations omitted).  Accordingly, the *Tlingit-Haida* court concluded that "there is *no statutory property right in migratory fish*" for which the Central Council "might receive compensation" and "*no property right to a fishery location based on aboriginal occupancy and use*."  *Id*. at 144 (emphasis added).  The Central Council cannot claim such a right now.  *Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853, 864-64 (9th Cir. 2021)(holding that *res judicata* barred Snoqualmie Tribe's

PAGE 16 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR  97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG     Document 112     Filed 07/21/25     Page 22 of 40

relitigating of claims to treaty fishing rights where prior case had adjudicated that issue against it).

Even if the issue had not already been conclusively resolved against it, the Central Council would still be unable to establish a legally protectable fishing right.  To the extent that any of the Central Council's fishing rights and any claims based on those rights survived the *Tlingit-Haida* decision, they were extinguished voluntarily by the Central Council through its participation in the Alaska Native Claims Settlement Act, 43 U.S.C. § 1603 ("ANCSA").  ANCSA extinguished "[a]ll aboriginal titles" and "claims of aboriginal title" based on "use and occupancy," including "*any* aboriginal . . . fishing rights *that may exist*."  *Id*.; *Alaska v. Native Village of Venetie Tribal Government*, 522 U.S. 520, 524 (1998)(emphasis added).  The only tribe that did not voluntarily extinguish those rights is the Metlakatla Indian Community.  *Venetie*, 522 U.S. at 524.  The Central Council's participation in ANCSA unequivocally extinguished the rights they now claim against the Community.  *See Village of Gambel v. Clark*, 746 F.2d 572, 576-79 (9th Cir. 1984)(holding that Congress intended to extinguish all fishing rights of the tribes that participated in ANCSA, including fishing rights in the outer-continental shelf).  The Central Council's supporting materials conceded as much. Excerpts of Rosita <u>K</u>aahani Worl, *Tlingit Atoow:  Tangible and Intangible*

PAGE 17 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR  97201**
**T: (503) 225-0777 / F: (503) 225-1257**

Case 5:20-cv-00008-SLG    Document 112    Filed 07/21/25    Page 23 of 40

*Property* (1998) (unpublished Ph. D. dissertation) (Dkt. 108-1) at 35, ¶ 2

(explaining that, after the extinction of aboriginal title under ANCSA, "the clans

reluctantly acknowledged they could no longer protect their legal claims to

ownership to the land and their hunting and fishing areas.").

Finally, it should go without saying, but the Central Council cannot

unilaterally create legally protectable exclusive fishing rights.  The federal

government holds paramount authority to regulate all areas of the sea, authority

that "cannot be subordinated" to any entity, including tribes such as the Central

Council.  *Native Village of Eyak v. Trawler Diane Marie, Inc.*, 154 F.3d 1090,

1096-97 (9th Cir. 1998), *cert. den.*, 527 U.S. 1003 (1999).  Unlike the Central

Council, the Metlakatla Indian Community's Congressionally created fishing rights

have been repeatedly recognized.  *Alaska Pac. Fisheries v. United States*, 248 U.S.

78, 88 (1918); *Metlakatla Indian Community, Annette Island Reserve v. Egan*, 369

U.S. 45, 48 (1962); *Metlakatla Indian Community v. Dunleavy*, 58 F.4th 1034,

1045 (9th Cir. 2023).  Permitting the Central Council's *at.oow* to trump the

Community's federally created and recognized fishing rights would elevate a tribal

law or custom above the laws of the United States.  Plainly, this Court may not do

that.

///

PAGE 18 – **PLAINTIFF'S OPPOSITION TO THE
CENTRAL COUNCIL OF TLINGIT AND HAIDA
INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR  97201
T: (503) 225-0777 / F: (503) 225-1257

## 2. **The Central Council has no sovereign authority to regulate the activities of nonmembers.**

It is black letter law that the "inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *State of Montana v. United States*, 450 U.S. 544, 565 (1981). Except in limited circumstances not present here, "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe," even on lands within a tribe's reservation. *Id.* at 565. The Central Council argues that it has "never relinquished" its "sovereign powers and responsibility to govern intra-tribal . . . matters concerning *at.oow*." As with its claimed exclusive fishing rights, that is, again, false.

When the Central Council relinquished title to its aboriginal lands under ANCSA, it also relinquished any authority to govern the activities of nonmembers, even on the lands it retained in fee simple as state chartered private corporations. *Venetie*, 522 U.S. at 532-34. Those lands are no longer "Indian country," and the sovereign authority of the Central Council extends only to its own members, even on the lands it holds in fee simple. *Id.*; *see also*, Benjamin W. Thompson, *The De Facto Termination of Alaska Native Sovereignty: An Anomaly in an Era of Self-Determination*, 24 Am. Indian L. Rev., 421, 448-49 (2000)("[W]ithout jurisdiction over the land, the tribal governments in Alaska may only exercise authority over their own members.").

PAGE 19 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Importantly, the reserved fishing rights of the Community will be exercised *entirely* on the maritime waters of Districts 1 and 2. Where the Central Council has no sovereign authority to regulate the activities of nonmembers on its retained fee simple lands, it cannot have any authority to regulate the activities of nonmembers outside those lands because the sovereign authority recognized over nonmembers is directly tied to a tribe's lands that are recognized as "Indian Country." *Venetie*, 522 U.S. at 532-34. This is particularly true given that the only remaining issue to be decided in this case is the extent of the Community's traditional fishing activities in Districts 1 and 2. *Native Village of Eyak*, 154 F.3d at 1096-97 (Alaska native tribes "cannot claim rights" over ocean fishing matters that have been "entrusted" to the federal government, which is the only "external sovereign recognized by the Constitution."). As with the cultural beliefs and practices surrounding its purported fishing rights, the Central Council simply has no legally protected sovereign authority to regulate the fishing activities of the Metlakatla Indian Community.

**3. <u>This case will have no impact on the Central Council's sovereign right to self-governance.</u>**

Without elaboration, the Central Council also claims that this litigation "usurps" its sovereign right to govern its own members. Mot. Dismiss at 26-27. Relying on several cases decided by the Ninth Circuit, it argues that it has the

PAGE 20 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG    Document 112    Filed 07/21/25    Page 26 of 40

"same sovereign interests in recognizing and enforcing traditional rules concerning property ownership" among its citizens that were recognized in those cases. *Id.* (citing *Chillkat Indian Village v. Johnson*, 870 F.2d 1469, 1475 (9th Cir. 1989)). However, a review of those cases highlights why they are inapplicable here. Simply put, this case has no impact on the Central Council's sovereign authority to govern its own members.

For example, *Chillkat Indian Village v. Johnson*, does not address tribal sovereignty over its own members. Rather, the *Chillkat Village* court was asked to decide whether a tribal ordinance prohibiting the unauthorized removal of tribal artifacts was enforceable against nonmembers as federal law under 28 U.S.C. § 1362. 870 F.2d at 1473. The Ninth Circuit held that, while the question was "certainly not free from doubt" and the tribe's asserted authority existed "on the boundaries of tribal jurisdiction," the Chillkat Tribe's enforcement of its tribal ordinance was a matter of federal law. *Id.* at 1474-75. The Ninth Circuit explained that, while the meaning of the tribal ordinance was "barely open to dispute," the Tribe's authority to enact and apply it to non-members was "open to immense dispute." *Id.* at 1474. That "immense dispute" was soundly put to rest nine years later when the United States Supreme Court unequivocally ruled that the fee lands held by ANCSA tribal corporations were not "Indian Country," and thus

PAGE 21 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG    Document 112    Filed 07/21/25    Page 27 of 40

the Alaska tribes that had participated in ANCSA had given up the authority to regulate non-members' activities on those lands. *Venetie*, 522 U.S. at 532-34.

The other cases cited by the Central Council are similarly inapplicable. Those cases all pertain to claims brought by a tribal member or a competing tribe challenging the *intervening tribe's* sovereign authority over concrete legal rights. For example, in *Confederated Tribes of Chehalis Indians Reservation v. Lujan*, the Ninth Circuit determined that the Quinault Nation was a "necessary party" to a case challenging the Secretary of Interior's recognition of the Quinault Nation as the governing body of the Quinault Reservation. 928 F.2d 1496, 1497-98 (9th Cir. 1991). The case had been initiated by individual members and other tribes that were not party to the treaty creating the reservation. *Id*. The Ninth Circuit concluded that the Quinault Nation "undoubtedly" had a "legal interest in the litigation" because the plaintiffs sought a "complete rejection" of the Quinault Nation's status as "the exclusive governing authority of the reservation." *Id*. at 1498.

The Central Council's other cases similarly involve tribal sovereignty over concrete legal interests. *Kescoli v. Babbit*, 101 F.3d 1304 (9th Cir. 1996)(holding that the Navajo Nation and Hopi Tribe were necessary parties to a claim brought by individual tribal members challenging the approval given by the Navajo and

PAGE 22 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR  97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG     Document 112     Filed 07/21/25     Page 28 of 40

Hopi tribal governments to mining leases on their reservation); *Pit River Home & Agricultural Co-op Assn. v. United States*, 30 F.3d 1088 (9th Cir. 1994)(holding that the federally recognized Pit River Council was a necessary party in an action brought by an unrecognized splinter group of members claiming an interest in the disposition of the tribe's trust lands); *Quileute Indian Tribe v. Babbit*, 18 F.3d 1456 (9th Cir. 1994)(holding that the Quinault Nation was a necessary party in claims by the Quileute Indian Tribe to fractional shares in land on the Quinault reservation that would escheat to the Quinault Nation).

Here, as explained in detail above and in stark contrast to the cases it relies on in its motion to dismiss, the Central Council has no concrete protectable legal interest in this case. Aside from an unsupported assertion that the Community's exercise of its fishing rights infringes on the Central Council's sovereign authority to govern internal matters, the Central Council fails to explain how. That is because it cannot. This case simply will not impact the Central Council's sovereign authority over its own members. *See*, *Montana v. U. S.*, 450 U.S. at 564-65 (holding that regulation of fishing by nonmembers bears "no clear relationship to tribal self-government or internal relations" and thus is not a part of tribal sovereign authority).

///

PAGE 23 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG    Document 112    Filed 07/21/25    Page 29 of 40

### 4. **The Central Council's concern about impacts on its fishing opportunity is pure speculation.**

Finally, the Central Council argues that it has "current economic interests" in this litigation based on its fear that recognizing the Community's reserved, nonexclusive fishing rights will result in "more fishermen competing for dwindling salmon resources" at its fishing streams, which will affect its members' "commercial and subsistence opportunities." Mot. Dismiss at 28. The declarations submitted by the Central Council express similarly catastrophic thinking, claiming that the Community's participation in Districts 1 and 2 will result in "fishing at sustainable levels" that "will jeopardize the fishery resources" and that Community members will "use fish traps and other poor management practices . . . free of any State regulation." Jackson Decl. (Dkt. 105), ¶¶ 35-36; Williams Decl. (Dkt. 107), ¶ 14. One declarant goes so far as to claim that "turning [the Community] loose" on Districts 1 and 2 would be "devastating" to those fisheries. Douville Decl. (Dkt. 99), ¶ 7.

This testimony is pure speculation and contrary to common sense. The Central Council has not provided any evidence of the number of additional fishermen who will participate in the fisheries, nor has it produced any scientific evidence regarding the potential impact of increased participation on the fishery. Fishery science is highly complex, and the health of any fish return is governed by

PAGE 24 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG    Document 112    Filed 07/21/25    Page 30 of 40

a constellation of factors beyond the number of commercial fisherman participating in an in-shore fishery. The Community will participate in Districts 1 and 2 subject to the State's science-based regulation of those fisheries for conservation purposes. *Puyallup Tribe v. Dep't of Game*, 391 U.S. 392, 399 (1968) (states are permitted to impose "nondiscriminatory measures for conserving fish resources" subject to "in common" fishing right); Langdon Decl., ¶ 31; Smith Decl., ¶¶ 7-8. More importantly, the Community has a vested interest in ensuring healthy and sustainable fish returns. The Central Council's charge that if the Community is "turned loose" on Districts 1 and 2 it will fish at "unsustainable levels" and "jeopardize" the fishery is not only wholly speculative, it is also deeply offensive.

The Community takes its stewardship obligations of the fishery very seriously. It will participate responsibly in Districts 1 and 2 by following all gear, net and location restrictions and opening and closing limits imposed by the State consistent with Federal law. Langdon Decl., ¶ 36. The community is not seeking to fish in an unregulated manner anywhere it wants. Smith Decl., ¶ 7; Boxley Decl., ¶ 13. As the Ninth Circuit recognized, fishing is the "bedrock of the Tsimshian culture and way of life." *Metlakatla Indian Community*, 58 F.4th at 1037. The Community seeks not only to protect its reserved fishing rights with

PAGE 25 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG    Document 112    Filed 07/21/25    Page 31 of 40

this litigation, but to also ensure strong fish returns into the future. The

Community's and the Central Council's interests are fully aligned on this issue.

This Court should reject the Central Council's speculative and inflammatory

rhetoric. *Makah Indian Tribe*, 910 F.2d at 558 (to be a necessary party, the Central

Council must have a "*legally protected interest*" that is "more than speculation

about a future event.")(emphasis in original).

    The Central Council cites several cases in support of its position that its

commercial and subsistence interest in maintaining healthy fish returns make it a

necessary party. However, as with the authorities it relies on for its sovereign-

interest argument, its authorities are inapplicable because, as explained in detail

above, the Central Council has no legally recognized fishing rights. Conversely,

every one of the cases cited by the Central Council concerns tribes with recognized

treaty rights. *Makah Indian Tribe*, 910 F.2d at 558-59 (holding that tribes with

treaty fishing rights to Columbia River were necessary to action by Makah Indian

Tribe to increase its treaty allocation of ocean-going salmon); *Keweenaw Bay

Indian Community v. State of Michigan*, 11 F.3d 1341, 1346-47 (6th Cir.

1993)(holding that absent bands of Chippewa Indians were necessary party to

action by Keweenaw Bay band where all of the Chippewa bands had treaty fishing

rights "in common" to Lake Superior); *Skokomish Indian Tribe v. Goldmark*, 994

PAGE 26 – **PLAINTIFF'S OPPOSITION TO THE
CENTRAL COUNCIL OF TLINGIT AND HAIDA
INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG   Document 112   Filed 07/21/25   Page 32 of 40

F.Supp.2d 1168, 1186 (D. Wash. 2014)(holding that absent signatory tribes to Point No Point Treaty were necessary parties in action by one of the signatory tribes to hunting and gathering on open and unclaimed lands within treaty boundaries). Unlike the cases it relies on, the Central Council has no fishing rights and thus no "*legally protected interest*" that would make it a necessary party. *Makah Indian Tribe*, 910 F.2d at 558 (emphasis in original). The Central Council is not a "required party" under Rule 19, and its motion to dismiss should be denied.

### B.   The Central Council Failed to Timely Intervene.

As a third party to this litigation, the Central Council may only participate *after* securing intervenor status under Fed. R. Civ. P. 24. *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1328-29 (9th Cir. 1977). Absent a proper motion to intervene, the District Court errs if it conducts the proceedings at the Central Council's request and grants the relief sought. *Id.* Rule 24 establishes four requirements for intervention as of right: (1) timeliness; (2) a legally protectable interest relating to the subject of the action; (3) practical impairment of the party's ability to protect that interest; and (4) inadequate representation by the existing parties to the suit. *United States v. State of Oregon*, 913 F.2d 576, 588 (9th Cir.1990).

PAGE 27 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

The Central Council failed to move to intervene under Rule 24. Little wonder; the Central Council is not entitled to intervene because it failed to do so in a timely manner, its participation in these proceedings would prejudice the Community's rights and, as explained in detail above, it does not have any legally protectable interest in these proceedings. Accordingly, it should not be permitted to intervene and its Motion to Dismiss should be denied on this additional basis.

### 1. The Central Council's motion is untimely.

Timeliness is a "threshold requirement" for intervention. *U. S. v. Oregon*, 913 F.2d at 588. A party seeking to intervene must act as soon as it "knows or has reason to know that [its] interests might be adversely affected by the outcome of the litigation." *Id*. at 589. Timeliness hinges on three factors: (1) the stage of the proceeding where an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *United States v. Alisal Water Corp*., 370 F.3d 915, 921 (9th Cir. 2004). Delay is measured from the date the proposed intervenor should have been aware that its interests would not be protected adequately by the parties, not the date it learned of the litigation. *United States v. State of Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996). While not determinative, "any substantial lapse of time weighs heavily against intervention." *Id*.

PAGE 28 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

### a. The Central Council sat on its hands for nearly five years and waited until the remedial stage of this case to attempt to thwart the Community's rights.

This action was originally filed on August 7, 2020.  Dkt. 1.  From the outset, this case has been directed at restoring the Community's non-exclusive reserved fishing rights and gaining access to the off-reservation fisheries that were reserved to it by Congress.  *Id*. at 2-3, ¶ 1; 7, ¶ 17; 13-16, ¶¶ 34 & 35.  It has gone to the Ninth Circuit, which ruled that the Community holds reserved nonexclusive fishing rights beyond the 3,000-foot exclusive zone of the Annette Islands Reserve. *Community v. Dunleavy*, 58 F.4th at 1045.  On remand, this Court has already resolved a summary judgment against the State, which was seeking essentially the same relief as that sought by the Central Council.  *Metlakatla Indian Community v. Dunleavy*, 736 F.Supp.3d 741, 755 (D. Alaska 2024).  This court is now tasked with resolving "the limited factual inquiry" of whether the Community's "'traditional fishing grounds' include the waters within Districts 1 and 2."  *Id*. at 753.

The Central Council had numerous opportunities to timely intervene when the existence and scope of the Community's nonexclusive fishing rights was at issue.  Instead, it sat on its hands for nearly five years, despite the fact that it should have known since the filing of the Complaint in 2020 that its asserted

PAGE 29 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR  97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG     Document 112     Filed 07/21/25     Page 35 of 40

interests here would not, in its view, be advanced by the Parties. Jackson Decl. (Dkt. 105), ¶ 7 ("When I learned that the Metlakatla Indian Community had brought a case in federal court asserting traditional fishing rights in District 1 and 2, I thought the case could not possibly reach a fair decision without involving the Taant'a Ḵwaan or Tlingit & Haida."). Now that the only issue left to decide is the extent of the Community's traditional fishing grounds, the Central Council seeks to effectively eliminate the remedy to be determined by this Court after the substantive issues it raises have been conclusively resolved. Such an effort to "merely attack or thwart a remedy" is disfavored. *Alisal*, 370 F.3d at 922; (citing *U. S. v. Oregon*, 913 F.2d at 588). The Central Council's years-long delay and failure to timely raise its interests under these circumstances alone justifies the denial of its motion. *U. S. v. Washington*, 86 F.3d at 1504-05 (upholding the denial of intervention where proposed intervenor sought intervention at remedial stage of proceedings after six years' litigation); *U. S. v. Oregon*, 913 F.2d at 588 (upholding the denial of intervention to the Makah Indian Tribe which sought to attack a fish management plan approved by the district court); *Alisal*, 370 F.3d at 922-23 (upholding denial of intervention where intervenor sought to interfere with remedial phase after case had been pending for four years).

///

PAGE 30 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

### b. **The Community would be prejudiced if the Central Council were permitted to intervene.**

The Central Council asks this court to reopen proceedings on the issue of "what traditional fishing rights, if any, the Metlakatla Indian Community has in Alaska Commercial Fisheries Entry Commission Fishing Districts 1 and 2." Mot. Dismiss at 7. The Central Council goes on the argue that it has exclusive fishing rights in those districts, having fished them since "time immemorial" to the exclusion of "all others" including the Community. *Id*. at 8. The Central Council thus seeks to relitigate the existence and extent of the Community's reserved rights. However, as this Court noted in denying the State's motion for summary judgment, that issue has already been squarely decided in the Community's favor. *Metlakatla*, 58 F.4th at 1048 ("We hold that the 1891 Act reserves for the Metlakatlan Indian Community an implied right to non-exclusive off-reservation fishing in the areas where they have fished since time immemorial and where they continued to fish in 1891 when their reservation was established."). This Court has recognized that the question now pending is not the existence of the Community's off-reservation fishing rights, but whether the Community's traditional fishing grounds include Districts 1 and 2. *Metlakatla*, 736 F.Supp.3d at 753.

The Central Council's attempt to relitigate issues that have been conclusively resolved and inject new issues into this case, particularly at this late stage in the

PAGE 31 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR 97201
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG     Document 112     Filed 07/21/25     Page 37 of 40

proceedings, would prejudice the Community. *U. S. v. Washington*, 86 F.3d at

1505 & 1506; *see also*, *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir.

1999)(holding that intervention would be prejudicial because "there was a lengthy

delay ... and many substantive and procedural issues had already been settled by

the time of the intervention motion."). Based on the prejudice to the Community,

the Central Council's motion should be denied. *Id.*

### c. The Central Council has no reasonable explanation for its failure to timely intervene.

The Central Council has no reasonable explanation for its failure to timely

intervene. It submitted testimony that it understood the threat perceived in this

action. Jackson Decl., ¶ 7. Yet the Central Council sat by for nearly five years

while that central issue was litigated and resolved in favor of the community. The

Central Council has no reasonable explanation for its delay, which further supports

this Court in denying intervention and denying the motion to dismiss. *U. S. v.*

*Washington*, 86 F.3d at 1505 & 1506; *Marsh*, 194 F.3d at 1051; Alisal, 370 F.3d at

923. To do otherwise would "encourage interested parties to impede litigation by

waiting to intervene until the final stages of a case." *Alisal*, 370 F.3d at 924.

## IV. CONCLUSION.

For the reasons set forth in detail above, the Central Council of Tlingit and

Haida Indians have no protectable legal interests at stake in this litigation and its

PAGE 32 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
T: (503) 225-0777 / F: (503) 225-1257

Case 5:20-cv-00008-SLG    Document 112    Filed 07/21/25    Page 38 of 40

untimely effort to intervene in this action would require relitigating issues that have already been conclusively resolved against it. Accordingly, the Central Council's motion to dismiss should be denied.

DATED this 21st day of July, 2025.

**HAGLUND KELLEY LLP**

By: */s/ Christopher Lundberg*
Christopher Lundberg, OSB No. 941084
(pro hac vice)
Email: clundberg@hk-law.com
Joshua J. Stellmon, OSB No. 075183
(pro hac vice)
Email: jstellmon@hk-law.com
Christopher T. Griffith, OSB No. 154664
(pro hac vice)
Email: cgriffith@hk-law.com.
2177 SW Broadway
Portland, OR 97201
(503) 225-0777
*Attorneys for Plaintiff*

PAGE 33 – **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS**

**HAGLUND KELLEY LLP**
**2177 SW Broadway**
**Portland, OR 97201**
**T: (503) 225-0777 / F: (503) 225-1257**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the **PLAINTIFF'S OPPOSITION TO THE CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIANS' MOTION TO DISMISS** was filed with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in Case No.: 5:20-cv-00008-SLG who are registered CM/ECF users will be served by the CM/ECF system.

## CERTIFICATE OF COMPLIANCE - L. CIV. R. 7.4(a)(1)

This brief complies with the type-volume limitation of L. Civ. R. 7.4(a)(1) because the brief contains 6,905 words, excluding the parts of the brief exempted by L. Civ. R. 7.4(a)(4).

DATED this 21st day of July, 2025.

**HAGLUND KELLEY LLP**

By: */s/ Christopher Lundberg*
  Christopher Lundberg, OSB No. 941084
  (pro hac vice)
  Email: clundberg@hk-law.com
  Joshua J. Stellmon, OSB No. 075183
  (pro hac vice)
  Email: jstellmon@hk-law.com
  2177 SW Broadway
  Portland, OR 97201
  (503) 225-0777
  *Attorneys for Plaintiff*

CERTIFICATE OF SERVICE AND COMPLIANCE